## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| **Jantzen Mason**<br>**Petitioner,** | **CASE NO.:** |
| **Iowa Student Loan Liquidity Corporation,**<br>**Respondent.** | **ORIGINAL NOTICE** |

**TO THE ABOVE-NAMED RESPONDENT:**

You are notified that a petition for custody and visitation was filed in the office of the clerk of this court naming you as the Respondent in this action. A copy of the petition (and any documents filed with it) is attached to this notice. The attorney for the Petitioner is Jayme Wiebold, Iowa Legal Aid, 666 Walnut Street, 25th Floor, Des Moines, Iowa 50309. That attorney's phone number is (515) 400-3641, the fax number is (515) 244-4618.

You must file an Answer or a Motion with the clerk of court in the above county within 20 days after you receive this Original Notice. If you do not file an Answer or Motion within 20 days after receiving this Original Notice, judgment by default may be rendered against you for the relief demanded in the petition.

This case has been filed in a county that uses electronic filing. You must register to eFile through the Iowa Judicial Branch website at https://www.iowacourts.state.ia.us/Efile and obtain a log in and password for filing and viewing documents in your case and for receiving service and notices from the court. General rules and information on electronic filing are contained in Iowa Court Rules Chapter 16. Information regarding requirements related to the protection of personal information in court filings is contained in Iowa Court Rules Chapter 16, Division VI. If you are unable to proceed electronically, you must receive permission from the court to file documents in paper. Contact the clerk of court in the county where the petition was filed for more information on being excused from electronic filing.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at 515-286-3394. If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

Clerk of Court
Polk County Courthouse
Des Moines, Iowa

**IMPORTANT:** YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.

E-FILED   2023 NOV 28 9:59 AM POLK - CLERK OF DISTRICT COURT

## Iowa Judicial Branch

**Case No.** **LACL157263**
**County** **Polk**

*Case Title*   JANTZEN MASON VS IOWA STUDENT LOAN LIQUIDITY CORP.

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential. For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(515) 286-3394** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/. **Disability access coordinators cannot provide legal advice.**

*Date Issued* **11/28/2023 09:59:29 AM**



*District Clerk of Court or/by Clerk's Designee of* Polk          County
**/s/ Valeri Mueller**

IN THE IOWA DISTRICT COURT IN AND FOR POLK COUNTY

| | |
|---|---|
| Jantzen Mason, | |
| Petitioner, | Case No.: |
| v. | |
| Iowa Student Loan Liquidity Corporation, | Petition |
| Respondent. | |

## FACTS

### Background

1. "Entry of judgment by confession has long been viewed with judicial distaste. Such judgments have been described as the loosest way of binding a man's property that was devised in any civilized country." *Tara Enters., Inc. v. Daribar Mgmt. Corp.*, 369 N.J. Super. 45, 56 (N.J. App. Div. 2004) (citing *Alderman v. Diament*, 7 N.J.L. 197, 198 (1824)).

2. A confession of judgment, sometimes referred to as a cognovit, is an ancient legal device that operates as the civil equivalent to a criminal confession, often waiving each and every right otherwise considered fundamental to due process of law in civil lawsuits.

3. Respondent Iowa Student Loan Liquidity Corporation (ISLLC) or its agents induced borrowers, including Petitioner Jantzen Mason, to sign documents asserted to be "payment plans" or "settlement agreements" for private student loans alleged to be in default. These private loans were often time-barred, poorly documented, and subject to several affirmative defenses and claims.

4. These "payment agreements" included authorizations to confess judgment. ISLLC coerced borrower signatures by threatening garnishment and other harsh collection methods, even though these remedies were not legally available. Borrowers, unrepresented by counsel and receiving no consideration, uniformly did not understand that these agreements constituted a complete waiver of their due process rights, and ability to raise viable defenses. When borrowers missed a payment, ISLLC filed the confessions with the clerk of court. The confessions became immediately enforceable, just like a judgment issued after trial.

5. ISLLC used these confessions to garnish wages and accounts, as well taking other harsh collection actions – all without any advance notice, without any supervision or review by a court, without the opportunity to raise a defense or counterclaim, and without any opportunity to contest ISLLC's claims.

E-FILED  2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

6. As recognized in commentary to the Uniform Consumer Credit Code more than 50 years ago, "the great majority of States prohibit… authorizations to confess judgment." Comment to Uniform Consumer Credit Code Sec. 3.306 (1978).

7. In the last half century, 13 states have abolished the use of authorizations to confess judgment entirely. Many others have reformed their existing laws to provide additional protections, especially for unsophisticated parties, such as consumers. Based on state reforms, litigation, and action by federal agencies such as the Federal Trade Commission, the prevalence of confessions, at least in transactions with unsophisticated and unrepresented parties, has greatly receded throughout most of the country.

8. Alas, this has not been so in Iowa. The version of Iowa Code Chapter 676 effective today, which governs confessions of judgment, has effectively the same language appearing in Iowa's first state code enacted in 1851. This was the year that Abraham Lincoln's father died, the second year of Millard Fillmore's presidency, and 17 years prior to the ratification of the 14th Amendment to the United States Constitution. In the 155 years since that ratification, Chapter 676 has – improbably – never been scrutinized by an appellate court on due process grounds.

9. Even though this chapter of the code governs a complete and unqualified waiver of every due process right normally enjoyed by civil litigants, the entire chapter (including section headings) contains only 193 words,[1] and reads as follows:

**676.1. Judgment by confession—how entered**

A judgment by confession, without action, may be entered by the clerk of the district court.

**676.2. For money only—contingent liability**

The judgment can be only for money due or to become due, or to secure a person against contingent liabilities on behalf of the defendant, and must be for a specified sum.

**676.3. Statement**

A statement in writing must be made, signed, and verified by the defendant, and filed with the clerk, to the following effect:

---

[1] For perspective, this is only 61% of the number of words contained in the studio version of Electric Light Orchestra's 1979 hit "Don't Bring Me Down."

1. If for money due or to become due, it must state concisely the facts out of which the indebtedness arose, and that the sum confessed therefor is justly due, or to become due, as the case may be.

2. If for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting such liability, and must show that the sum confessed therefor does not exceed the same.

**676.4. Judgment—execution**

The clerk shall thereupon make an entry of judgment in the clerk's court record for the amount confessed and costs, and shall issue execution thereon as in other cases, when ordered by the party entitled thereto.

10. The United States Supreme Court addressed the due process implications of confessions of judgment in two concurrently decided cases in 1972: *D.H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174 (1972) and *Swarb v. Lennox*, 405 U.S. 191 (1972). Both cases are addressed throughout this petition.

11. In *Overmyer*, the Court upheld the facial constitutionality of Ohio's cognovit statute in the context of a lawsuit between two corporate actors. *Overmyer* at 405 U.S. at 187. The nature of the challenge was that a confession of judgment could never meet due process requirements under any circumstances. Although the Court disagreed with this broad premise, it gave the caveat that:

> [This] holding ... is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue.

*Id.* at 188. The Court further held that, even where a confession of judgment statute itself was facially constitutional, it still may be unconstitutional according to the facts of a particular case if the confession was not voluntarily, intelligently, and knowingly given – especially in situations involving unequal bargaining power and lack of consideration. *Id.*

12. *Swarb* was a challenge to Pennsylvania's cognovit system and, like *Overmyer*, upheld the constitutionality of that system on its face. 405 U.S. at 200. The Court again carefully limited itself to narrow circumstances where parties had equal bargaining power. *Id.* at 201. Part of the underlying decision in *Swarb*, that a more limited class of low-income consumers challenging the constitutionality of the statute as applied to them could proceed, was unchallenged and thus allowed to remain intact by the Court. *Id.*

3

13. The statutes facially upheld in these two cases and state interpretations of those statutes differed in many respects from Iowa's.

   a. The Pennsylvania statute upheld in *Swarb* provided that conditional confessions (e.g., those styled as payment plans) couldn't be filed without serving a complaint. *Id.* at 193-94. Notice was required immediately after judgment was entered, and there were specific, effectively non-time-barred processes for challenging the confession after entry. *Id.* It is also notable that, in 1972, there was effectively no wage garnishment in Pennsylvania, which remains true with limited exceptions today. *See* 42 Pa. C.S. § 8127.

   b. Ohio's statute, similarly, had additional protections that do not appear in Iowa's statute. For example, post-judgment notice was required. *Overmyer*, 405 U.S. at 182. The confession was to be produced "to the court," rather than the clerk. *Id.* at 175, n.1. *Cf.* Iowa Code § 676.3. Outside of the statute itself, the Court recognized that the standard employed by the Ohio Supreme Court for re-opening a confession of judgment case was very liberal:

      > (I)f there is credible evidence supporting the defense . . . from which reasonable minds may reach different conclusions, it is then the duty of the court to suspend the judgment and permit the issue raised by the pleadings to be tried by a jury, or, if a jury is waived, by the court.

   *Overmyer*, 405 U.S. at 189 (Douglas, J., concurring) (quoting *Livingstone v. Rebman*, 158 N.E.2d 366, 375 (Ohio 1959).

14. In the same term as *Overmyer* and *Swarb*, the Court laid out due process minima for unsophisticated consumers in a different context: prejudgment replevin. *Fuentes v. Shevin*, 407 U.S. 67 (1972). The *Fuentes* Court noted that these matters, almost exclusively involving financing companies against *pro se* low-income debtors, were "a far cry from *Overmyer*" in that:

   > There was no bargaining over contractual terms between the parties who, in any event, were far from equal in bargaining power. The purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale. The appellees made no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights.

   *Id.* at 95.

4

15. Subsequent facial challenges to confession statutes reached different conclusions, based in part on differences between the statutes themselves.

16. Some states invalidated their statutes because their statutes were less protective than those reviewed in *Overmyer* and *Swarb*. For example, in *Isbell v. County of Sonoma*, the California Supreme Court found that former California Code of Civil Procedure §§ 1132 – 1135 contained "insufficient safeguards to assure that the debtor in fact executed a voluntary, knowing, and intelligent waiver." 577 P.2d 188, 189 (Cal. 1978).

17. California's statute circa 1978 was enacted the same year as the predecessor to Iowa Code Chapter 676 and uses language very similar (including some verbatim passages) to Iowa's current law. *Id.* at 189 – 190.

18. *Isbell* distinguished the constitutional question raised in *Overmyer* – whether confessions of judgment were *ever* constitutional – and the narrower question of whether a confession statute had adequate safeguards to determine whether a waiver was indeed valid under the terms of *Overmyer*, i.e. was it voluntary, intelligent, and knowing, or whether such a waiver could simply be presumed by the mere filing of a document with the clerk. *Id.* at 192. The *Isbell* court also found "the statutory procedure upheld in Overmyer was not nearly as harsh in operation as the California procedure at issue" given the modest protections available to consumers in Ohio. *Id.* at 195.

19. Moreover, the *Isbell* court also found that "the debtor's opportunity to seek post-judgment relief does not cure the unconstitutionality of a judgment entered without a valid waiver[.]" *Id.* at 194.

20. Ultimately, the Court in *Isbell* struck down the statute as a facial violation of the Fourteenth Amendment, holding that the California procedure "requir[ing] the clerk to enter judgment upon a document which is ordinarily insufficient to demonstrate a valid waiver…is constitutionally defective." *Id. See also Osmond v. Spence*, 359 F.Supp. 124 (D. Del. 1972).

21. In contrast, other states held that their confession of judgment systems had additional protections not present in the 1978 California code (or present-day Iowa), which gave judgment debtors a reasonable chance to challenge invalid confessions. *See, e.g., Meier v. Perdun*, 288 N.W.2d 165 (Wis. 1980) (liberal and not time-barred post-judgment remedies, including setting aside for excusable neglect, preserved constitutionality of the statute).

22. Most states, however, headed off such challenges through legislative action either abolishing confessions of judgment or building in additional due process protections.

23. Unlike the statutes upheld in *Overmyer* and *Swarb* and like California's prior statute in *Isbell*, Iowa's statute does not require any notice to be provided to the judgment debtor and does not prescribe any process to test the validity of the waiver, before or after judgment entered. *See generally* Iowa Code Chapter 676.

24. Admittedly, the Iowa Legislature – like California at the time of *Isbell* [2] – has enacted narrow limitations on authorizations to confess judgment in two areas, both in connection with the adoption of uniform acts protecting vulnerable consumers.

    a. Residential rental agreements may not authorize a person to confess judgment for a claim arising out of that agreement. Iowa Code 562A.11(1)(b). This provision tracks verbatim the language of Section 1.403(a)(2) of the 1972 version of the Uniform Residential Landlord Tenant Act, commentary for which cites a similar provision in Section 2.415 of the 1968 version of the Uniform Consumer Credit Code (UCCC). Iowa Code § 562A.11(1)(b).

    b. Iowa's version of the Consumer Credit Code presents a weakened version of the 1968's UCCC prohibition, in that it excludes confessions "executed after default on a claim arising out of a consumer credit transaction." Iowa Code § 537.3306.

25. The very limited protection for consumers in Iowa Code 537.3306 does not address the fundamental facial and as-applied constitutional problems created by Chapter 676. *See Isbell*, 577 P.2d at 192. Moreover, our sister courts have found the distinction between a confession obtained after rather than before default irrelevant to the constitutional analysis addressed below. *Underwood Farmers Elevator v. Leidholm*, 460 N.W.2d 711 (N.D. 1990).

### *Chapter 676's Facial Constitutional Problems*

26. In *Fuentes*, The United States Supreme Court summarized the "central meaning of procedural process" as follows:

> [p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.

---

[2] *Isbell*, 577 P.2d at 191.

6

407 U.S. at 80 (internal quotations omitted).

27. A fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In general, to determine whether the basic requirements of due process have been met, a court must weigh:

    a.   the private interest that will be affected by the official action;

    b.   the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and

    c.   the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

*Id.* at 335.

28. As written, the antiquated language of Chapter 676 facially violates the guarantee of procedural due process in the following ways:

    a.   **Failure to provide notice of the lawsuit.** *In re S.P.*, 672 N.W.2d 842 (Iowa 2003). A judgment entered without notice of the suit is void for lack of personal jurisdiction. *Id.* In addition, failure to provide notice makes the risk of erroneous deprivation all but inevitable, per *Mathews*. 424 U.S. at 335.

    b.   **No opportunity for a hearing of any kind, let alone "at a meaningful time and a meaningful manner."** *Fuentes* 407 U.S. at 80; *see also Underwood Farmers Elevator v. Leidholm*, 460 N.W.2d 711 (N.D. 1990) ("We conclude that in order to satisfy the *Overmyer* requirement of a case-by-case, fact-specific review, it is necessary... for a hearing to determine whether Leidholm voluntarily, knowingly, and intelligently waived his due-process rights to notice and a hearing when he signed the confession of judgment.") Since pre-deprivation hearings are only to be denied in "extraordinary situations," which do not exist here, this would require a hearing before judgment was entered to determine whether the waiver was in fact voluntary, intelligent, and knowing. *Fuentes*, 407 U.S. at 90. At the very least, a hearing on validity of the waiver would be required prior to execution or garnishment. *Community Thrift Club, Inc. vs. Dearborn Acceptance Corp.*, 487 F.Supp. 877 (N.D. Ill. 1980).

c. **No opportunity to confront witnesses.** *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.")

d. **No opportunity to otherwise vacate a wrongfully entered judgment by confession.** *Isbell*, 577 P.2d at 194-95. *See also Overmyer*, 405 U.S. at 188-90 (discussion in both majority and concurrence upholding facial constitutional validity of confession statute, in part based on the fact that in Ohio trial courts must vacate a judgment by confession upon a showing of a valid defense).

e. **No judicial supervision of the process of establishing the judgment,** which by statute begins and ends solely in the hands of the clerk of court and the judgment creditor themselves. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975). *See also W.T. Mitchell v. Grant*, 416 U.S. 600, 617-18 (1974).

## *As-Applied Constitutional Problems and Statutory Issues*

29. Even if Chapter 676 is facially constitutional, a particular confession may nevertheless fail on due process grounds if it was not obtained by the same standards governing criminal confessions – i.e., was it knowingly, intelligently, and voluntarily given. *Overmyer*, 405 U.S. at 187; *see also Lamberts v. Lillig*, 670 N.W.2d 129, 134 (Iowa 2003) (by analogy to criminal confession jurisprudence, waiver of civil constitutional parental caretaking interest invalid where waiver document and discussion was "relatively informal" and "relatively informal, with little if any discussion of the legal ramifications—much less the more specific constitutional ramifications—of its signing").

30. In the context of criminal confessions, undue influence will invalidate a confession. Coerced confessions are generally not considered to be voluntary. *See, e.g., State v. Quintero*, 480 N.W.2d 50 (Iowa 1992) (statements that defendant's nephew would be tried as adult as co-conspirator and face physical and sexual abuse in jail invalidated ensuing confession as involuntary). Similarly, explicit or even implied promises of leniency render criminal confessions involuntary and thus invalid. *See, e.g., State v. Mullin*, 85 N.W.2d 598 (Iowa 1957); *State v. McCoy*, 692 N.W.2d 6 (Iowa 2005). Failure to provide proper

disclosures so that a defendant understands the legal significance of their decision will also invalidate a criminal confession. *See, e.g., Miranda v. Arizona*, 384 U.S. 436 (1966).

31. In a civil context, courts have also recognized the following factors in invalidating confessions of judgment:

    a.  The bargaining power of the parties was significantly imbalanced, and the contract was one of adhesion. *Contrast Overmyer*, 405 U.S. at 186 (noting borrower's corporate structure supported conclusion that "[t]his is not a case of unequal bargaining power or overreaching") *with Fuentes*, 407 U.S. at 95 (noting borrowers' status as unsophisticated consumers supported conclusion that parties "were far from equal in bargaining power"); *see also Swarb*, 405 U.S. at 200–01 (distinguishing a class certification narrowed to consumers with annual incomes under $10,000).

    b.  One party is represented by counsel and the other is not. *Overmyer*, 405 U.S. at 188; *Fuentes*, 407 U.S. at 94–95 (citing the distinction made so recently in *Overmyer*); *see also Lamberts*, 670 N.W.2d at 134 (pointing out significance in waiver of parental rights that neither party was represented).

    c.  There was inadequate or even an absence of consideration given in return for the confession. *See Overmyer*, 405 U.S. at 183; *Swarb*, 405 U.S. at 201 ("absence of anything received in return" factor in invalidating confession).

32. Finally, "[t]he judgment can be only for money due or to become due, or to secure a person against contingent liabilities on behalf of the defendant, and must be for a specified sum." Iowa Code § 676.2. A document that does not specify the sum, or the correct sum, is deficient statutorily as well as constitutionally.

### *Federal Regulation of Confessions of Judgment*

33. Concurrently with the litigation described above, the Federal Trade Commission (FTC) targeted confessions of judgment as a *per se* unfair practice when employed against consumers.

34. In 1984, after almost a decade of rulemaking, the FTC adopted the Credit Practices Rule, which in part prohibits lenders and retail installment sellers from "directly or indirectly tak[ing] or receiv[ing] from a consumer an obligation that… constitutes or contains a

cognovit or confession of judgment ... or other waiver of the right to notice and the opportunity to be heard in the event of suit or process thereon." 16 C.F.R. § 444.2; *Trade Regulation Rule: Credit Practices*, 49 FR 7740-01 (March 1, 1984).

35. The FTC's extensive investigation into confessions of judgment lead to the following conclusions about consumer injury caused by the practice:

> ...Cognovit clauses typically are worded in arcane language and may appear in small print. Record evidence supports the conclusion that debtors are unaware that they have agreed to such clauses and that they waive due process rights by doing so. When debtors receive notice of a judgment entered against them, they may not understand its import or that they must act affirmatively to raise any defenses against it. This problem is exacerbated by the fact that many states... do not require notice informing the debtor of the right to contest the judgment or the grounds for doing so. As a result the debtor may fail to respond despite having valid defenses to the judgment. The rulemaking record shows that judgments entered by confession frequently are invalid on their face. It also shows that debtors frequently have some defense to the judgment.

> When debtors are not apprised of their rights and therefore fail to challenge facially invalid judgments or fail to asset valid defenses, the consumer injury is clear. The judgment debtor's property may be taken in satisfaction of a claim that would not survive judicial scrutiny at a hearing on its merits. Loss of this property causes economic hardship, since the debtor loses both its use and any equity in it. Moreover, consumers must replace any essential items that are seized, usually at a greater cost than they were credited with for the seized property...

> Even when debtors understand their right to challenge the entry of judgment, post-judgment remedies ... do not make them whole. The procedure for reopening a judgment is complex and debtors are unlikely to succeed without incurring the cost of hiring an attorney. ... Such costs are not necessarily incurred in a trial de novo.

> In a proceeding to reopen, the debtor may assert the same affirmative defenses that could have been used in defending against an action on the underlying claim. However, in a proceeding to reopen the burden and expense of instituting litigation shift from the creditor, where they would lie absent the confession of judgment, to the debtor. Because of the relative ease with which confessions of judgment may be entered, creditors may be tempted to use them indiscriminately. To the extent that consumers must institute legal action to defend against unwarranted claims, they suffer considerable economic injury through the costs that they must incur.

> Although consumers with meritorious defenses may ultimately succeed in vacating judgments against them, they are deprived of the full use of their property during the process. ... Until such a lien is dissolved, the consumer's ability to use the property for collateral or to dispose of it is significantly impaired. Moreover, because the lien is effective whether or not notice is mailed to or reaches the debtor, debtors may learn of its existence only at the precise point at which they seek to use the property for such purposes. By the time debtors succeed in dissolving the lien, the opportunity for which they intended to use the property may have passed.

... Accordingly, we find that the use of cognovits causes substantial consumer injury.

*Id.* (emphasis added).

### *Iowa Student Loan Liquidity Corporation (ISLLC)*

36. ISLLC, a private nonprofit corporation, was created in 1979 by proclamation of Governor Ray in response to Section 2105 of the federal Tax Reform Act of 1976. PL 94-455, Sec. 2105. The Tax Reform Act encouraged the growth of state-based secondary student loan markets by providing for the issuance of tax-exempt bonds by not-for-profit organizations organized to acquire and increase access to student loans. Iowa Code § 7C.4A(3).

37. Even though ISLLC is a private nonprofit organization, it maintains strong connections to both private for-profit and governmental entities. For example, the by-laws of ISLLC have provided for several decades that its board is chosen by the Governor,[3] and ISLLC has partnered extensively over the years with the Iowa College Student Aid Commission (ICSAC), a state agency. In addition to being strongly connected to state government ISLLC also owns a for-profit subsidiary, Aspire, that services student loans for ISLLC and others.[4] According to its 2022 IRS Form 990, ISLLC had $50,621,901 in revenue that year.

38. The loan at issue in this case is a "Partnership Loan" originally issued under a wholly private partnership between ISLLC and various private lenders. Partnership Loans have had a controversial history in Iowa. For example, the "intense marketing" of Partnership Loans by ISLLC was one factor recognized in 2008 for a large increase in student debt.[5] This was during a time that Iowans' student debt load was the second highest in the nation.[6] According to a 2008 report of the Iowa Attorney General, the loans were frequently marketed as the lowest-cost loans available to students even though that was not always

---

[3] Issue Review: Iowa Student Loan Liquidity Corporation, Iowa Legislative Services Agency Fiscal Services Division (October 8, 2019) https://www.legis.iowa.gov/docs/publications/IR/1050283.pdf

[4] *Id.*

[5] Iowa Board of Regents, Agenda Item 13: Access And Affordability – Part II, a Board of Regents Initiative, pg.2 (December 10-11, 2008) https://www.legis.iowa.gov/docs/publications/SD/22851.pdf

[6] Testimony of Robert Shireman before the Joint Government Oversight Committee of the Iowa Legislature (October 29, 2007) https://www.legis.iowa.gov/docs/publications/SD/7087.pdf

the case. Furthermore, these marketing practices did not adequately promote federal loans or ensure that federal loan eligibility had been exhausted.[7]

39. These loans have been aggressively collected, long after the statutory limitation periods have expired, in a variety of ways including, as here, by procuring judgments through confession. These confessions were framed by ISLLC or its agents to debtors as "settlement agreements." Borrowers were induced into signing these agreements when ISLLC or its agents threatened them with garnishment, often for loans that were not backed up with adequate documentation, beyond the statute of limitations, or subject to other defenses.

40. Hundreds of these confessions were later filed over the ensuing years, sometimes leading to surprise garnishments with potentially devastating effects. For example, a former client of Iowa Legal Aid who was in this exact position was featured on a CNBC story in May 2020.[8] This case resulted in return of funds garnished and a satisfaction of judgment, after pointing out to the private collector both the age of the debt and the constitutional problems with the confession of judgment process.

41. Unfortunately, however, this unfair, deceptive, and unconstitutional practice continues to the present day, necessitating the filing of this lawsuit.

### *The Confession of Judgment in Jantzen Mason's Case*

42. The Plaintiff, Jantzen Mason, is 39 years old and a resident of Omaha, Nebraska.

43. Mr. Mason is currently subject to a $6,716.25 judgment in favor of ISLLC entered by confession on July 19, 2016 in Polk County No. LACL135604.

44. Upon information and belief, this alleged debt refers to a Partnership Loan first disbursed on September 2, 2004. The loan was taken out at Vatterot College, which Mr. Mason only attended for one week.

45. Based on ISLLC's documentation filed in LACL135604, Mr. Mason signed a confession of judgment on June 21, 2012, about 8 years after the loan itself was disbursed. Mr. Mason does not recall signing this document.

---

[7] Issue Review: Iowa Student Loan Liquidity Corporation, Iowa Legislative Services Agency Fiscal Services Division (October 8, 2019)
https://www.legis.iowa.gov/docs/publications/IR/1050283.pdf
[8] https://www.cnbc.com/2020/05/11/debt-collectors-are-leveraging-the-courts-more-than-ever-before.html

46. Mr. Mason does not remember signing the confession of judgment. He does remember being contacted by mail and telephone by agents of ISLLC. These agents threatened to garnish his bank account. Mr. Mason received no consideration for signing the confession.

47. The confession provided that Mr. Mason owed ISLLC $6,716.25 on the balance of the Partnership Loan and referenced a separate "settlement agreement." Upon information and belief, this second document was never provided to Mr. Mason, though a copy of the settlement agreement was later filed in LACL135604.

48. The confession itself provided that if Mr. Mason defaulted on his payment plan, the confession would be filed without issuance or service of notice for the full amount confessed (less credit for payments made), that judgment and execution would issue without further order of the court.

49. Mr. Mason, who had neither legal counsel nor legal training, did not understand the consequences of signing the confession.

50. Mr. Mason made payments during at least some of the next four years.

51. Just over six years after the date noted on the confession of judgment, the confession itself was filed in LACL135604. Mr. Mason was never served with a copy of any of the initial filings, nor did ISLLC attempt to serve those filings, nor did he have any actual knowledge that the confession had been filed.

52. According to an "affidavit of default" on the loan at issue signed by Kevin Abbott, ISLLC's attorney, "[a]fter applying all payments there remain[ed] a balance of $4,562.92" on Mr. Mason's PLP loan.

53. There was no order from the trial court confirming the judgment. Upon information and belief, there was no judicial oversight of the Confession of Judgment when it was filed.

54. Upon information and belief, Mr. Mason would have raised the following defenses and counterclaims had she been provided proper notice and hearing rights, including but not limited to the following:

    a. Failure to provide a predicate notice to cure required by Iowa Code 537.5111 [grounds for both dismissal under Iowa Code 537.5110(7) and a counterclaim under Iowa Code 537.5201(1)(a)(26)];

    b. Unlawful debt collection under the Iowa Debt Collection Practices Act and federal Fair Debt Collection Practices Act;

    c.  That the action was barred under the Statute of Frauds, for failure to incorporate the essential written terms of the contract in writing;

    d.  That the action was barred under the applicable statute of limitations;

    e.  Failure to provide sufficient documentation to prove ISLLC's claim.

55. ISLLC attempted to enforce its judgment through garnishment on multiple occasions, further burdening judicial branch staff, law enforcement, garnishees, and Mr. Mason.

## COUNT I – DECLARATORY & INJUNCTIVE RELIEF

56. A judgment entered without jurisdiction is subject to collateral attack. *City of Chariton v. J.C. Blunk Construction Co.*, 112 N.W.2d 829, 834 (Iowa 1962). This is true even if that judgment has been satisfied. *Id.*

57. A collateral attack on a judgment beyond the one-year period for a petition to vacate may be brought in an independent equitable action. *Id. See also, e.g., Rosenberg v. Jackson*, 247 N.W.2d 216 (Iowa 1976); *Johnson v. Mitchell*, 489 N.W.2d 411 (Iowa Ct. App. 1992). A void judgment is subject to attack at any time without resort to the rules governing vacating judgments. *Claeys v. Moldenschardt*, 148 N.W.2d 479, 482 (Iowa 1967).

58. A confession of judgment filed pursuant to Iowa Code Chapter 676 is void for lack of personal jurisdiction in that it was entered without notice or hearing. *See, e.g., In re S.P.*, 672 N.W.2d 842 (Iowa 2003).

59. These flaws additionally render Chapter 676 facially unconstitutional as a denial of due process of law under the 14th Amendment of the United States Constitution and Article I, Section 9 of the Iowa Constitution, as the antiquated and sparse language of that chapter categorically does not provide adequate safeguards for a court to be able to assess whether a confession of judgment was given voluntarily, intelligently, and knowingly.

60. The particular facts of this case also render the confession of judgment at issue here jurisdictionally void on as-applied due process grounds.

    a.  Mr. Mason was induced into signing the confession of judgment by threats of garnishment that could not legally be conducted due to the age and insufficient documentary evidence of the loan.

    b.  Mr. Mason was unrepresented by counsel at the time this confession was executed, there was a massive imbalance of bargaining power and sophistication between her

14

as an individual consumer and a lender with thousands of loans in its portfolio, and the confession and accompanying settlement agreement were contracts of adhesion.

   c. Mr. Mason received no actual consideration for her complete waiver of all rights to receive notice of and contest the judgment.

61. Mr. Mason is entitled to declaratory relief under Iowa R. Civ. P. 1.1101 *et seq.*, in addition to statutory provisions noted in Counts II & III below, on both the validity of the judgment in Polk County Case No. LACL135604 and the constitutionality of Iowa Code Chapter 676.

62. Without injunctive relief, Mr. Mason is at risk of substantial injury in that she could be subject to garnishment, subject to a debtor's exam, subject to a judgment lien, subject to limitations on credit, and other consequences through the myriad active and passive ways that the judgment in Polk County Case No. LACL135604 may be enforced.

63. Mr. Mason is also entitled to injunctive relief under Iowa R. Civ. P. 1.1501 *et seq.*, enjoining the direct or indirect enforcement of the judgment entered in Polk County Case No. LACL135604.

## COUNT II – IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUD ACT

64. Iowa Code § 714H.3(1) provides that

> A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes.

65. The prohibited practice must be related to a material fact. Iowa Code § 714H.3(1).

66. "Deception" means an act or practice that is likely to mislead a substantial number of consumers as to a material fact or facts. Iowa Code § 714H.2(5)

67. A misrepresentation is material if it is "likely to affect a consumer's conduct or decision with regard to a product or service." *State ex rel. Miller v. Rahmani*, 472 N.W.2d 254, 258 (Iowa 1991). A statement which is literally true may nonetheless be deceptive. *Id.*

68. ISLLC's actions were "deceptive" under IPRACFA for reasons not limited to:

    a. Representing the debt as valid even though it was subject to challenge under statute of frauds, statute of limitations, and other grounds.

    b. Threatening garnishment on a time-barred debt, a remedy not allowed by law, in order to induce the signing of the confession.

69. An "unfair practice" means the same as defined in section 714.16. Iowa Code § 714H.2(9). An unfair practice is an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces. Iowa Code § 714.16(1)(n).

70. State and federal courts alike consider an unfair practice to be "nothing more than conduct a court of equity would consider unfair." *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W. 2d 518, 525 (Iowa 2005) (collecting cases). The same courts have found that "statutes that prohibit "unfair practices" are designed to infuse flexible equitable principles into consumer protection law so that it may respond to the myriad of unscrupulous business practices modern consumers face." *Id.*

71. Iowa's definitions of unfair practices themselves are rooted in and strongly influenced by the regulations and policy interpretations of the FTC, and the caselaw those materials have generated. As noted, the FTC's Credit Practices Rule has prohibited the use of confession clauses in consumer transactions since 1984:

> In connection with the extension of credit to consumers in or affecting commerce, as commerce is defined in the Federal Trade Commission Act, it is an unfair act or practice within the meaning of Section 5 of that Act for a lender or retail installment seller directly or indirectly to take or receive from a consumer an obligation that... [c]onstitutes or contains a cognovit or confession of judgment ... warrant of attorney, or other waiver of the right to notice and the opportunity to be heard in the event of suit or process thereon.

16 C.F.R. § 444.2(a)(1).

72. The rulemaking materials the FTC employed in promulgating this rule analyze confessions of judgment under the same factors the Iowa Legislature has provided in unfairness analysis – an injury to consumers that is (1) substantial, (2) unavoidable, and (3) is not outweighed by the countervailing consumer or competitive benefits the practice provides. *Trade Regulation Rule: Credit Practices*, 49 FR 7740 (March 1, 1984). *accord* Iowa Code § 714.16(1)(n).

16

a.   The FTC found that "confessions of judgment cause injury by depriving consumers of notice of a suit or hearing and the opportunity to appear and present any meritorious claims or defenses,.. [o]nce obtained, the confessed judgment can be turned into a lien on the consumer's real and personal property." *Trade Regulation Rule: Credit Practices*, 49 FR at 7748.

b.   The rulemaking involved empirical data gathered from surveys of low-income consumers. From this data, the FTC found that, "[o]f the creditor remedies addressed by the [Credit at Practices] rule, confessions of judgment are least likely to be understood by consumers." *Id.* at 7749. Further, per the FTC, "consumers rarely understand the significance of these clauses because they are worded in obscure technical language and because the concept of judgment by confession conflicts with the common understanding of basic due process rights." Thus, "consumers cannot reasonably avoid the injury caused by cognovits." *Id.*

c.   The FTC found that prohibiting confessions of judgment would lead to increased collection and legal costs, and potentially higher interest rates and reduced credit availability for borrowers. However, reasoning that creditors were still left with more than ample remedies, the FTC found that these factors did not outweigh the negative aspects of the practice.

73. In addition to the reasons articulated by the FTC, ISLLC's actions were "unfair" under IPRACFA for reasons not limited to:

a.   They shift the burden of proof that would otherwise be on the creditor to the debtor.

b.   ISLLC secured the confession in the absence of consideration or any benefit to Mr. Mason.

74. Iowa Code § 714H.5 authorizes a consumer who suffers an ascertainable loss of money or property to recover actual damages, temporary and permanent injunctive relief, attorney fees, and costs.

75. ISLLC acted with willful or wanton disregard for the rights or safety of Mr. Mason, justifying an additional statutory damages award of up to three times the amount of actual damages.

## COUNT III – DEPRIVATION OF DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION – 42 U.S.C. § 1983

76. As outlined in detail above, ISLLC, acting under color of law for purposes of 42 U.S.C. 1983, deprived Mr. Mason of due process of law by utilizing a statutory process that is facially unconstitutional in that it does not provide adequate safeguards for a court to gauge whether this waiver of rights was voluntarily, knowingly, and intelligently given.

77. In addition, as outlined in detail above, ISLLC, acting under color of law, deprived Mr. Mason of due process of law by obtaining a confession of judgment that was, under the circumstances of her case, not voluntarily, intelligently, or knowingly given.

78. Although a private actor, ISLLC is nevertheless liable under 42 U.S.C. 1983 because it "has acted together with or has obtained significant aid from state officials" in obtaining a judgment by confession which violates Mr. Mason's constitutional rights. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 935 (1982) (creditor using unconstitutional pre-judgment attachment procedures acting in concert with state officials sufficient to invoke color of law and thus 1983 liability).

79. As the United States Supreme Court stated in *Fuentes*:

> The requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions. But the fair process of decision making that it guarantees works, by itself, to protect against arbitrary deprivation of property. For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that 'fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights... And no better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.

*Fuentes*, 407 U.S. at 81. Mr. Mason was denied these most basic constitutional protections enjoyed by civil litigants by ISLLC.

80. In addition, as explained by the FTC in promulgating the Credit Practices Rule:

> Judgment debtors whose property is encumbered through the existence of a creditor's lien lose the full use and enjoyment of their property. Debtors are unlikely to be able to sell it, for example, or to use it as collateral while it is subject to a lien. Although the debtor may eventually prevail on the merits and dissolve the lien, the post-judgment rights provided by statute cannot cure the deprivation experienced while the action is pending. Even a temporary and non-final deprivation of the use of one's property is a matter of constitutional significance and invokes the protection of the due process clause.

Trade Regulation Rule: Credit Practices, 49 FR 7740-01, 7749 (March 1, 1984). *See also* Iowa Code § 624.23.

81. A person injured on a claim actionable under 42 U.S.C. 1983 is entitled to compensatory damages, punitive damages, equitable relief, attorney fees, and costs. 42 U.S.C. §§ 1983, 1988.

## COUNT IV – UNJUST ENRICHMENT / RESTITUTION

82. "Where property has been received as a result of a judgment improperly obtained equity may order the respondent to reconvey it." *City of Chariton v. J.C. Blunk Construction Co.*, 112 N.W.2d 829, 834 (Iowa 1962).

83. The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation.

84. There are three elements to unjust enrichment: (1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances. *Pro Com., LLC v. K & L Custom Farms, Inc.*, 870 N.W.2d 273 (Iowa Ct. App. 2015) (internal quotations and citation omitted).

85. Mr. Mason is entitled to full restitution of any amounts garnished, levied, assigned, attached, or otherwise taken to apply towards the debt in question, regardless of whether those amounts were taken voluntarily or involuntarily from the Petitioner.

## RELIEF REQUESTED

WHEREFORE, the Petitioner asks that this Court grant the following relief:

A. Declaratory relief holding the judgment entered in Polk County Case No. LACL135604 on July 19, 2016 to be void and unenforceable;

B. Declaratory relief holding Iowa Code Chapter 676 to be an unconstitutional deprivation of due process of law under both Fourteenth Amendment of the U.S. Constitution and Article 1, Section 9 of the Iowa Constitution, both facially and as applied to the circumstances of the Petitioner's case;

C. Injunctive relief under Iowa Rule of Civil Procedure 1.1501 *et seq.*, Iowa Code § 714H.5, and 42 U.S.C. 1983, enjoining the direct or indirect enforcement of the judgment entered in Polk County Case No. LACL135604;

D. Compensatory damages under 42 U.S.C. 1983 in an amount to be determined at trial;

E. Actual damages under IPRACFA, Iowa Code Chapter 714H, plus punitive damages of up to three times actual damages;

F. Reasonable attorney fees and costs pursuant to 28 U.S.C. § 1920, 42 U.S.C. § 1988, and Iowa Code 714H.5;

G. Restitution for any amounts by which ISLLC was unjustly enriched; and

H. Any other relief the Court deems just and equitable under the circumstances.

Respectfully submitted,
JANTZEN MASON, Petitioner

**/s/Jayme Wiebold**
Jayme Wiebold, AT0013859
Iowa Legal Aid
666 Walnut St., 25th Floor
Des Moines, Iowa 50309
(515) 243-1193
jwiebold@iowalaw.org
ATTORNEY FOR PETITIONER

**/s/ Alex Kornya**
Alexander Vincent Kornya, AT0009810
Iowa Legal Aid
666 Walnut St., 25th Floor
Des Moines, Iowa 50309
(515) 243-1193
akornya@iowalaw.org
ATTORNEY FOR PETITIONER