**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re: Iowa Student Loan Liquidity Corporation Litigation** | **MDL Docket No.: MDL-_____** |
| McDonald v. Iowa Student Loan Liquidity Corporation (NDIA No. 1:23-cv-00111) | |
| Gibson v. Iowa Student Loan Liquidity Corporation (NDIA No. 2:23-cv-01036) | |
| Zambrano v. Iowa Student Loan Liquidity Corporation (SDIA No. 3:23-cv-00086) | |
| Mason v. Iowa Student Loan Liquidity Corporation (SDIA No. 4:23-cv-00515) | |

**JOINT MOTION FOR TRANSFER OF ACTIONS TO THE
SOUTHERN DISTRICT OF IOWA PURSUANT TO 28 U.S.C. § 1407
FOR CONSOLIDATED PROCEEDINGS**

Plaintiffs Amanda McDonald and Cassandra Gibson in the Northern District of Iowa actions listed above, Plaintiffs Jantzen Mason and Liliana Zambrano in the Southern District of Iowa actions, and Defendant Iowa Student Loan Liquidity Corporation in the actions listed above respectfully move this panel, pursuant to 28 U.S.C. § 1407, to transfer and centralize each of the above-captioned actions in the Southern District of Iowa.

Pursuant to Rule 6.1, a brief in support of this motion, a schedule of actions, copies of all complaints and docket sheets for all actions, and proof of service have been filed contemporaneously.

Respectfully submitted,

**/s/ Patrick Bigsby**
Patrick Bigsby (AT0013028)
Iowa Legal Aid
317 7th Ave. SE, Ste. 404

Cedar Rapids, IA 52401
319-364-6108
pbigsby@iowalaw.org
*Counsel for Plaintiffs:*
Amanda McDonald, Cassandra Gibson, Jantzen Mason, and Liliana Zambrano


**/s/ Jason M. Craig**
Jason M. Craig (AT0001707)
Ahlers & Cooney, P.C
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: (515) 243-7611
Facsimile: (515) 243-2149
jcraig@ahlerslaw.com
*Counsel for Defendant:*
Iowa Student Loan Liquidity Corporation

**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re: Iowa Student Loan Liquidity Corporation Litigation**<br><br>McDonald v. Iowa Student Loan Liquidity Corporation (NDIA No. 1:23-cv-00111)<br><br>Gibson v. Iowa Student Loan Liquidity Corporation (NDIA No. 2:23-cv-01036)<br><br>Zambrano v. Iowa Student Loan Liquidity Corporation (SDIA No. 3:23-cv-00086)<br><br>Mason v. Iowa Student Loan Liquidity Corporation (SDIA No. 4:23-cv-00515) | **MDL Docket No.: MDL-_____** |

**BRIEF IN SUPPORT OF JOINT MOTION**
**FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiffs Amanda McDonald, Cassandra Gibson, Liliana Zambrano, and Jantzen Mason each filed individual actions in Iowa state district courts in November 2023. Each lawsuit presents very similar (although not strictly identical) claims premised as an original action in equity, recognized under Iowa law, challenging on jurisdictional grounds confessions of judgment entered against each Plaintiff in favor of the common Defendant, Iowa Student Loan Liquidity Corporation ("ISLLC"), pursuant to Iowa Code Chapter 676.

The core declaratory and injunctive relief sought by each Plaintiff includes rendering each respective confession of judgment void and unenforceable. Each Plaintiff also seeks actual, compensatory, and punitive damages arising from their allegations of ISLLC's use of allegedly unlawful and unconstitutional consumer practices, under both 42 U.S.C. § 1983 and Iowa's Private

1

Right of Action for Consumer Fraud Act at Iowa Code Chapter 714H. Each Plaintiff also seeks declaratory relief holding Iowa Code Chapter 676 unconstitutional under the U.S. and Iowa Constitutions, both facially and as applied to the facts of each case.

ISLLC removed all four cases to federal district court on December 20, 2023. ISLLC's notice of removal asserted federal district court jurisdiction was proper pursuant to each Plaintiff's claims arising under the Fourteenth Amendment to the U.S Constitution and 42 U.S.C. § 1983. Owing to their respective counties of filing, McDonald's and Gibson's actions were removed to the federal district court for the Northern District of Iowa and Zambrano's and Mason's actions were removed to the federal district court for the Southern District of Iowa.

On February 21, 2024, Zambrano's and Mason's actions came before the district court (SDIA) for a combined trial scheduling conference. That court adopted a set of deadlines for amending pleadings, adding parties, expert disclosure, and other procedural milestones that incorporated, in significant part, the requests and recommendations of the parties. On February 28, 2024, McDonald's and Gibson's actions came before the district court (NDIA) for a combined trial scheduling conference. That court declined the parties' joint recommendation to mirror the timeline adopted in the SDIA actions and instead established a set of wholly distinct deadlines.

<u>ARGUMENT</u>

The instant joint motion seeks centralization of all four above-captioned matters in the Southern District of Iowa for consolidated proceedings. The four actions present one or more common questions of fact and consolidation would advance the parties' and the judiciary's shared interests in convenience and efficiency.

<u>I. Multidistrict Consolidation is Available in and Appropriate for the Above-Captioned Matters.</u>

28 U.S.C. § 1407(a) provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: *Provided, however*, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

The instant motion for consolidation concerns four civil actions, currently pending in two different districts. The four civil actions all raise identical causes of action, arising from very similar factual allegations concerning the common Defendant's collection of student loans through the use of confessions of judgment. Apart from the amounts at issue, each individual Plaintiff's factual assertions are identical. Accordingly, these four actions present common questions of fact and may be transferred for interdistrict consolidation per the terms of § 1407(a).

The statute provides that such transfers "shall" be made by the panel where the panel has determined that the transfer promotes convenience, efficiency, and just conduct. As set forth below, the parties believe transfer to the Southern District of Iowa will substantially promote those interests to the benefit of all parties and the involved courts.

## II. Multidistrict Consolidation in the Southern District of Iowa Would Promote Convenience, Efficiency, and Just Conduct.

The panel determines whether centralization is appropriate by applying the statutory criteria on a case-by-case basis. *In re Bear Creek Techs., Inc., ('722) Patent Litig.*, 858 F.Supp.2d 1375, 1379 (U.S.J.P.M.L. 2012). Examples of circumstances deemed to sufficiently promote the statutory criteria of convenience, efficiency, and just conduct include eliminating duplicative discovery, preventing inconsistent pretrial rulings between districts, and conserving party and judicial

resources. *E.g., In re American Home Mortg. Securities Litigation*, 528 F.Supp.2d 1376, 1377 (U.S.J.P.M.L. 2007); *In re Mattel, Inc., Toy Lead Paint Products Liability Litigation*, 528 F.Supp.2d 1367, 1369 (U.S.J.P.M.L. 2007).

Similar concerns to those noted by the panel in its *American Home* and *Mattel* rulings are present in the four individual matters where consolidation is now being sought. First, Plaintiffs anticipate substantial discovery not only in the form of several years' worth of collection records for the four individual Plaintiffs but also records pertaining to the general collection practices of Defendant and other pattern evidence. Preliminary discussion between the parties has revealed that a significant portion of this data is held in a proprietary database, of which Defendant is a remote user, that prevents electronic transmission of the data in native format. Accessing this data will likely be tedious and time-consuming and may require manual screenshots, printed hard copies, site visits by Plaintiffs' counsel, or some combination thereof. Consolidation of the above-captioned matters would allow the parties the opportunity to complete this laborious, expensive process only once rather than four times.

Consolidation in the Southern District of Iowa would also give the parties and counsel greater flexibility and lower costs to participate in pretrial proceedings. Defendant, Defendant's counsel, and a plurality of Plaintiffs' counsel are located in Des Moines, Iowa within the Southern District of Iowa. Additionally, because Plaintiffs' claims in the four actions challenge the constitutionality of a state statute, the Iowa Attorney General may elect to intervene in the proceeding. 28 U.S.C. § 2403(b). The Iowa Attorney General's office is likewise located in Des Moines. Allowing consolidated pretrial proceedings at the Des Moines federal courthouse would obviate the need for any participants to travel to the Cedar Rapids, Iowa federal courthouse (a two-

hour, 130-mile trip one way from Des Moines) for essentially identical proceedings in the Northern District of Iowa.

Additionally, the potential for inconsistent pretrial rulings is of heightened importance in this case. To begin, the parties anticipate all four individual Plaintiffs raising jurisdictional issues in the form of motions to remand to state court pursuant to the *Rooker-Feldman* doctrine. In the event the Southern District of Iowa and the Northern District of Iowa were to reach different conclusions on this issue, the parties would be left with two cases remanded to state court and two cases remaining in federal court. Such an arrangement would only further complicate the parties' discovery and pretrial calendar and likely inhibit resolution of either set of cases owing to an increasingly labyrinthine combination of abstention and deference doctrines. Moreover, the claims in all four cases present issues of first impression concerning the constitutionality of Iowa Code Chapter 676, whether Defendant qualifies as a state actor under 42 U.S.C. § 1983, and the applicability of Iowa's Consumer Fraud Act to Defendant and its use of confessions of judgment. Defendant anticipates filing dispositive motions on these and other legal issues raised by Plaintiffs' claims. Multidistrict consolidation would prevent inconsistent rulings on these important issues of first impression. Finally, potentially contradictory discovery rulings would also present a headache-inducing scenario: should the district courts disagree on resolutions for any discovery disputes that may arise, the parties could find themselves in a situation where material is discoverable in two cases but unavailable (or even subject to a protective order) in two others. Multidistrict consolidation wholly avoids such risk of complication by preventing any combination of inconsistent rulings.

### III. The Number of Actions and Geographic Proximity of the Districts Do Not Outweigh the Gains in Efficiency and Convenience.

The parties recognize, as they must, that consolidation across districts is not a matter of right and that the panel possesses wide discretion to grant or deny such requests. *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 2024 WL 41889, at *1 (U.S.J.P.M.L. Jan. 4, 2024). The panel has, on occasion, denied motions for centralization where relatively few individual actions are involved, if the actions are pending in adjacent districts within the same state, or if the questions presented are not "sufficiently complex." *E.g., In re: CableNet Services Unlimited, Inc., Fair Labor Standards Act (FLSA) Litigation*, 716 F.Supp.2d 1363 (Mem) (U.S.J.P.M.L. 2010); I*n re: UPS Supply Chain Solutions, Inc., Fair Labor Standards Act (FLSA) Litigation*, 729 F.Supp.2d 1356 (U.S.J.P.M.L. 2010). Although the parties seek centralization of only four actions in Iowa's two federal districts, the questions presented and posture of the cases render the circumstances before the panel readily distinguishable from instances where centralization was denied. Plaintiffs here have raised first-of-their-kind facial and as-applied constitutional challenges to a state statute, a marked contrast in complexity and novelty from more routine statutory claims where the panel has denied centralization. *Cf, e.g., In re Equinox Fitness Wage & Hour Emp't Practices Litig.*, 764 F.Supp.2d 1347, 1348 (U.S.J.P.M.L. 2011) (denying centralization of actions brought by plaintiffs seeking relief under California's wage and hour statute). Even where the underlying actions involve more standard claims, the panel has recognized the importance of selecting "the most efficient route for the litigation." *Uber Technologies, Inc.*, 2024 WL 41889, at *2.

Further, the parties have already attempted to seek alternatives to Section 1407 transfer that might be created by coordination or deference between the involved district courts and found them unavailable. *Cf, e.g., In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litigation*, 446 F.Supp. 242 (Mem), 244 (U.S.J.P.M.L. 1978) (denying centralization where the panel determined "any

party could seek orders from the three courts directing the parties to coordinate their pretrial efforts"). Here, when urged by the parties to adopt the pretrial scheduling deadlines established in the Southern District of Iowa so as to maximize efficiency and convenience, the Northern District of Iowa declined the joint request and instead set deadlines that were different than those established in the Southern District of Iowa cases. Under these circumstances, the parties anticipate similar difficulties coordinating on more contentious matters. This would surely heighten the risk of inconsistent substantive rulings.

<u>CONCLUSION</u>

For the reasons stated above, the parties request the panel grant their joint motion to transfer the above-captioned actions to the Southern District of Iowa pursuant to 28 U.S.C. § 1407 for centralized and consolidated pretrial proceedings.

Respectfully submitted,

**/s/ Patrick Bigsby**
Patrick Bigsby (AT0013028)
Iowa Legal Aid
317 7th Ave. SE, Ste. 404
Cedar Rapids, IA 52401
319-364-6108
pbigsby@iowalaw.org
*Counsel for Plaintiffs:*
Amanda McDonald, Cassandra Gibson, Jantzen Mason, and Liliana Zambrano

**/s/ Jason M. Craig**
Jason M. Craig (AT0001707)
Ahlers & Cooney, P.C
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231

Telephone: (515) 243-7611
Facsimile: (515) 243-2149
jcraig@ahlerslaw.com
*Counsel for Defendant:*
Iowa Student Loan Liquidity Corporation

**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**
**MDL-_____ - In re: Iowa Student Loan Liquidity Corporation Litigation**
**SCHEDULE OF ACTIONS**

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiff:**<br>Amanda McDonald<br><br>**Defendant:**<br>Iowa Student Loan Liquidity Corporation | N.D. Iowa | 1:23-cv-00111 | C.J. Williams |
| **Plaintiff:**<br>Cassandra Gibson<br><br>**Defendant:**<br>Iowa Student Loan Liquidity Corporation | N.D. Iowa | 2:23-cv-01036 | C.J. Williams |
| **Plaintiff:**<br>Liliana Zambrano<br><br>**Defendant:**<br>Iowa Student Loan Liquidity Corporation | S.D. Iowa | 3:23-cv-00086 | Rebecca G. Ebinger |
| **Plaintiff:**<br>Jantzen Mason<br><br>**Defendant:**<br>Iowa Student Loan Liquidity Corporation | S.D. Iowa | 4:23-cv-00515 | Rebecca G. Ebinger |

**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Iowa Student Loan Liquidity Corporation Litigation<br><br>McDonald v. Iowa Student Loan Liquidity Corporation (NDIA No. 1:23-cv-00111)<br><br>Gibson v. Iowa Student Loan Liquidity Corporation (NDIA No. 2:23-cv-01036)<br><br>Zambrano v. Iowa Student Loan Liquidity Corporation (SDIA No. 3:23-cv-00086)<br><br>Mason v. Iowa Student Loan Liquidity Corporation (SDIA No. 4:23-cv-00515) | **MDL Docket No.: MDL-_____** |

**PROOF OF SERVICE**

I hereby certify that a copy of the foregoing Motion, Brief, Schedule of Actions, docket sheets and complaints for above-captioned actions, and this Certificate of Service was served by email and by CM/ECF electronic filing on March 29, 2024 to the following:

Clerk of Court, Northern District of Iowa
Cedar Rapids, IA

Clerk of Court, Southern District of Iowa
Des Moines, IA

Alexander Vincent Kornya (AT0009810)
Iowa Legal Aid
666 Walnut St., 25th Floor
Des Moines, Iowa 50309
(515) 243-1193
akornya@iowalaw.org
**Counsel for Plaintiffs: Amanda McDonald, Cassandra Gibson, Jantzen Mason, and Liliana Zambrano**
**N.D. Iowa, No. 1:23-cv-00111; N.D. Iowa, No. 2:23-cv-01036; S.D. Iowa, No. 3:23-cv-00086; S.D. Iowa, No. 4:23-cv-00515**

Lea Kieffer
Iowa Legal Aid

744 Main St., Ste. 1
Dubuque, IA 52001
lkieffer@iowalaw.org
**Counsel for Plaintiff: Cassandra Gibson**
**N.D. Iowa, No. 2:23-cv-01036**

James Kringlen
Iowa Legal Aid
1700 S. 1st Ave., Ste.10
Iowa City, IA 52240
jkringlen@iowalaw.org
**Counsel for Plaintiff: Liliana Zambrano**
**S.D. Iowa, No. 3:23-cv-00086**

Jayme Wiebold
Iowa Legal Aid
666 Walnut St., 25th Floor
Des Moines, IA 50309
jwiebold@iowalaw.org
**Counsel for Plaintiff: Jantzen Mason**
**S.D. Iowa, No. 4:23-cv-00515**

Jason M. Craig
Ahlers & Cooney, P.C
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
jcraig@ahlerslaw.com
**Counsel for Defendant: Iowa Student Loan Liquidity Corporation**
**N.D. Iowa, No. 1:23-cv-00111; N.D. Iowa, No. 2:23-cv-01036; S.D. Iowa, No. 3:23-cv-00086;**
**S.D. Iowa, No. 4:23-cv-00515**


    Further, I hereby certify that a courtesy copy of the foregoing Motion and Brief was sent
by regular mail on March 29, 2024 to:

Clerk of the Panel
United States Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE, Room G-255, North Lobby
Washington, DC 20544-0005

                                                    Respectfully submitted,

                                                    **/s/ Patrick Bigsby**
                                                    Patrick Bigsby (AT0013028)

Iowa Legal Aid
317 7th Ave. SE, Ste. 404
Cedar Rapids, IA 52401
319-364-6108
pbigsby@iowalaw.org
*Counsel for Plaintiffs:*
Amanda McDonald, Cassandra Gibson, Jantzen Mason, and Liliana Zambrano

E-FILED   2023 NOV 08 12:56 PM LINN - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT IN AND FOR LINN COUNTY

| | |
|---|---|
| Amanda McDonald,<br>Petitioner,<br>v.<br><br>Iowa Student Loan Liquidity Corporation,<br>Respondent. | Case No.: CVCV103465<br><br>Petition |

### FACTS

#### *Background*

1. "Entry of judgment by confession has long been viewed with judicial distaste. Such judgments have been described as the loosest way of binding a man's property that was devised in any civilized country." *Tara Enters., Inc. v. Daribar Mgmt. Corp.*, 369 N.J. Super. 45, 56 (N.J. App. Div. 2004) (citing *Alderman v. Diament*, 7 N.J.L. 197, 198 (1824)).

2. A confession of judgment, sometimes referred to as a cognovit, is an ancient legal device that operates as the civil equivalent to a criminal confession, often waiving each and every right otherwise considered fundamental to due process of law in civil lawsuits.

3. Respondent Iowa Student Loan Liquidity Corporation (ISLLC) or its agents induced borrowers, including Petitioner Amanda McDonald, to sign documents asserted to be "payment plans" or "settlement agreements" for private student loans alleged to be in default. These private loans were often time-barred, poorly documented, and subject to several affirmative defenses and claims.

4. These "payment agreements" included authorizations to confess judgment. ISLLC coerced borrower signatures by threatening garnishment and other harsh collection methods, even though these remedies were not legally available. Borrowers, unrepresented by counsel and receiving no consideration, uniformly did not understand that these agreements constituted a complete waiver of their due process rights, ability to raise viable defenses. When borrowers missed a payment, ISLLC filed the confessions with the clerk of court. The confessions became immediately enforceable, just like a judgment issued after trial.

5. ISLLC used these confessions to garnish wages and accounts, as well taking other harsh collection actions – all without any advance notice, without any supervision or review by a court, without the opportunity to raise a defense or counterclaim, and without any opportunity to contest ISLLC's claims.

1

**EXHIBIT**

1A

E-FILED 2023 NOV 08 12:56 PM LINN - CLERK OF DISTRICT COURT

6.  As recognized in commentary to the Uniform Consumer Credit Code more than 50 years ago, "the great majority of States prohibit... authorizations to confess judgment." Comment to Uniform Consumer Credit Code Sec. 3.306 (1978).

7.  In the last half century, 13 states have abolished the use of authorizations to confess judgment entirely. Many others have reformed their existing laws to provide additional protections, especially for unsophisticated parties such as consumers. Based on state reforms, litigation, and action by federal agencies such as the Federal Trade Commission, the prevalence of confessions, at least in transactions with unsophisticated and unrepresented parties, has greatly receded throughout most of the country.

8.  Alas, this has not been so in Iowa. The version of Iowa Code Chapter 676 effective today, which governs confessions of judgment, has effectively the same language appearing in Iowa's first state code enacted in 1851. This was the year that Abraham Lincoln's father died, the second year of Millard Fillmore's presidency, and 17 years prior to the ratification of the 14th Amendment to the United States Constitution. In the 155 years since that ratification, Chapter 676 has – improbably – never been scrutinized by an appellate court on due process grounds.

9.  Even though this chapter of the code governs a complete and unqualified waiver of every due process right normally enjoyed by civil litigants, the entire chapter (including section headings) contains only 193 words,[1] and reads as follows:

> **676.1. Judgment by confession--how entered**
>
> A judgment by confession, without action, may be entered by the clerk of the district court.
>
> **676.2. For money only--contingent liability**
>
> The judgment can be only for money due or to become due, or to secure a person against contingent liabilities on behalf of the defendant, and must be for a specified sum.
>
> **676.3. Statement**
>
> A statement in writing must be made, signed, and verified by the defendant, and filed with the clerk, to the following effect:

---

[1] For perspective, this is only 61% of the number of words contained in the studio version of Electric Light Orchestra's 1979 hit "Don't Bring Me Down."

2

E-FILED  2023 NOV 08 12:55 PM LINN - CLERK OF DISTRICT COURT

1. If for money due or to become due, it must state concisely the facts out of which the indebtedness arose, and that the sum confessed therefor is justly due, or to become due, as the case may be.

2. If for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting such liability, and must show that the sum confessed therefor does not exceed the same.

**676.4. Judgment—execution**

The clerk shall thereupon make an entry of judgment in the clerk's court record for the amount confessed and costs, and shall issue execution thereon as in other cases, when ordered by the party entitled thereto.

10. The United States Supreme Court addressed the due process implications of confessions of judgment in two concurrently decided cases in 1972: *D.H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174 (1972) and *Swarb v. Lennox*, 405 U.S. 191 (1972). Both cases are addressed throughout this petition.

11. In *Overmyer*, the Court upheld the facial constitutionality of Ohio's cognovit statute in the context of a lawsuit between two corporate actors. *Overmyer* at 405 U.S. at 187. The nature of the challenge was that a confession of judgment could never meet due process requirements under any circumstances. Although the Court disagreed with this broad premise, it gave the caveat that:

> [This] holding ... is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue.

*Id.* at 188. The Court further held that, even where a confession of judgment statute itself was facially constitutional, it still may be unconstitutional according to the facts of a particular case if the confession was not voluntarily, intelligently, and knowingly given — especially in situations involving unequal bargaining power and lack of consideration. *Id.*

12. *Swarb* was a challenge to Pennsylvania's cognovit system and, like *Overmyer*, upheld the constitutionality of that system on its face. 405 U.S. at 200. The Court again carefully limited itself to narrow circumstances where parties had equal bargaining power. *Id.* at 201. Part of the underlying decision in *Swarb*, that a more limited class of low-income consumers challenging the constitutionality of the statute as applied to them could proceed, was unchallenged and thus allowed to remain intact by the Court. *Id.*

8

E-FILED 2023 NOV 08 12:55 PM LINN - CLERK OF DISTRICT COURT

13. The statutes facially upheld in these two cases and state interpretations of those statutes differed in many respects from Iowa's.

    a. The Pennsylvania statute upheld in *Swarb* provided that conditional confessions (e.g., those styled as payment plans) couldn't be filed without serving a complaint. *Id.* at 193-94. Notice was required immediately after judgment was entered, and there were specific, effectively non-time-barred processes for challenging the confession after entry. *Id.* It is also notable that, in 1972, there was effectively no wage garnishment in Pennsylvania, which remains true with limited exceptions today. *See* 42 Pa. C.S. § 8127.

    b. Ohio's statute, similarly, had additional protections that do not appear in Iowa's statute. For example, post-judgment notice was required. *Overmyer*, 405 U.S. at 182. The confession was to be produced "to the court," rather than the clerk. *Id.* at 175, n.1. *Cf.* Iowa Code § 676.3. Outside of the statute itself, the Court recognized that the standard employed by the Ohio Supreme Court for re-opening a confession of judgment case was very liberal:

> [I]f there is credible evidence supporting the defense . . . from which reasonable minds may reach different conclusions, it is then the duty of the court to suspend the judgment and permit the issue raised by the pleadings to be tried by a jury, or, if a jury is waived, by the court.

*Overmyer*, 405 U.S. at 189 (Douglas, J., concurring) (quoting *Livingstone v. Rebman*, 158 N.E.2d 366, 375 (Ohio 1959)).

14. In the same term as *Overmyer* and *Swarb*, the Court laid out due process minima for unsophisticated consumers in a different context: prejudgment replevin. *Fuentes v. Shevin*, 407 U.S. 67 (1972). The *Fuentes* Court noted that these matters, almost exclusively involving financing companies against *pro se* low-income debtors, were "a far cry from *Overmyer*" in that:

> There was no bargaining over contractual terms between the parties who, in any event, were far from equal in bargaining power. The purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale. The appellees made no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights.

*Id.* at 95.

4

E-FILED  2023 NOV 08 12:55 PM LINN - CLERK OF DISTRICT COURT

15. Subsequent facial challenges to confession statutes reached different conclusions, based in part on differences between the statutes themselves.

16. Some states invalidated their statutes because their statutes were less protective than those reviewed in *Overmyer* and *Swarb*. For example, in *Isbell v. County of Sonoma*, the California Supreme Court found that former California Code of Civil Procedure §§ 1132 – 1135 contained "insufficient safeguards to assure that the debtor in fact executed a voluntary, knowing, and intelligent waiver." 577 P.2d 188, 189 (Cal. 1978).

17. California's statute circa 1978 was enacted the same year as the predecessor to Iowa Code Chapter 676 and uses language very similar (including some verbatim passages) to Iowa's current law. *Id.* at 189 – 190.

18. *Isbell* distinguished the constitutional question raised in *Overmyer* – whether confessions of judgment were *ever* constitutional – and the narrower question of whether a confession statute had adequate safeguards to determine whether a waiver was indeed valid under the terms of *Overmyer*, i.e. was it voluntary, intelligent, and knowing, or whether such a waiver could simply be presumed by the mere filing of a document with the clerk. *Id.* at 192. The *Isbell* court also found "the statutory procedure upheld in Overmyer was not nearly as harsh in operation as the California procedure at issue" given the modest protections available to consumers in Ohio. *Id.* at 195.

19. Moreover, the *Isbell* court also found that "the debtor's opportunity to seek post-judgment relief does not cure the unconstitutionality of a judgment entered without a valid waiver[.]" *Id.* at 194.

20. Ultimately, the Court in *Isbell* struck down the statute as a facial violation of the Fourteenth Amendment, holding that the California procedure "requir[ing] the clerk to enter judgment upon a document which is ordinarily insufficient to demonstrate a valid waiver...is constitutionally defective." *Id. See also Osmond v. Spence*, 359 F.Supp. 124 (D. Del. 1972).

21. In contrast, other states held that their confession of judgment systems had additional protections not present in the 1978 California code (or present-day Iowa), which gave judgment debtors a reasonable chance to challenge invalid confessions. *See, e.g., Meier v. Perdun*, 288 N.W.2d 165 (Wis. 1980) (liberal and not time-barred post-judgment remedies, including setting aside for excusable neglect, preserved constitutionality of the statute).

5

E-FILED 2023 NOV 08 12:55 PM LINN - CLERK OF DISTRICT COURT

22. Most states, however, headed off such challenges through legislative action either abolishing confessions of judgment or building in additional due process protections.

23. Unlike the statutes upheld in *Overmyer* and *Swarb* and, like California's prior statute in *Isbell*, Iowa's statute does not require any notice to be provided to the judgment debtor and does not prescribe any process to test the validity of the waiver, before or after judgment entered. *See generally* Iowa Code Chapter 676.

24. Admittedly, the Iowa Legislature – like California at the time of *Isbell* [2] – has enacted narrow limitations on authorizations to confess judgment in two areas, both in connection with the adoption of uniform acts protecting vulnerable consumers.

    a. Residential rental agreements may not authorize a person to confess judgment for a claim arising out of that agreement. Iowa Code 562A.11(1)(b). This provision tracks verbatim the language of Section 1.403(a)(2) of the 1972 version of the Uniform Residential Landlord Tenant Act, commentary for which cites a similar provision in Section 2.415 of the 1968 version of the Uniform Consumer Credit Code (UCCC), Iowa Code § 562A.11(1)(b).

    b. Iowa's version of the Consumer Credit Code presents a weakened version of the 1968's UCCC prohibition, in that it excludes confessions "executed after default on a claim arising out of a consumer credit transaction." Iowa Code § 537.3306.

25. The very limited protection for consumers in Iowa Code 537.3306 does not address the fundamental facial and as-applied constitutional problems created by Chapter 676. *See Isbell*, 577 P.2d at 192. Moreover, our sister courts have found the distinction between a confession obtained after rather than before default irrelevant to the constitutional analysis addressed below. *Underwood Farmers Elevator v. Leidholm*, 460 N.W.2d 711 (N.D. 1990).

### Chapter 676's Facial Constitutional Problems

26. In *Fuentes*, The United States Supreme Court summarized the "central meaning of procedural process" as follows:

> [p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.

---

[2] *Isbell*, 577 P.2d at 191.

6

407 U.S. at 80 (internal quotations omitted).

27. A fundamental requirement of due process is the opportunity to be heard at a meaningful
time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In
general, to determine whether the basic requirements of due process have been met, a court
must weigh:

    a.  the private interest that will be affected by the official action;

    b.  the risk of an erroneous deprivation of such interest through the procedures used,
and probable value, if any, of additional procedural safeguards; and

    c.  the Government's interest, including the fiscal and administrative burdens that the
additional or substitute procedures would entail.

*Id.* at 335.

28. As written, the antiquated language of Chapter 676 facially violates the guarantee of
procedural due process in the following ways:

    a.  **Failure to provide notice of the lawsuit.** *In re S.P.*, 672 N.W.2d 842 (Iowa 2003).
A judgment entered without notice of the suit is void for lack of personal
jurisdiction. *Id.* In addition, failure to provide notice makes the risk of erroneous
deprivation all but inevitable, per *Mathews*, 424 U.S. at 335.

    b.  **No opportunity for a hearing of any kind, let alone "at a meaningful time and
a meaningful manner."** *Fuentes* 407 U.S. at 80; *see also Underwood Farmers
Elevator v. Leidholm*, 460 N.W.2d 711 (N.D. 1990) ("We conclude that in order to
satisfy the *Overmyer* requirement of a case-by-case, fact-specific review, it is
necessary... for a hearing to determine whether Leidholm voluntarily, knowingly,
and intelligently waived his due-process rights to notice and a hearing when he
signed the confession of judgment.") Since pre-deprivation hearings are only to be
denied in "extraordinary situations," which do not exist here, this would require a
hearing before judgment was entered to determine whether the waiver was in fact
voluntary, intelligent, and knowing. *Fuentes*, 407 U.S. at 90. At the very least, a
hearing on validity of the waiver would be required prior to execution or
garnishment. *Community Thrift Club, Inc. vs. Dearborn Acceptance Corp.*, 487
F.Supp. 877 (N.D. Ill. 1980).

7

E-FILED 2023 NOV 08 12:56 PM LINN - CLERK OF DISTRICT COURT

c. **No opportunity to confront witnesses.** *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.")

d. **No opportunity to otherwise vacate a wrongfully entered judgment by confession.** *Isbell*, 577 P.2d at 194-95. *See also Overmyer*, 405 U.S. at 188-90 (discussion in both majority and concurrence upholding facial constitutional validity of confession statute, in part based on the fact that in Ohio trial courts must vacate a judgment by confession upon a showing of a valid defense).

e. **No judicial supervision of the process of establishing the judgment,** which by statute begins and ends solely in the hands of the clerk of court and the judgment creditor themselves. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975). *See also W.T. Mitchell v. Grant*, 416 U.S. 600, 617-18 (1974).

*As-Applied Constitutional Problems and Statutory Issues*

29. Even if Chapter 676 is facially constitutional, a particular confession may nevertheless fail on due process grounds if it was not obtained by the same standards governing criminal confessions – i.e., was it knowingly, intelligently, and voluntarily given. *Overmyer*, 405 U.S. at 187; *see also Lamberts v. Lillig*, 670 N.W.2d 129, 134 (Iowa 2003) (by analogy to criminal confession jurisprudence, waiver of civil constitutional parental caretaking interest invalid where waiver document and discussion was "relatively informal" and "relatively informal, with little if any discussion of the legal ramifications—much less the more specific constitutional ramifications—of its signing").

30. In the context of criminal confessions, undue influence will invalidate a confession. Coerced confessions are generally not considered to be voluntary. *See, e.g., State v. Quintero*, 480 N.W.2d 50 (Iowa 1992) (statements that defendant's nephew would be tried as adult as co-conspirator and face physical and sexual abuse in jail invalidated ensuing confession as involuntary). Similarly, explicit or even implied promises of leniency render criminal confessions involuntary and thus invalid. *See, e.g., State v. Mullin*, 85 N.W.2d 598 (Iowa 1957); *State v. McCoy*, 692 N.W.2d 6 (Iowa 2005). Failure to provide proper

8

E-FILED 2023 NOV 08 12:55 PM LINN - CLERK OF DISTRICT COURT

disclosures so that a defendant understands the legal significance of their decision will also invalidate a criminal confession. *See, e.g., Miranda v. Arizona*, 384 U.S. 436 (1966).

31. In a civil context, courts have also recognized the following factors in invalidating confessions of judgment:

   a. The bargaining power of the parties was significantly imbalanced, and the contract was one of adhesion. *Contrast Overmyer*, 405 U.S. at 186 (noting borrower's corporate structure supported conclusion that "[t]his is not a case of unequal bargaining power or overreaching") *with Fuentes*, 407 U.S. at 95 (noting borrowers' status as unsophisticated consumers supported conclusion that parties "were far from equal in bargaining power"); *see also Swarb*, 405 U.S. at 200–01 (distinguishing a class certification narrowed to consumers with annual incomes under $10,000).

   b. One party is represented by counsel and the other is not. *Overmyer*, 405 U.S. at 188; *Fuentes*, 407 U.S. at 94–95 (citing the distinction made so recently in *Overmyer*); *see also Lamberts*, 670 N.W.2d at 134 (pointing out significance in waiver of parental rights that neither party was represented).

   c. There was inadequate or even an absence of consideration given in return for the confession. *See Overmyer*, 405 U.S. at 183; *Swarb*, 405 U.S. at 201 ("absence of anything received in return" factor in invalidating confession).

32. Finally, "[t]he judgment can be only for money due or to become due, or to secure a person against contingent liabilities on behalf of the defendant, and must be for a specified sum." Iowa Code § 676.2. A document that does not specify the sum, or the correct sum, is deficient statutorily as well as constitutionally.

### *Federal Regulation of Confessions of Judgment*

33. Concurrently with the litigation described above, the Federal Trade Commission (FTC) targeted confessions of judgment as a *per se* unfair practice when employed against consumers.

34. In 1984, after almost a decade of rulemaking, the FTC adopted the Credit Practices Rule, which in part prohibits lenders and retail installment sellers from "directly or indirectly tak[ing] or receiv[ing] from a consumer an obligation that... constitutes or contains a

9

cognovit or confession of judgment ... or other waiver of the right to notice and the opportunity to be heard in the event of suit or process thereon." 16 C.F.R. § 444.2; *Trade Regulation Rule: Credit Practices*, 49 FR 7740-01 (March 1, 1984).

35. The FTC's extensive investigation into confessions of judgment lead to the following conclusions about consumer injury caused by the practice:

> ...Cognovit clauses typically are worded in arcane language and may appear in small print. Record evidence supports the conclusion that debtors are unaware that they have agreed to such clauses and that they waive due process rights by doing so. When debtors receive notice of a judgment entered against them, they may not understand its import or that they must act affirmatively to raise any defenses against it. This problem is exacerbated by the fact that many states... do not require notice informing the debtor of the right to contest the judgment or the grounds for doing so. As a result the debtor may fail to respond despite having valid defenses to the judgment. The rulemaking record shows that judgments entered by confession frequently are invalid on their face. It also shows that debtors frequently have some defense to the judgment.

> When debtors are not apprised of their rights and therefore fail to challenge facially invalid judgments or fail to asset valid defenses, the consumer injury is clear. The judgment debtor's property may be taken in satisfaction of a claim that would not survive judicial scrutiny at a hearing on its merits. Loss of this property causes economic hardship, since the debtor loses both its use and any equity in it. Moreover, consumers must replace any essential items that are seized, usually at a greater cost than they were credited with for the seized property...

> Even when debtors understand their right to challenge the entry of judgment, post-judgment remedies ... do not make them whole. The procedure for reopening a judgment is complex and debtors are unlikely to succeed without incurring the cost of hiring an attorney. ... Such costs are not necessarily incurred in a trial de novo.

> In a proceeding to reopen, the debtor may assert the same affirmative defenses that could have been used in defending against an action on the underlying claim. However, in a proceeding to reopen the burden and expense of instituting litigation shift from the creditor, where they would lie absent the confession of judgment, to the debtor. Because of the relative ease with which confessions of judgment may be entered, creditors may be tempted to use them indiscriminately. To the extent that consumers must institute legal action to defend against unwarranted claims, they suffer considerable economic injury through the costs that they must incur.

> Although consumers with meritorious defenses may ultimately succeed in vacating judgments against them, they are deprived of the full use of their property during the process. ... Until such a lien is dissolved, the consumer's ability to use the property for collateral or to dispose of it is significantly impaired. Moreover, because the lien is effective whether or not notice is mailed to or reaches the debtor, debtors may learn of its existence only at the precise point at which they seek to use the property for such purposes. By the time debtors succeed in dissolving the lien, the opportunity for which they intended to use the property may have passed,

10

... Accordingly, we find that the use of cognovits causes substantial consumer injury.

*Id.* (emphasis added).

### *Iowa Student Loan Liquidity Corporation (ISLLC)*

36. ISLLC, a private nonprofit corporation, was created in 1979 by proclamation of Governor Ray in response to Section 2105 of the federal Tax Reform Act of 1976, PL 94-455, Sec. 2105. The Tax Reform Act encouraged the growth of state-based secondary student loan markets by providing for the issuance of tax-exempt bonds by not-for-profit organizations organized to acquire and increase access to student loans. Iowa Code § 7C.4A(3).

37. Even though ISLLC is a private nonprofit organization, it maintains strong connections to both private for-profit and governmental entities. For example, the by-laws of ISLLC have provided for several decades that its board is chosen by the Governor,[3] and ISLLC has partnered extensively over the years with the Iowa College Student Aid Commission (ICSAC), a state agency. In addition to being strongly connected to state government ISLLC also owns a for-profit subsidiary, Aspire, that services student loans for ISLLC and others.[4] According to its 2022 IRS Form 990, ISLLC had $50,621,901 in revenue that year.

38. The loan at issue in this case is a "Partnership Loan" originally issued under a wholly private partnership between ISLLC and various private lenders. Partnership Loans have had a controversial history in Iowa. For example, the "intense marketing" of Partnership Loans by ISLLC was one factor recognized in 2008 for a large increase in student debt.[5] This was during a time that Iowans' student debt load was the second highest in the nation.[6] According to a 2008 report of the Iowa Attorney General, the loans were frequently marketed as the lowest-cost loans available to students even though that was not always

---

[3] Issue Review: Iowa Student Loan Liquidity Corporation, Iowa Legislative Services Agency Fiscal Services Division (October 8, 2019) https://www.legis.iowa.gov/docs/publications/IR/1050283.pdf
[4] *Id.*
[5] Iowa Board of Regents, Agenda item 13: Access And Affordability – Part II, a Board of Regents Initiative, pg.2 (December 10-11, 2008) https://www.legis.iowa.gov/docs/publications/SD/22851.pdf
[6] Testimony of Robert Shireman before the Joint Government Oversight Committee of the Iowa Legislature (October 29, 2007) https://www.legis.iowa.gov/docs/publications/SD/7087.pdf

11

the case. Furthermore, these marketing practices did not adequately promote federal loans or ensure that federal loan eligibility had been exhausted.[7]

39. These loans have been aggressively collected, long after the statutory limitation periods have expired, in a variety of ways including, as here, by procuring judgments through confession. These confessions were framed by ISLLC or its agents to debtors as "settlement agreements." Borrowers were induced into signing these agreements when ISLLC or its agents threatened them with garnishment, often for loans that were not backed up with adequate documentation, beyond the statute of limitations, or subject to other defenses.

40. Hundreds of these confessions were later filed over the ensuing years, sometimes leading to surprise garnishments with potentially devastating effects. For example, a former client of Iowa Legal Aid who was in this exact position was featured on a CNBC story in May 2020.[8] This case resulted in return of funds garnished and a satisfaction of judgment, after pointing out to the private collector both the age of the debt and the constitutional problems with the confession of judgment process.

41. Unfortunately, however, this unfair, deceptive, and unconstitutional practice continues to the present day, necessitating the filing of this lawsuit.

### The Confession of Judgment in Amanda McDonald's Case

42. The Plaintiff, Amanda McDonald, is 40 years old and a resident of Linn County, Iowa.

43. Ms. McDonald is currently subject to a $4,562.96 judgment in favor of ISLLC entered by confession on June 22, 2018 in Linn County Case No. LACV090580.

44. Upon information and belief, this alleged debt refers to a Partnership Loan first disbursed on October 29, 2003. The loan was taken while Ms. McDonald was attending Kirkwood Community College. She ultimately received her degree in 2014, after a several-year interruption in studies.

45. Based on ISLLC's documentation filed in LACV090580, Ms. McDonald signed a confession of judgment on June 13, 2014, more than 10 years after the loan was disbursed.

46. Ms. McDonald signed the confession of judgment after being contacted sometime in 2013 or 2014 by collection agents attempting to collect the Partnership Loan. These agents told

---

[7] Issue Review: Iowa Student Loan Liquidity Corporation, Iowa Legislative Services Agency Fiscal Services Division (October 8, 2019) https://www.legis.iowa.gov/docs/publications/IR/1050289.pdf

[8] https://www.cnbc.com/2020/05/11/debt-collectors-are-leveraging-the-courts-more-than-ever-before.html

12

her that if she did not enter into a payment plan, they would garnish her wages, which would negatively affect her credit. Ms. McDonald received no consideration for signing the confession.

47. The confession provided that Ms. McDonald owed ISLLC $4,882.96 on the balance of the Partnership Loan and referenced a separate "settlement agreement." This second document was never provided to Ms. McDonald, though a copy of the settlement agreement as well as an amendment thereto dated May 1, 2016 were filed by ISLLC in LACV090580.

48. The confession itself provided that if Ms. McDonald defaulted on her payment plan, the confession would be filed without issuance or service of notice for the full amount confessed (less credit for payments made), that judgment and execution would issue without further order of the court.

49. Ms. McDonald, who had neither legal counsel nor legal training, did not understand the consequences of signing the confession.

50. Ms. McDonald made payments during at least some of the next four years.

51. Slightly more than four years after the date noted on the confession of judgment, the confession itself was filed in LACV090580. Ms. McDonald was never served with a copy of any of the initial filings, nor did ISLLC attempt to serve those filings, nor did she have any actual knowledge that the confession had been filed.

52. According to an "affidavit of default" on the loan at issue signed by Kevin Abbott, ISLLC's attorney, "[a]fter applying all payments there remain[ed] a balance of $4,562.92" on Ms. McDonald's PLP loan.

53. Attached to the affidavit was a letter that ISLLC apparently purports to have sent to Ms. McDonald on April 24, 2018. This letter appears to be a "debt verification" letter required under the federal Fair Debt Collection Practices Act (FDCPA), though the letter did not give Ms. McDonald the opportunity to cure a default.

54. Less than three hours after the confession and affidavit of default were filed, the trial court in Linn County No. LACV090580 entered an order prepared by ISLLC imposing judgment against Ms. McDonald for $4,562.92.

55. Upon information and belief, Ms. McDonald would have raised the following defenses and counterclaims had she been provided proper notice and hearing rights, including but not limited to the following:

13

    a.  Failure to provide a predicate notice to cure under Iowa Code § 537.5111 [grounds for both dismissal under Iowa Code § 537.5110(7) and a counterclaim under Iowa Code § 537.5201(1)(a)(26)];

    b.  Unlawful debt collection under the Iowa Debt Collection Practices Act and federal Fair Debt Collection Practices Act;

    c.  That the action was barred under the Statute of Frauds, for failure to incorporate the essential written terms of the contract in writing;

    d.  That the action was barred under the applicable statute of limitations;

    e.  Failure to provide sufficient documentation to prove ISLLC's claim.

56. ISLLC attempted to enforce its judgment on multiple occasions. On August 22, 2019, the Court in Linn County No. LACV090580 entered an order condemning $172.63 following garnishment of Ms. McDonald's University of Iowa Community Credit Union. In addition to the loss of funds, said garnishment led to Ms. McDonald's account being frozen and ultimately closed. Beyond this garnishment, ISLLC made at least two other unsuccessful attempts at garnishment, further burdening judicial branch staff, law enforcement, garnishees, and Ms. McDonald.

## COUNT I – DECLARATORY & INJUNCTIVE RELIEF

57. A judgment entered without jurisdiction is subject to collateral attack. *City of Chariton v. J.C. Blunk Construction Co.*, 112 N.W.2d 829, 834 (Iowa 1962). This is true even if that judgment has been satisfied. *Id.*

58. A collateral attack on a judgment beyond the one-year period for a petition to vacate may be brought in an independent equitable action. *Id. See also, e.g., Rosenberg v. Jackson*, 247 N.W.2d 216 (Iowa 1976); *Johnson v. Mitchell*, 489 N.W.2d 411 (Iowa Ct. App. 1992). A void judgment is subject to attack at any time without resort to the rules governing vacating judgments. *Claeys v. Moldenschardt*, 148 N.W.2d 479, 482 (Iowa 1967).

59. A confession of judgment filed pursuant to Iowa Code Chapter 676 is void for lack of personal jurisdiction in that it was entered without notice or hearing. *See, e.g., In re S.P.*, 672 N.W.2d 842 (Iowa 2003).

60. These flaws additionally render Chapter 676 facially unconstitutional as a denial of due process of law under the 14th Amendment of the United States Constitution and Article I, Section 9 of the Iowa Constitution, as the antiquated and sparse language of that chapter

14

categorically does not provide adequate safeguards for a court to be able to assess whether a confession of judgment was given voluntarily, intelligently, and knowingly.

61. The particular facts of this case also render the confession of judgment at issue here jurisdictionally void on as-applied due process grounds.

    a. Ms. McDonald was induced into signing the confession of judgment by threats of garnishment that could not legally be conducted due to the age and insufficient documentary evidence of the loan.

    b. Ms. McDonald was unrepresented by counsel at the time this confession was executed, there was a massive imbalance of bargaining power and sophistication between her as an individual consumer and a lender with thousands of loans in its portfolio, and the confession and accompanying settlement agreement were contracts of adhesion.

    c. Ms. McDonald received no actual consideration for her complete waiver of all rights to receive notice of and contest the judgment.

62. Ms. McDonald is entitled to declaratory relief under Iowa R. Civ. P. 1.1101 *et seq.*, in addition to statutory provisions noted in Counts II & III below, on both the validity of the judgment in Linn County Case No. LACV090580 and the constitutionality of Iowa Code Chapter 676.

63. Without injunctive relief, Ms. McDonald is at risk of substantial injury in that she could be subject to garnishment, subject to a debtor's exam, subject to a judgment lien, subject to limitations on credit, and other consequences through the myriad active and passive ways that the judgment in Linn County Case No. LACV090580 may be enforced.

64. Ms. McDonald is also entitled to injunctive relief under Iowa R. Civ. P. 1.1501 *et seq.*, enjoining the direct or indirect enforcement of the judgment entered in Linn County Case No. LACV090580.

## COUNT II – IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUD ACT

65. Iowa Code § 714H.3(1) provides that

> A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission

15

E-FILED 2023 NOV 08 12:55 PM LINN - CLERK OF DISTRICT COURT

in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes.

66. The prohibited practice must be related to a material fact. Iowa Code § 714H.3(1).

67. "Deception" means an act or practice that is likely to mislead a substantial number of consumers as to a material fact or facts, Iowa Code § 714H.2(5)

68. A misrepresentation is material if it is "likely to affect a consumer's conduct or decision with regard to a product or service." *State ex rel. Miller v. Rahmani*, 472 N.W.2d 254, 258 (Iowa 1991). A statement which is literally true may nonetheless be deceptive. *Id.*

69. ISLLC's actions were "deceptive" under IPRACFA for reasons not limited to:

   a. Representing the debt as valid even though it was subject to challenge under statute of frauds, statute of limitations, and other grounds.

   b. Threatening garnishment on a time-barred debt, a remedy not allowed by law, in order to induce the signing of the confession.

70. An "unfair practice" means the same as defined in section 714.16, Iowa Code § 714H.2(9). An unfair practice is an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces. Iowa Code § 714.16(1)(n).

71. State and federal courts alike consider an unfair practice to be "nothing more than conduct a court of equity would consider unfair." *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W. 2d 518, 525 (Iowa 2005) (collecting cases). The same courts have found that "statutes that prohibit "unfair practices" are designed to infuse flexible equitable principles into consumer protection law so that it may respond to the myriad of unscrupulous business practices modern consumers face." *Id.*

72. Iowa's definitions of unfair practices themselves are rooted in and strongly influenced by the regulations and policy interpretations of the FTC, and the caselaw those materials have generated. As noted, the FTC's Credit Practices Rule has prohibited the use of confession clauses in consumer transactions since 1984:

> In connection with the extension of credit to consumers in or affecting commerce, as commerce is defined in the Federal Trade Commission Act, it is an unfair act or practice within the meaning of Section 5 of that Act for a lender or retail installment seller directly or indirectly to take or receive from a consumer an obligation that... [c]onstitutes or contains a cognovit or confession of judgment ... warrant of attorney, or other waiver of the right to notice and the opportunity to be heard in the event of suit or process thereon.

16

E-FILED  2023 NOV 08 12:55 PM LINN - CLERK OF DISTRICT COURT

16 C.F.R. § 444.2(a)(1).

73. The rulemaking materials the FTC employed in promulgating this rule analyze confessions of judgment under the same factors the Iowa Legislature has provided in unfairness analysis – an injury to consumers that is (1) substantial, (2) unavoidable, and (3) is not outweighed by the countervailing consumer or competitive benefits the practice provides. *Trade Regulation Rule: Credit Practices*, 49 FR 7740 (March 1, 1984). *accord* Iowa Code § 714.16(1)(n).

    a. The FTC found that "confessions of judgment cause injury by depriving consumers of notice of a suit or hearing and the opportunity to appear and present any meritorious claims or defenses… [o]nce obtained, the confessed judgment can be turned into a lien on the consumer's real and personal property." *Trade Regulation Rule: Credit Practices*, 49 FR at 7748.

    b. The rulemaking involved empirical data gathered from surveys of low-income consumers. From this data, the FTC found that, "[o]f the creditor remedies addressed by the [Credit Practices] rule, confessions of judgment are least likely to be understood by consumers." *Id.* at 7749. Further, per the FTC, "consumers rarely understand the significance of these clauses because they are worded in obscure technical language and because the concept of judgment by confession conflicts with the common understanding of basic due process rights." Thus, "consumers cannot reasonably avoid the injury caused by cognovits." *Id.*

    c. The FTC found that prohibiting confessions of judgment would lead to increased collection and legal costs, and potentially higher interest rates and reduced credit availability for borrowers. However, reasoning that creditors were still left with more than ample remedies, the FTC found that these factors did not outweigh the negative aspects of the practice.

74. In addition to the reasons articulated by the FTC, ISLLC's actions were "unfair" under IPRACFA for reasons not limited to:

    a. They shift the burden of proof that would otherwise be on the creditor to the debtor.

    b. ISLLC secured the confession in the absence of consideration or any benefit to Ms. McDonald.

17

75. Iowa Code § 714H.5 authorizes a consumer who suffers an ascertainable loss of money or property to recover actual damages, temporary and permanent injunctive relief, attorney fees, and costs.

76. ISLLC acted with willful or wanton disregard for the rights or safety of Ms. McDonald, justifying an additional statutory damages award of up to three times the amount of actual damages.

## COUNT III – DEPRIVATION OF DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION – 42 U.S.C. § 1983

77. As outlined in detail above, ISLLC, acting under color of law for purposes of 42 U.S.C. 1983, deprived Ms. McDonald of due process of law by utilizing a statutory process that is facially unconstitutional in that it does not provide adequate safeguards for a court to gauge whether this waiver of rights was voluntarily, knowingly, and intelligently given.

78. In addition, as outlined in detail above, ISLLC, acting under color of law, deprived Ms. McDonald of due process of law by obtaining a confession of judgment that was, under the circumstances of her case, not voluntarily, intelligently, or knowingly given.

79. Although a private actor, ISLLC is nevertheless liable under 42 U.S.C. 1983 because it "has acted together with or has obtained significant aid from state officials" in obtaining a judgment by confession which violates Ms. McDonald's constitutional rights. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 935 (1982) (creditor using unconstitutional pre-judgment attachment procedures acting in concert with state officials sufficient to invoke color of law and thus 1983 liability).

80. As the United States Supreme Court stated in *Fuentes*:

> The requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions. But the fair process of decision making that it guarantees works, by itself, to protect against arbitrary deprivation of property. For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that 'fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights... And no better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.

*Fuentes*, 407 U.S. at 81. Ms. McDonald was denied these most basic constitutional protections enjoyed by civil litigants by ISLLC.

18

E-FILED 2023 NOV 08 12:55 PM LINN - CLERK OF DISTRICT COURT

81. In addition, as explained by the FTC in promulgating the Credit Practices Rule:

> Judgment debtors whose property is encumbered through the existence of a creditor's lien lose the full use and enjoyment of their property. Debtors are unlikely to be able to sell it, for example, or to use it as collateral while it is subject to a lien. Although the debtor may eventually prevail on the merits and dissolve the lien, the post-judgment rights provided by statute cannot cure the deprivation experienced while the action is pending. Even a temporary and non-final deprivation of the use of one's property is a matter of constitutional significance and invokes the protection of the due process clause.

Trade Regulation Rule: Credit Practices, 49 FR 7740-01, 7749 (March 1, 1984). *See also* Iowa Code § 624.23.

82. A person injured on a claim actionable under 42 U.S.C. 1983 is entitled to compensatory damages, punitive damages, equitable relief, attorney fees, and costs. 42 U.S.C. §§ 1983, 1988.

## COUNT IV – UNJUST ENRICHMENT / RESTITUTION

83. "Where property has been received as a result of a judgment improperly obtained equity may order the respondent to reconvey it." *City of Chariton v. J.C. Blunk Construction Co.*, 112 N.W.2d 829, 834 (Iowa 1962).

84. The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation.

85. There are three elements to unjust enrichment: (1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances. *Pro Com., LLC v. K & L Custom Farms, Inc.*, 870 N.W.2d 273 (Iowa Ct. App. 2015) (internal quotations and citation omitted).

86. Ms. McDonald is entitled to full restitution of any amounts garnished, levied, assigned, attached, or otherwise taken to apply towards the debt in question, regardless of whether those amounts were taken voluntarily or involuntarily from the Petitioner.

19

E-FILED 2023 NOV 08 12:56 PM LINN - CLERK OF DISTRICT COURT

**RELIEF REQUESTED**

WHEREFORE, the Petitioner asks that this Court grant the following relief:

A. Declaratory relief holding the judgment entered in Linn County Case No. LACV090580 on June 22, 2018 to be void and unenforceable;

B. Declaratory relief holding Iowa Code Chapter 676 to be an unconstitutional deprivation of due process of law under both Fourteenth Amendment of the U.S. Constitution and Article 1, Section 9 of the Iowa Constitution, both facially and as applied to the circumstances of the Petitioner's case;

C. Injunctive relief under Iowa Rule of Civil Procedure 1.1501 *et seq.*, Iowa Code § 714H.5, and 42 U.S.C. 1983, enjoining the direct or indirect enforcement of the judgment entered in Linn County Case No. LACV090580;

D. Compensatory damages under 42 U.S.C. 1983 in an amount to be determined at trial;

E. Actual damages under IPRACFA, Iowa Code Chapter 714H, plus punitive damages of up to three times actual damages;

F. Reasonable attorney fees and costs pursuant to 28 U.S.C. § 1920, 42 U.S.C. § 1988, and Iowa Code 714H.5;

G. Restitution for any amounts by which ISLLC was unjustly enriched; and

H. Any other relief the Court deems just and equitable under the circumstances.

Respectfully submitted,
AMANDA MCDONALD, Petitioner

/s/Patrick Bigsby
Patrick Bigsby, AT0013028
Iowa Legal Aid
317 7th Ave. SE, Ste. 404
Cedar Rapids, IA 52401
319-364-6108
pbigsby@iowalaw.org
ATTORNEY FOR PETITIONER

/s/ Alex Kornya
Alexander Vincent Kornya, AT0009810
Iowa Legal Aid

20

E-FILED   2023 NOV 08 12:55 PM LINN - CLERK OF DISTRICT COURT

666 Walnut St., 25th Floor
Des Moines, Iowa 50309
(515) 243-1193
akornya@iowalaw.org
ATTORNEY FOR PETITIONER

21

E-FILED  2023 NOV 08 12:55 PM LINN - CLERK OF DISTRICT COURT

VERIFICATION

STATE OF IOWA )
)ss
COUNTY OF LINN )

I, Amanda McDonald, being first duly sworn on oath, depose and state that I have read and know the contents of this Petition and the statements and allegations contained therein are true and correct.

_____
Amanda McDonald, Petitioner

SUBSCRIBED AND SWORN TO before me this ____ day of _____, 2023.

_____
Notary Public in and for the State of Iowa.

ELIZABETH M STANBERRY
Commission Number 12709
My Commission Expires

23

# U.S. District Court
## Northern District of Iowa (Cedar Rapids)
## CIVIL DOCKET FOR CASE #: 1:23-cv-00111-CJW-MAR

McDonald v. Iowa Student Loan Liquidity Corporation
Assigned to: Chief Judge CJ Williams
Referred to: Magistrate Judge Mark A Roberts
Related Case: 2:23-cv-01036-CJW-MAR
Case in other court: Iowa District Court for Linn County,
              CVCV103465
Cause: 28:1441 Removal-Confessed Judgment

Date Filed: 12/20/2023
Jury Demand: None
Nature of Suit: 950 Constitutional - State
Statute
Jurisdiction: Federal Question

**Plaintiff**

**Amanda McDonald**
    represented by  **Alexander Vincent Kornya**
           Iowa Legal Aid
           666 Walnut Street
           Suite 25th Floor
           Des Moines, IA 50309
           515-243-1193
           Email: akornya@iowalaw.org
           *LEAD ATTORNEY*
           *ATTORNEY TO BE NOTICED*

           **Patrick Raymond Bigsby**
           Iowa Legal Aid
            317 7th Avenue SE
           Suite 404
           Cedar Rapids, IA 52401
           319 364 6108
           Email: pbigsby@iowalaw.org
           *LEAD ATTORNEY*
           *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Iowa Student Loan Liquidity
Corporation**
    represented by  **Jason M Craig**
           Ahlers & Cooney, P.C.
           100 Court Ave
           Suite 600
           Des Moines, IA 50309
           515 246 0372
           Email: jcraig@ahlerslaw.com
           *LEAD ATTORNEY*
           *ATTORNEY TO BE NOTICED*



**EXHIBIT**

13

| Date Filed | # | Docket Text |
|---|---|---|
| 12/20/2023 | 1 | NOTICE of Removal by Iowa Student Loan Liquidity Corporation from Iowa District Court for Linn County, case number CVCV103465. Defendant was served with state court petition/documents on November 28, 2023 ( Filing fee $ 405 receipt number AIANDC-4061908), filed by Iowa Student Loan Liquidity Corporation. Scheduling Report due by 2/20/2024 (Attachments: # 1 Local Rule 81(a) Removal Information Form, # 2 Original Notice and Petition, # 3 Application to Defer Costs, # 4 Order Deferring Costs, # 5 Return of Service) (Craig, Jason) (Additional attachment(s) added on 12/22/2023: # 6 Civil Cover Sheet) (rjs). (Entered: 12/20/2023) |
| 12/20/2023 | 2 | ANSWER to Complaint by Iowa Student Loan Liquidity Corporation.(Craig, Jason) (Entered: 12/20/2023) |
| 12/21/2023 | | Judge CJ Williams and Magistrate Judge Mark A Roberts added. No conflicts identified. (rjs) (Entered: 12/21/2023) |
| 12/21/2023 | 3 | NOTICE to Attorney Patrick Bigsby Not Admitted to Practice in the United States District Court For the Northern District of Iowa. Admissions due by 1/4/2024. (eBigsby) (rjs) (Main Document 3 replaced to correct date on notice on 12/22/2023) (rjs). (Entered: 12/21/2023) |
| 12/21/2023 | 4 | STATE Court Petition by Amanda McDonald. (rjs) (Entered: 12/21/2023) |
| 12/21/2023 | | Set Deadlines: Defendant Iowa Student Loan Liquidity Corporation LR 7.1 Disclosure Statement due by 1/11/2024. (rjs) (Entered: 12/21/2023) |
| 12/21/2023 | 5 | DOCKET Annotation: Please see new civil case removal packet attached. (rjs) (Entered: 12/21/2023) |
| 12/21/2023 | 6 | CORPORATE Disclosure Statement by Iowa Student Loan Liquidity Corporation identifying Corporate Parent Aspire Resouces Inc for Iowa Student Loan Liquidity Corporation. (Craig, Jason) Modified to remove caps on 12/22/2023 (rjs). (Entered: 12/21/2023) |
| 01/10/2024 | 7 | NOTICE of Appearance by Patrick Raymond Bigsby on behalf of Amanda McDonald. (Bigsby, Patrick) (Entered: 01/10/2024) |
| 02/20/2024 | 8 | PROPOSED Scheduling Order and Discovery Plan by Plaintiff Amanda McDonald (Bigsby, Patrick) (Entered: 02/20/2024) |
| 02/22/2024 | 9 | ORDER Setting Hearing: Scheduling Conference set for 2/28/2024 10:30 AM in Telephonic Hearing before Magistrate Judge Mark A Roberts. See Order for Court's Zoom.Gov audio instructions. Failure to appear for this scheduling conference could result in sanctions by the Court. Signed by Magistrate Judge Mark A Roberts on 2/22/2024. (jag) (Entered: 02/22/2024) |
| 02/29/2024 | 10 | MINUTE Entry for proceedings held before Magistrate Judge Mark A Roberts: Telephonic Scheduling Conference held on 2/28/2024. Official Court Record: FTR Gold (jag) (Entered: 02/29/2024) |
| 02/29/2024 | 11 | SCHEDULING Order and Discovery Plan: Initial Disclosures due date of 3/18/2024 but not filed with the court. Add Parties Deadline due by 5/20/2024. Amended Pleadings due by 5/20/2024. Plaintiff's Expert Witness due by 7/22/2024. Defendant's Expert Witnesses due by 9/20/2024. Plaintiff's Rebuttal Experts due by 10/21/2024. Discovery due by 12/20/2024. Motions due by 1/21/2025. Trial Ready Deadline |

Case 4:23-cv-00515-RGE-WPK   Document 12-1   Filed 04/01/24   Page 40 of 117
https://ecf.iand.uscourts.gov/cgi-bin/DktRpt.pl?192329887955956-L_1_0-1

| | | 6/20/2025. Signed by Magistrate Judge Mark A Roberts on 2/29/2024. (jag) (Entered: 02/29/2024) |
|---|---|---|
| 03/18/2024 | 12 | JOINT STATUS Report by Amanda McDonald (Kornya, Alexander) (Entered: 03/18/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/28/2024 15:17:24 | | |
| **PACER Login:** | patrickbigsby | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-00111-CJW-MAR |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

E-FILED  2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT IN AND FOR DUBUQUE COUNTY

| | |
|---|---|
| CASSANDRA MARIE GIBSON,<br>Petitioner,<br><br>vs.<br><br>IOWA STUDENT LOAN LIQUIDITY<br>CORPORATION<br>Respondent. | CASE NO.: CVCV115373<br><br><br>PETITION |

### FACTS

#### Background

1. "Entry of judgment by confession has long been viewed with judicial distaste. Such judgments have been described as the loosest way of binding a man's property that was devised in any civilized country." *Tara Enters., Inc. v. Daribar Mgmt. Corp.*, 369 N.J. Super. 45, 56 (N.J. App. Div. 2004) (citing *Alderman v. Diament*, 7 N.J.L. 197, 198 (1824)).

2. A confession of judgment, sometimes referred to as a cognovit, is an ancient legal device that operates as the civil equivalent to a criminal confession, often waiving of each and every right otherwise considered fundamental to due process of law in civil lawsuits.

3. Respondent Iowa Student Loan Liquidity Corporation (ISLLC) or its agents induced borrowers, including Petitioner Cassandra Gibson, to sign documents asserted to be "payment plans" or "settlement agreements" for private student loans alleged to be in default. These private loans were often time-barred, poorly documented, and subject to several affirmative defenses and claims.

4. These "payment agreements" included authorizations to confess judgment. ISLLC coerced borrower signatures by threatening garnishment and other harsh collection methods, even though these remedies were not legally available. Borrowers, unrepresented by counsel and receiving no consideration, uniformly did not understand that these agreements constituted a complete waiver of their due process rights, ability to raise viable defenses. When borrowers missed a payment, ISLLC filed the confessions with the clerk of court. The confessions became immediately enforceable, just like a judgment issued after trial.

5. ISLLC used these confessions to garnish wages and accounts, as well taking other harsh collection actions – all without any advance notice, without any supervision or review by

1

**EXHIBIT**

2A

E-FILED  2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

a court, without the opportunity to raise a defense or counterclaim, and without any opportunity to contest ISLLC's claims.

6. As recognized in commentary to the Uniform Consumer Credit Code more than 50 years ago, "the great majority of States prohibit… authorizations to confess judgment." Comment to Uniform Consumer Credit Code Sec. 3.306 (1978).

7. In the last half century, 13 states have abolished the use of authorizations to confess judgment entirely. Many others have reformed their existing laws to provide additional protections, especially for unsophisticated parties such as consumers. Based on state reforms, litigation, and action by federal agencies such as the Federal Trade Commission, the prevalence of confessions, at least in transactions with unsophisticated and unrepresented parties, has greatly receded throughout most of the country.

8. Alas, this has not been so in Iowa. The version of Iowa Code Chapter 676 effective today, which governs confessions of judgment, has effectively the same language appearing in Iowa's first state code enacted in 1851. This was the year that Abraham Lincoln's father died, the second year of Millard Fillmore's presidency, and 17 years prior to the ratification of the 14th Amendment to the United States Constitution. In the 155 years since that ratification, Chapter 676 has — improbably — never been scrutinized by an appellate court on due process grounds.

9. Even though this chapter of the code governs a complete and unqualified waiver of every due process right normally enjoyed by civil litigants, the entire chapter (including section headings) contains only 193 words,[1] and reads as follows:

> **676.1. Judgment by confession—how entered**
>
> A judgment by confession, without action, may be entered by the clerk of the district court.
>
> **676.2. For money only—contingent liability**
>
> The judgment can be only for money due or to become due, or to secure a person against contingent liabilities on behalf of the defendant, and must be for a specified sum.
>
> **676.3. Statement**

---

[1] For perspective, this is only 61% of the number of words contained in the studio version of Electric Light Orchestra's 1979 hit "Don't Bring Me Down."

2

E-FILED  2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

A statement in writing must be made, signed, and verified by the defendant, and filed with the clerk, to the following effect:

1. If for money due or to become due, it must state concisely the facts out of which the indebtedness arose, and that the sum confessed therefor is justly due, or to become due, as the case may be.

2. If for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting such liability, and must show that the sum confessed therefor does not exceed the same.

**676.4. Judgment—execution**

The clerk shall thereupon make an entry of judgment in the clerk's court record for the amount confessed and costs, and shall issue execution thereon as in other cases, when ordered by the party entitled thereto.

10. The United States Supreme Court addressed the due process implications of confessions of judgment in two concurrently decided cases in 1972: *D.H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174 (1972) and *Swarb v. Lennox*, 405 U.S. 191 (1972). Both cases are addressed throughout this petition.

11. In *Overmyer*, the Court upheld the facial constitutionality of Ohio's cognovit statute in the context of a lawsuit between two corporate actors. *Overmyer* at 405 U.S. at 187. The nature of the challenge was that a confession of judgment could never meet due process requirements under any circumstances. Although the Court disagreed with this broad premise, it gave the caveat that:

> [This] holding ... is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue.

*Id.* at 188. The Court further held that, even where a confession of judgment statute itself was facially constitutional, it still may be unconstitutional according to the facts of a particular case if the confession was not voluntarily, intelligently, and knowingly given – especially in situations involving unequal bargaining power and lack of consideration. *Id.*

12. *Swarb* was a challenge to Pennsylvania's cognovit system and, like *Overmyer*, upheld the constitutionality of that system on its face. 405 U.S. at 200. The Court again carefully limited itself to narrow circumstances where parties had equal bargaining power. *Id.* at 201. Part of the underlying decision in *Swarb*, that a more limited class of low-income

3

E-FILED  2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

consumers challenging the constitutionality of the statute as applied to them could proceed, was unchallenged and thus allowed to remain intact by the Court. *Id.*

13. The statutes facially upheld in these two cases and state interpretations of those statutes differed in many respects from Iowa's.

   a. The Pennsylvania statute upheld in *Swarb* provided that conditional confessions (e.g., those styled as payment plans) couldn't be filed without serving a complaint. *Id.* at 193-94. Notice was required immediately after judgment was entered, and there were specific, effectively non-time-barred processes for challenging the confession after entry. *Id.* It is also notable that, in 1972, there was effectively no wage garnishment in Pennsylvania, which remains true with limited exceptions today. *See* 42 Pa. C.S. § 8127.

   b. Ohio's statute, similarly, had additional protections that do not appear in Iowa's statute. For example, post-judgment notice was required. *Overmyer*, 405 U.S. at 182. The confession was to be produced "to the court," rather than the clerk. *Id.* at 175, n.1. *Cf.* Iowa Code § 676.3. Outside of the statute itself, the Court recognized that the standard employed by the Ohio Supreme Court for re-opening a confession of judgment case was very liberal:

   > [I]f there is credible evidence supporting the defense . . . from which reasonable minds may reach different conclusions, it is then the duty of the court to suspend the judgment and permit the issue raised by the pleadings to be tried by a jury, or, if a jury is waived, by the court.

   *Overmyer*, 405 U.S. at 189 (Douglas, J., concurring) (quoting *Livingstone v. Rebman*, 158 N.E.2d 366, 375 (Ohio 1959).

14. In the same term as *Overmyer* and *Swarb*, the Court laid out due process minima for unsophisticated consumers in a different context: prejudgment replevin. *Fuentes v. Shevin*, 407 U.S. 67 (1972). The *Fuentes* Court noted that these matters, almost exclusively involving financing companies against *pro se* low-income debtors, were "a far cry from *Overmyer*" in that:

   > There was no bargaining over contractual terms between the parties who, in any event, were far from equal in bargaining power. The purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale. The appellees made no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights.

· 4

E-FILED 2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

*Id.* at 95.

15. Subsequent facial challenges to confession statutes reached different conclusions, based in part on differences between the statutes themselves.

16. Some states invalidated their statutes because their statutes were less protective than those reviewed in *Overmyer* and *Swarb*. For example, in *Isbell v. County of Sonoma*, the California Supreme Court found that former California Code of Civil Procedure §§ 1132 – 1135 contained "insufficient safeguards to assure that the debtor in fact executed a voluntary, knowing, and intelligent waiver." 577 P.2d 188, 189 (Cal. 1978).

17. California's statute circa 1978 was enacted the same year as the predecessor to Iowa Code Chapter 676 and uses language very similar (including some verbatim passages) to Iowa's current law. *Id.* at 189 – 190.

18. *Isbell* distinguished the constitutional question raised in *Overmyer* – whether confessions of judgment were *ever* constitutional – and the narrower question of whether a confession statute had adequate safeguards to determine whether a waiver was indeed valid under the terms of *Overmyer*, i.e. was it voluntary, intelligent, and knowing, or whether such a waiver could simply be presumed by the mere filing of a document with the clerk. *Id.* at 192. The *Isbell* court also found "the statutory procedure upheld in Overmyer was not nearly as harsh in operation as the California procedure at issue" given the modest protections available to consumers in Ohio. *Id.* at 195.

19. Moreover, the *Isbell* court also found that "the debtor's opportunity to seek post-judgment relief does not cure the unconstitutionality of a judgment entered without a valid waiver[.]" *Id.* at 194.

20. Ultimately, the Court in *Isbell* struck down the statute as a facial violation of the Fourteenth Amendment, holding that the California procedure "requir[ing] the clerk to enter judgment upon a document which is ordinarily insufficient to demonstrate a valid waiver...is constitutionally defective." *Id. See also Osmond v. Spence*, 359 F.Supp. 124 (D. Del. 1972).

21. In contrast, other states held that their confession of judgment systems had additional protections not present in the 1978 California code (or present-day Iowa), which gave judgment debtors a reasonable chance to challenge invalid confessions. *See, e.g., Meier v. Perdun*, 288 N.W.2d 165 (Wis. 1980) (liberal and not time-barred post-judgment remedies, including setting aside for excusable neglect, preserved constitutionality of the statute).

5

22. Most states, however, headed off such challenges through legislative action either abolishing confessions of judgment or building in additional due process protections.

23. Unlike the statutes upheld in *Overmyer* and *Swarb* and like California's prior statute in *Isbell*, Iowa's statute does not require any notice to be provided to the judgment debtor and does not prescribe any process to test the validity of the waiver, before or after judgment entered. *See generally* Iowa Code Chapter 676.

24. Admittedly, the Iowa Legislature – like California at the time of *Isbell* [2] – has enacted narrow limitations on authorizations to confess judgment in two areas, both in connection with the adoption of uniform acts protecting vulnerable consumers.

    a.  Residential rental agreements may not authorize a person to confess judgment for a claim arising out of that agreement. Iowa Code 562A.11(1)(b). This provision tracks verbatim the language of Section 1.403(a)(2) of the 1972 version of the Uniform Residential Landlord Tenant Act, commentary for which cites a similar provision in Section 2.415 of the 1968 version of the Uniform Consumer Credit Code (UCCC). Iowa Code § 562A.11(1)(b).

    b.  Iowa's version of the Consumer Credit Code presents a weakened version of the 1968's UCCC prohibition, in that it excludes confessions "executed after default on a claim arising out of a consumer credit transaction." Iowa Code § 537.3306.

25. The very limited protection for consumers in Iowa Code 537.3306 does not address the fundamental facial and as-applied constitutional problems created by Chapter 676. *See Isbell*, 577 P.2d at 192. Moreover, our sister courts have found the distinction between a confession obtained after rather than before default irrelevant to the constitutional analysis addressed below. *Underwood Farmers Elevator v. Leidholm*, 460 N.W.2d 711 (N.D. 1990).

### *Chapter 676's Facial Constitutional Problems*

26. In *Fuentes*, The United States Supreme Court summarized the "central meaning of procedural process" as follows:

    > [p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.

---

[2] *Isbell*, 577 P.2d at 191.

6

E-FILED 2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

407.U.S. at 80 (internal quotations omitted).

27. A fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In general, to determine whether the basic requirements of due process have been met, a court must weigh:

    a. the private interest that will be affected by the official action;

    b. the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and

    c. the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

*Id.* at 335.

28. As written, the antiquated language of Chapter 676 facially violates the guarantee of procedural due process in the following ways:

    a. **Failure to provide notice of the lawsuit.** *In re S.P.*, 672 N.W.2d 842 (Iowa 2003). A judgment entered without notice of the suit is void for lack of personal jurisdiction. *Id.* In addition, failure to provide notice makes the risk of erroneous deprivation all but inevitable, per *Mathews*. 424 U.S. at 335.

    b. **No opportunity for a hearing of any kind, let alone "at a meaningful time and a meaningful manner."** *Fuentes* 407 U.S. at 80; *see also Underwood Farmers Elevator v. Leidholm,* 460 N.W.2d 711 (N.D. 1990) ("We conclude that in order to satisfy the *Overmyer* requirement of a case-by-case, fact-specific review, it is necessary... for a hearing to determine whether Leidholm voluntarily, knowingly, and intelligently waived his due-process rights to notice and a hearing when he signed the confession of judgment.") Since pre-deprivation hearings are only to be denied in "extraordinary situations," which do not exist here, this would require a hearing before judgment was entered to determine whether the waiver was in fact voluntary, intelligent, and knowing. *Fuentes,* 407 U.S. at 90. At the very least, a hearing on validity of the waiver would be required prior to execution or garnishment. *Community Thrift Club, Inc. vs. Dearborn Acceptance Corp.,* 487 F.Supp. 877 (N.D. Ill. 1980).

7

E-FILED  2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

   c.  **No opportunity to confront witnesses.** *Goldberg v. Kelly*, 397 U.S. 254, 269
       (1970) ("In almost every setting where important decisions turn on questions of
       fact, due process requires an opportunity to confront and cross-examine adverse
       witnesses.")

   d.  **No opportunity to otherwise vacate a wrongfully entered judgment by
       confession.** *Isbell*, 577 P.2d at 194-95. *See also Overmyer*, 405 U.S. at 188-90
       (discussion in both majority and concurrence upholding facial constitutional
       validity of confession statute, in part based on the fact that in Ohio trial courts must
       vacate a judgment by confession upon a showing of a valid defense).

   e.  **No judicial supervision, or nominal judicial supervision in a non-meaningful
       manner, of the process of establishing the judgment,** which by statute begins and
       ends solely in the hands of the clerk of court and the judgment creditor themselves.
       *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601 (1975). *See also W.T.
       Mitchell v. Grant,* 416 U.S. 600, 617-18 (1974).

   *As-Applied Constitutional Problems and Statutory Issues*

29. Even if Chapter 676 is facially constitutional, a particular confession may nevertheless fail
    on due process grounds if it was not obtained by the same standards governing criminal
    confessions – i.e., was it knowingly, intelligently, and voluntarily given. *Overmyer*, 405
    U.S. at 187; *see also Lamberts v. Lillig*, 670 N.W.2d 129, 134 (Iowa 2003) (by analogy to
    criminal confession jurisprudence, waiver of civil constitutional parental caretaking
    interest invalid where waiver document and discussion was "relatively informal" and
    "relatively informal, with little if any discussion of the legal ramifications—much less the
    more specific constitutional ramifications—of its signing").

30. In the context of criminal confessions, undue influence will invalidate a confession.
    Coerced confessions are generally not considered to be voluntary. *See, e.g., State v.
    Quintero*, 480 N.W.2d 50 (Iowa 1992) (statements that defendant's nephew would be tried
    as adult as co-conspirator and face physical and sexual abuse in jail invalidated ensuing
    confession as involuntary). Similarly, explicit or even implied promises of leniency render
    criminal confessions involuntary and thus invalid. *See, e.g., State v. Mullin*, 85 N.W.2d 598
    (Iowa 1957); *State v. McCoy*, 692 N.W.2d 6 (Iowa 2005). Failure to provide proper

8

E-FILED  2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

disclosures so that a defendant understands the legal significance of their decision will also invalidate a criminal confession. *See, e.g., Miranda v. Arizona*, 384 U.S. 436 (1966).

31. In a civil context, courts have also recognized the following factors in invalidating confessions of judgment:

    a. The bargaining power of the parties was significantly imbalanced, and the contract was one of adhesion. *Contrast Overmyer*, 405 U.S. at 186 (noting borrower's corporate structure supported conclusion that "[t]his is not a case of unequal bargaining power or overreaching") *with Fuentes*, 407 U.S. at 95 (noting borrowers' status as unsophisticated consumers supported conclusion that parties "were far from equal in bargaining power"); *see also Swarb*, 405 U.S. at 200–01 (distinguishing a class certification narrowed to consumers with annual incomes under $10,000).

    b. One party is represented by counsel and the other is not. *Overmyer*, 405 U.S. at 188; *Fuentes*, 407 U.S. at 94–95 (citing the distinction made so recently in *Overmyer*); *see also Lamberts*, 670 N.W.2d at 134 (pointing out significance in waiver of parental rights that neither party was represented).

    c. There was inadequate or even an absence of consideration given in return for the confession. *See Overmyer*, 405 U.S. at 183; *Swarb*, 405 U.S. at 201 ("absence of anything received in return" factor in invalidating confession).

32. Finally, "[t]he judgment can be only for money due or to become due, or to secure a person against contingent liabilities on behalf of the defendant, and must be for a specified sum." Iowa Code § 676.2. A document that does not specify the sum, or the correct sum, is deficient statutorily as well as constitutionally.

### *Federal Regulation of Confessions of Judgment*

33. Concurrently with the litigation described above, the Federal Trade Commission (FTC) targeted confessions of judgment as a *per se* unfair practice when employed against consumers.

34. In 1984, after almost a decade of rulemaking, the FTC adopted the Credit Practices Rule, which in part prohibits lenders and retail installment sellers from "directly or indirectly tak[ing] or receiv[ing] from a consumer an obligation that… constitutes or contains a

9

E-FILED  2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

cognovit or confession of judgment ... or other waiver of the right to notice and the opportunity to be heard in the event of suit or process thereon." 16 C.F.R. § 444.2; *Trade Regulation Rule: Credit Practices*, 49 FR 7740-01 (March 1, 1984).

35. The FTC's extensive investigation into confessions of judgment lead to the following conclusions about consumer injury caused by the practice:

> ...Cognovit clauses typically are worded in arcane language and may appear in small print. Record evidence supports the conclusion that debtors are unaware that they have agreed to such clauses and that they waive due process rights by doing so. When debtors receive notice of a judgment entered against them, they may not understand its import or that they must act affirmatively to raise any defenses against it. This problem is exacerbated by the fact that many states... do not require notice informing the debtor of the right to contest the judgment or the grounds for doing so. As a result the debtor may fail to respond despite having valid defenses to the judgment. The rulemaking record shows that judgments entered by confession frequently are invalid on their face. It also shows that debtors frequently have some defense to the judgment.

> When debtors are not apprised of their rights and therefore fail to challenge facially invalid judgments or fail to asset valid defenses, the consumer injury is clear. The judgment debtor's property may be taken in satisfaction of a claim that would not survive judicial scrutiny at a hearing on its merits. Loss of this property causes economic hardship, since the debtor loses both its use and any equity in it. Moreover, consumers must replace any essential items that are seized, usually at a greater cost than they were credited with for the seized property...

> Even when debtors understand their right to challenge the entry of judgment, post-judgment remedies ... do not make them whole. The procedure for reopening a judgment is complex and debtors are unlikely to succeed without incurring the cost of hiring an attorney. ... Such costs are not necessarily incurred in a trial de novo.

> In a proceeding to reopen, the debtor may assert the same affirmative defenses that could have been used in defending against an action on the underlying claim. However, in a proceeding to reopen the burden and expense of instituting litigation shift from the creditor, where they would lie absent the confession of judgment, to the debtor. Because of the relative ease with which confessions of judgment may be entered, creditors may be tempted to use them indiscriminately. To the extent that consumers must institute legal action to defend against unwarranted claims, they suffer considerable economic injury through the costs that they must incur,

> Although consumers with meritorious defenses may ultimately succeed in vacating judgments against them, they are deprived of the full use of their property during the process. ... Until such a lien is dissolved, the consumer's ability to use the property for collateral or to dispose of it is significantly impaired. Moreover, because the lien is effective whether or not notice is mailed to or reaches the debtor, debtors may learn of its existence only at the precise point at which they seek to use the property for such purposes. By the time debtors succeed in dissolving the lien, the opportunity for which they intended to use the property may have passed.

10

E-FILED 2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

... Accordingly, we find that the use of cognovits causes substantial consumer injury.

*Id.* (emphasis added).

### *Iowa Student Loan Liquidity Corporation (ISLLC)*

36. ISLLC, a private nonprofit corporation, was created in 1979 by proclamation of Governor Ray in response to Section 2105 of the federal Tax Reform Act of 1976. PL 94-455, Sec. 2105. The Tax Reform Act encouraged the growth of state-based secondary student loan markets by providing for the issuance of tax-exempt bonds by not-for-profit organizations organized to acquire and increase access to student loans. Iowa Code § 7C.4A(3).

37. Even though ISLLC is a private nonprofit organization, it maintains strong connections to both private for-profit and governmental entities. For example, the by-laws of ISLLC have provided for several decades that its board is chosen by the Governor,[3] and ISLLC has partnered extensively over the years with the Iowa College Student Aid Commission (ICSAC), a state agency. In addition to being strongly connected to state government ISLLC also owns a for-profit subsidiary, Aspire, that services student loans for ISLLC and others.[4] According to its 2022 IRS Form 990, ISLLC had $50,621,901 in revenue that year.

38. The loan at issue in this case is a "Partnership Loan" originally issued under a wholly private partnership between ISLLC and various private lenders. Partnership Loans have had a controversial history in Iowa. For example, the "intense marketing" of Partnership Loans by ISLLC was one factor recognized in 2008 for a large increase in student debt.[5] This was during a time that Iowans' student debt load was the second highest in the nation.[6] According to a 2008 report of the Iowa Attorney General, the loans were frequently marketed as the lowest-cost loans available to students even though that was not always

---

[3] Issue Review: Iowa Student Loan Liquidity Corporation, Iowa Legislative Services Agency Fiscal Services Division (October 8, 2019)
https://www.legis.iowa.gov/docs/publications/IR/1050283.pdf

[4] *Id.*

[5] Iowa Board of Regents, Agenda Item 13: Access And Affordability – Part II, a Board of Regents Initiative, pg.2 (December 10-11, 2008)
https://www.legis.iowa.gov/docs/publications/SD/22851.pdf.

[6] Testimony of Robert Shireman before the Joint Government Oversight Committee of the Iowa Legislature (October 29, 2007) https://www.legis.iowa.gov/docs/publications/SD/7087.pdf

11

the case. Furthermore, these marketing practices did not adequately promote federal loans or ensure that federal loan eligibility had been exhausted.[7]

39. These loans have been aggressively collected, long after the statutory limitation periods have expired, in a variety of ways including, as here, by procuring judgments through confession. These confessions were framed by ISLLC or its agents to debtors as "settlement agreements." Borrowers were induced into signing these agreements when ISLLC or its agents threatened them with garnishment, often for loans that were not backed up with adequate documentation, beyond the statute of limitations, or subject to other defenses.

40. Hundreds of these confessions were later filed over the ensuing years, sometimes leading to surprise garnishments with potentially devastating effects. For example, a former client of Iowa Legal Aid who was in this exact position was featured on a CNBC story in May 2020.[8] This case resulted in return of funds garnished and a satisfaction of judgment, after pointing out to the private collector both the age of the debt and the constitutional problems with the confession of judgment process.

41. Unfortunately, however, this unfair, deceptive, and unconstitutional practice continues to the present day, necessitating the filing of this lawsuit.

### *The Confession of Judgment in Cassandra Gibson's Case*

42. The Plaintiff, Cassandra Gibson, is 29 years old and a resident of Dubuque County, Iowa.

43. Ms. Gibson is currently subject to a $2,485.41 judgment in favor of ISLLC entered by confession on June 27, 2022 in Dubuque County Case No. LACV113691.

44. Upon information and belief, this alleged debt refers to a Partnership Loan first disbursed on September 21, 2012. The loan was taken while Ms. Gibson was attending the University of Dubuque in 2012.

45. Based on ISLLC's documentation filed in LACV113691, Ms. Gibson signed a confession of judgment on September 15, 2020.

---

[7] Issue Review: Iowa Student Loan Liquidity Corporation, Iowa Legislative Services Agency Fiscal Services Division (October 8, 2019)
https://www.legis.iowa.gov/docs/publications/IR/1050283.pdf
[8] https://www.cnbc.com/2020/05/11/debt-collectors-are-leveraging-the-courts-more-than-ever-before.html

46. Ms. Gibson entered into a payment plan and signed the confession of judgment after being contacted by collection agents attempting to collect the Partnership Loan. These agents told her that she had to enter into this payment plan and sign the documents they sent to her, or they would take legal action against her. Ms. Gibson received no consideration for signing the confession.

47. The confession provided that Ms. Gibson owed ISLLC $2,802.85 on the balance of the Partnership Loan and referenced a separate "settlement agreement." This second document was never provided to Ms. Gibson, nor was a copy of the settlement agreement filed by ISLLC in LACV113691.

48. The confession itself provided that if Ms. Gibson defaulted on her payment plan, the confession would be filed without issuance or service of notice for the full amount confessed (less credit for payments made), that judgment and execution would issue without further order of the court.

49. Ms. Gibson, who had neither legal counsel nor legal training, did not understand the consequences of signing the confession.

50. Ms. Gibson made payments during at least some of the next four years, but she defaulted on this payment plan as a result of the COVID-19 pandemic.

51. Just approximately two years after the date noted on the confession of judgment, the confession itself was filed in LACV113691. Ms. Gibson was never served with a copy of any of the initial filings, nor did ISLLC attempt to serve those filings, nor did she have any actual knowledge that the confession had been filed.

52. According to an "affidavit of default" on the loan at issue signed by Kevin Abbott, ISLLC's attorney, the "[t]otal paid $.00-the breakdown is as follows: cost collected $.00 principal collected $.00; interest collected $.00." Mr. Abbott did not indicate the balance due on Ms. Gibson's loan at that time.

53. Attached to the affidavit was a letter that ISLLC apparently purports was sent to Ms. Gibson on June 28, 2022. This letter is a notice to Ms. Gibson that if she doesn't take action in her case within 10 days, a default judgment will be entered. At the time the letter was sent, ISLLC had not filed a case against Ms. Gibson.

54. The following day after the confession and affidavit of default were filed, the trial court in LACV113691 entered a form order imposing judgment against Ms. Gibson for $2,485.41,

13

E-FILED  2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

which differed in amount from the amount stated on the Confession of Judgment signed by Ms. Gibson.

55. Upon information and belief, Ms. Gibson would have raised the following defenses and counterclaims had she been provided proper notice and hearing rights, including but not limited to the following:

    a.  Failure to provide a predicate notice to cure under Iowa Code § 537.5111 [grounds for both dismissal under Iowa Code § 537.5110(7) and a counterclaim under Iowa Code § 537.5201(1)(a)(26)];

    b.  Unlawful debt collection under the Iowa Debt Collection Practices Act and federal Fair Debt Collection Practices Act;

    c.  That the action was barred under the Statute of Frauds, for failure to incorporate the essential written terms of the contract in writing;

    d.  Failure to provide sufficient documentation to prove ISLLC's claim.

## COUNT I – DECLARATORY & INJUNCTIVE RELIEF

56. A judgment entered without jurisdiction is subject to collateral attack. *City of Chariton v. J.C. Blunk Construction Co.*, 112 N.W.2d 829, 834 (Iowa 1962). This is true even if that judgment has been satisfied. *Id.*

57. A collateral attack on a judgment beyond the one-year period for a petition to vacate may be brought in an independent equitable action. *Id. See also, e.g., Rosenberg v. Jackson*, 247 N.W.2d 216 (Iowa 1976); *Johnson v. Mitchell*, 489 N.W.2d 411 (Iowa Ct. App. 1992). A void judgment is subject to attack at any time without resort to the rules governing vacating judgments. *Claeys v. Moldenschardt*, 148 N.W.2d 479, 482 (Iowa 1967).

58. A confession of judgment filed pursuant to Iowa Code Chapter 676 is void for lack of personal jurisdiction in that it was entered without notice or hearing. *See, e.g., In re S.P.*, 672 N.W.2d 842 (Iowa 2003).

59. These flaws additionally render Chapter 676 facially unconstitutional as a denial of due process of law under the 14th Amendment of the United States Constitution and Article I, Section 9 of the Iowa Constitution, as the antiquated and sparse language of that chapter categorically does not provide adequate safeguards for a court to be able to assess whether a confession of judgment was given voluntarily, intelligently, and knowingly.

14

60. The particular facts of this case also render the confession of judgment at issue here jurisdictionally void on as-applied due process grounds.

    a. Ms. Gibson was induced into signing the confession of judgment by threats of a lawsuit that could not legally be carried out due to the insufficient documentary evidence of the loan.

    b. Ms. Gibson was unrepresented by counsel at the time this confession was executed, there was a massive imbalance of bargaining power and sophistication between her as an individual consumer and a lender with thousands of loans in its portfolio, and the confession and accompanying settlement agreement were contracts of adhesion.

    c. Ms. Gibson received no actual consideration for her complete waiver of all rights to receive notice of and contest the judgment.

61. Ms. Gibson is entitled to declaratory relief under Iowa R. Civ. P. 1.1101 *et seq.*, in addition to statutory provisions noted in Counts II & III below, on both the validity of the judgment in Dubuque Co. Case No. LACV113691 and the constitutionality of Iowa Code Chapter 676.

62. Ms. Gibson is also entitled to appropriate injunctive relief under Iowa R. Civ. P. 1.1501 *et seq.*, enjoining the direct or indirect enforcement of the judgment entered in Dubuque Co. Case No. LACV113691.

## COUNT II – IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUD ACT

63. Iowa Code § 714H.3(1) provides that

> A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes.

64. The prohibited practice must be related to a material fact. Iowa Code § 714H.3(1).

65. "Deception" means an act or practice that is likely to mislead a substantial number of consumers as to a material fact or facts. Iowa Code § 714H.2(5)

15

66. A misrepresentation is material if it is "likely to affect a consumer's conduct or decision with regard to a product or service." *State ex rel. Miller v. Rahmani*, 472 N.W.2d 254, 258 (Iowa 1991). A statement which is literally true may nonetheless be deceptive. *Id.*

67. ISLLC's actions were "deceptive" under IPRACTA for reasons not limited to:

    a.  Representing the debt as valid even though it was subject to challenge under statute of frauds, statute of limitations, and other grounds.

    b.  Threatening garnishment on a time-barred debt, a remedy not allowed by law, in order to induce the signing of the confession.

68. An "unfair practice" means the same as defined in section 714.16, Iowa Code § 714H.2(9). An unfair practice is an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces. Iowa Code § 714.16(1)(n).

69. State and federal courts alike consider an unfair practice to be "nothing more than conduct a court of equity would consider unfair." *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W. 2d 518, 525 (Iowa 2005) (collecting cases). The same courts have found that "statutes that prohibit "unfair practices" are designed to infuse flexible equitable principles into consumer protection law so that it may respond to the myriad of unscrupulous business practices modern consumers face." *Id.*

70. Iowa's definitions of unfair practices themselves are rooted in and strongly influenced by the regulations and policy interpretations of the FTC, and the caselaw those materials have generated. As noted, the FTC's Credit Practices Rule has prohibited the use of confession clauses in consumer transactions since 1984:

> In connection with the extension of credit to consumers in or affecting commerce, as commerce is defined in the Federal Trade Commission Act, it is an unfair act or practice within the meaning of Section 5 of that Act for a lender or retail installment seller directly or indirectly to take or receive from a consumer an obligation that... [c]onstitutes or contains a cognovit or confession of judgment ... warrant of attorney, or other waiver of the right to notice and the opportunity to be heard in the event of suit or process thereon.

16 C.F.R. § 444.2(a)(1).

71. The rulemaking materials the FTC employed in promulgating this rule analyze confessions of judgment under the same factors the Iowa Legislature has provided in unfairness analysis – an injury to consumers that is (1) substantial, (2) unavoidable, and (3) is not

16

E-FILED 2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

outweighed by the countervailing consumer or competitive benefits the practice provides. *Trade Regulation Rule: Credit Practices*, 49 FR 7740 (March 1, 1984). *accord* Iowa Code § 714.16(1)(n).

    a. The FTC found that "confessions of judgment cause injury by depriving consumers of notice of a suit or hearing and the opportunity to appear and present any meritorious claims or defenses... [o]nce obtained, the confessed judgment can be turned into a lien on the consumer's real and personal property." *Trade Regulation Rule: Credit Practices*, 49 FR at 7748.

    b. The rulemaking involved empirical data gathered from surveys of low-income consumers. From this data, the FTC found that, "[o]f the creditor remedies addressed by the [Credit at Practices] rule, confessions of judgment are least likely to be understood by consumers." *Id.* at 7749. Further, per the FTC, "consumers rarely understand the significance of these clauses because they are worded in obscure technical language and because the concept of judgment by confession conflicts with the common understanding of basic due process rights." Thus, "consumers cannot reasonably avoid the injury caused by cognovits." *Id.*

    c. The FTC found that prohibiting confessions of judgment would lead to increased collection and legal costs, and potentially higher interest rates and reduced credit availability for borrowers. However, reasoning that creditors were still left with more than ample remedies, the FTC found that these factors did not outweigh the negative aspects of the practice.

72. In addition to the reasons articulated by the FTC, ISLLC's actions were "unfair" under IPRACFA for reasons not limited to:

    a. They shift the burden of proof that would otherwise be on the creditor to the debtor.

    b. ISLLC secured the confession in the absence of consideration or any benefit to Ms. Gibson.

73. Iowa Code § 714H.5 authorizes a consumer who suffers an ascertainable loss of money or property to recover actual damages, temporary and permanent injunctive relief, attorney fees, and costs.

E-FILED 2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

74. ISLLC acted with willful or wanton disregard for the rights or safety of Ms. Gibson,
justifying an additional statutory damages award of up to three times the amount of actual
damages.

## COUNT III – DEPRIVATION OF DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION – 42 U.S.C. § 1983

75. As outlined in detail above, ISLLC, acting under color of law for purposes of 42 U.S.C.
1983, deprived Ms. Gibson of due process of law by utilizing a statutory process that is
facially unconstitutional in that it does not provide adequate safeguards for a court to gauge
whether this waiver of rights was voluntarily, knowingly, and intelligently given.

76. In addition, as outlined in detail above, ISLLC, acting under color of law, deprived Ms.
Gibson of due process of law by obtaining a confession of judgment that was, under the
circumstances of her case, not voluntarily, intelligently, or knowingly given.

77. Although a private actor, ISLLC is nevertheless liable under 42 U.S.C. 1983 because it
"has acted together with or has obtained significant aid from state officials" in obtaining a
judgment by confession which violates Ms. Gibson's constitutional rights. *See Lugar v.
Edmonson Oil Co.*, 457 U.S. 922, 935 (1982) (creditor using unconstitutional pre-judgment
attachment procedures acting in concert with state officials sufficient to invoke color of
law and thus 1983 liability).

78. As the United States Supreme Court stated in *Fuentes*:

> The requirement of notice and an opportunity to be heard raises no impenetrable
> barrier to the taking of a person's possessions. But the fair process of decision
> making that it guarantees works, by itself, to protect against arbitrary deprivation
> of property. For when a person has an opportunity to speak in his own defense,
> and when the State must listen to what he has to say, substantively unfair and
> simply mistaken deprivations of property interests can be prevented. It has long
> been recognized that 'fairness can rarely be obtained by secret, one-sided
> determination of facts decisive of rights... And no better instrument has been
> devised for arriving at truth than to give a person in jeopardy of serious loss notice
> of the case against him and opportunity to meet it.

*Fuentes*, 407 U.S. at 81. Ms. Gibson was denied these most basic constitutional

protections enjoyed by civil litigants by ISLLC.

79. In addition, as explained by the FTC in promulgating the Credit Practices Rule:

> Judgment debtors whose property is encumbered through the existence of a
> creditor's lien lose the full use and enjoyment of their property. Debtors are
> unlikely to be able to sell it, for example, or to use it as collateral while it is subject

18

E-FILED  2023 NOV 13 3:03 PM DUBUQUE - CLERK OF DISTRICT COURT

to a lien. Although the debtor may eventually prevail on the merits and dissolve the lien, the post-judgment rights provided by statute cannot cure the deprivation experienced while the action is pending. Even a temporary and non-final deprivation of the use of one's property is a matter of constitutional significance and invokes the protection of the due process clause.

Trade Regulation Rule: Credit Practices, 49 FR 7740-01, 7749 (March 1, 1984). *See also* Iowa Code § 624.23.

80. A person injured on a claim actionable under 42 U.S.C. 1983 is entitled to compensatory damages, punitive damages, equitable relief, attorney fees, and costs. 42 U.S.C. §§ 1983, 1988.

## COUNT IV – UNJUST ENRICHMENT / RESTITUTION

81. "Where property has been received as a result of a judgment improperly obtained equity may order the respondent to reconvey it." *City of Chariton v. J.C. Blunk Construction Co.*, 112 N.W.2d 829, 834 (Iowa 1962).

82. The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation.

83. There are three elements to unjust enrichment: (1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances. *Pro Com., LLC v. K & L Custom Farms, Inc.*, 870 N.W.2d 273 (Iowa Ct. App. 2015) (internal quotations and citation omitted).

84. Ms. Gibson is entitled to full restitution of any amounts garnished, levied, assigned, attached, or otherwise taken to apply towards the debt in question, regardless of whether those amounts were taken voluntarily or involuntarily from the Petitioner.

## RELIEF REQUESTED

WHEREFORE, the Petitioner asks that this Court grant the following relief:

A. Declaratory relief holding the judgment entered in Dubuque County Case No. LACV113691 on July 27, 2022 to be void and unenforceable;

B. Declaratory relief holding Iowa Code Chapter 676 to be an unconstitutional deprivation of due process of law under both Fourteenth Amendment of the U.S. Constitution and

19

Article 1, Section 9 of the Iowa Constitution, both facially and as applied to the circumstances of the Petitioner's case;

C. Injunctive relief under Iowa Rule of Civil Procedure 1.1501 *et seq.*, Iowa Code § 714H.5, and 42 U.S.C. 1983, enjoining the direct or indirect enforcement of the judgment entered in Dubuque, County Case No. LACV113691;

D. Compensatory damages under 42 U.S.C. 1983 in an amount to be determined at trial;

E. Actual damages under IPRACFA, Iowa Code Chapter 714H, plus punitive damages of up to three times actual damages;

F. Reasonable attorney fees and costs pursuant to 28 U.S.C. § 1920, 42 U.S.C. § 1988, and Iowa Code 714H.5;

G. Restitution for any amounts by which ISLLC was unjustly enriched; and

H. Any other relief just and equitable under the circumstances.

Respectfully submitted,
CASSANDRA GIBSON, Petitioner

/s/Lea Kieffer
Lea Kieffer, AT0015577
Iowa Legal Aid
744 Main Street, Suite 1
Dubuque, Iowa 52001
563-588-4653
lkieffer@iowalaw.org
ATTORNEY FOR PETITIONER

/s/ Alex Kornya
Alexander Vincent Kornya, AT0009810
Iowa Legal Aid
666 Walnut St., 25th Floor
Des Moines, Iowa 50309
(515) 243-1193
akornya@iowalaw.org
ATTORNEY FOR PETITIONER

20

# U.S. District Court
## Northern District of Iowa (Eastern Dubuque)
### CIVIL DOCKET FOR CASE #: 2:23-cv-01036-CJW-MAR

Gibson v. Iowa Student Loan Liquidity Corporation

Assigned to: Chief Judge CJ Williams

Referred to: Magistrate Judge Mark A Roberts

Related Case: 1:23-cv-00111-CJW-MAR

Case in other court: Iowa District Court for Dubuque County,
          CVCV115373

Cause: 28:1441 Removal-Confessed Judgment

Date Filed: 12/20/2023

Jury Demand: None

Nature of Suit: 950 Constitutional - State Statute

Jurisdiction: Federal Question

**Plaintiff**

**Cassandra Marie Gibson**                  represented by    **Alexander Vincent Kornya**
Iowa Legal Aid
666 Walnut Street
Suite 25th Floor
Des Moines, IA 50309
515-243-1193
Email: akornya@iowalaw.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lea Kieffer**
Iowa Legal Aid
744 Main Street
Suite 1
Dubuque, IA 52001
563 258 4079
Email: lkieffer@iowalaw.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Iowa Student Loan Liquidity
Corporation**                               represented by    **Jason M Craig**
Ahlers & Cooney, P.C.
100 Court Ave
Suite 600
Des Moines, IA 50309
515 246 0372
Email: jcraig@ahlerslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**EXHIBIT**

2B

| Date Filed | # | Docket Text |
|---|---|---|
| 12/20/2023 | 1 | NOTICE of Removal by Iowa Student Loan Liquidity Corporation from Iowa District Court for Dubuque County, case number CVCV115373. Defendant was served with state court petition/documents on November 28, 2023 ( Filing fee $ 405 receipt number AIANDC-4061880), filed by Iowa Student Loan Liquidity Corporation. Scheduling Report due by 2/20/2024 (Attachments: # 1 Local Rule 81(a) Removal Information Form, # 2 Original Notice and Petition, # 3 Application to Proceed in Forma Pauperis, # 4 Affidavit of Financial Status, # 5 Order Allowing Plaintiff to Proceed in Forma Pauperis, # 6 Return of Service) (Craig, Jason) (Additional attachment(s) added on 12/22/2023: # 7 Civil Cover Sheet) (des). (Entered: 12/20/2023) |
| 12/20/2023 | 2 | ANSWER to Complaint by Iowa Student Loan Liquidity Corporation.(Craig, Jason) (Entered: 12/20/2023) |
| 12/21/2023 | | Judge CJ Williams and Magistrate Judge Mark A Roberts added. No conflicts identified. (des) (Entered: 12/21/2023) |
| 12/21/2023 | 3 | NOTICE to Attorney Lea Kieffer Not Admitted to Practice in the United States District Court For the Northern District of Iowa. Admissions due by 1/4/2024. (eKieffer) (des) (Additional attachment(s) added on 1/16/2024: # 1 Email Confirmation) (des). (Entered: 12/21/2023) |
| 12/21/2023 | 4 | STATE Court Petition by Cassandra Marie Gibson (des) (Entered: 12/21/2023) |
| 12/21/2023 | 5 | DOCKET Annotation: Please find Civil Removal Actions new case packet attached (des) (Entered: 12/21/2023) |
| 12/21/2023 | | Set Deadlines: Defendant LR 7.1 Disclosure Statement due by 1/11/2024. (des) (Entered: 12/21/2023) |
| 12/21/2023 | 6 | CORPORATE Disclosure Statement by Iowa Student Loan Liquidity Corporation identifying Corporate Parent Aspire Resources Inc for Iowa Student Loan Liquidity Corporation. (Craig, Jason) Modified text on 12/22/2023 (des) (Entered: 12/21/2023) |
| 01/10/2024 | 7 | NOTICE of Appearance by Lea Kieffer on behalf of Cassandra Marie Gibson. (Kieffer, Lea) (Entered: 01/10/2024) |
| 02/20/2024 | 8 | PROPOSED Scheduling Order and Discovery Plan by Plaintiff Cassandra Marie Gibson (Kieffer, Lea) (Entered: 02/20/2024) |
| 02/22/2024 | 9 | ORDER Setting Hearing: Scheduling Conference set for 2/28/2024 10:30 AM in Telephonic Hearing before Magistrate Judge Mark A Roberts. See Order for Court's Zoom.Gov audio instructions. Failure to appear for this scheduling conference could result in sanctions by the Court. Signed by Magistrate Judge Mark A Roberts on 2/22/2024. (jag) (Entered: 02/22/2024) |
| 02/29/2024 | 10 | MINUTE Entry for proceedings held before Magistrate Judge Mark A Roberts: Scheduling Conference held on 2/28/2024. Order to follow. Official Court Record: FTR Gold (klh) (Entered: 02/29/2024) |
| 02/29/2024 | 11 | SCHEDULING Order and Discovery Plan: Initial Disclosures due date of 3/18/2024 but not filed with the court. Add Parties Deadline due by 5/20/2024. Amended Pleadings due by 5/20/2024. Plaintiff's Expert Witness due by 7/22/2024. Defendant's Expert Witnesses due by 9/20/2024. Plaintiff's Rebuttal Experts due by 10/21/2024. Discovery due by 12/20/2024. Motions due by 1/21/2025. Trial Ready Deadline |

| | | |
|---|---|---|
| | | 6/20/2025. Signed by Magistrate Judge Mark A Roberts on 02/29/2024. (klh) (Entered: 02/29/2024) |
| 03/18/2024 | 12 | JOINT STATUS Report by Cassandra Marie Gibson (Kornya, Alexander) (Entered: 03/18/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/28/2024 15:52:43 | | | |
| PACER Login: | patrickbigsby | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:23-cv-01036-CJW-MAR |
| Billable Pages: | 2 | Cost: | 0.20 |

E-FILED  2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT IN AND FOR JOHNSON COUNTY

| | |
|---|---|
| LILIANA ZAMBRANO,<br><br>  Petitioner,<br>vs.<br><br>IOWA STUDENT LOAN LIQUIDITY<br>CORPORATION,<br><br>  Respondent. | CASE NO.:<br><br>PETITION |

### FACTS

#### *Background*

1.     "Entry of judgment by confession has long been viewed with judicial distaste. Such judgments have been described as the loosest way of binding a man's property that was devised in any civilized country." *Tara Enters., Inc. v. Daribar Mgmt. Corp.*, 369 N.J. Super. 45, 56 (N.J. App. Div. 2004) (citing *Alderman v. Diament*, 7 N.J.L. 197, 198 (1824)).

2.     A confession of judgment, sometimes referred to as a cognovit, is an ancient legal device that operates as the civil equivalent to a criminal confession, often waiving of each and every right otherwise considered fundamental to due process of law in civil lawsuits.

3.     Respondent Iowa Student Loan Liquidity Corporation (ISLLC) or its agents induced borrowers, including Petitioner Liliana Zambrano, to sign documents asserted to be "payment plans" or "settlement agreements" for private student loans alleged to be in default. These private loans were often time-barred, poorly documented, and subject to several affirmative defenses and claims.

4.     These "payment agreements" included authorizations to confess judgment. ISLLC coerced borrower signatures by threatening garnishment and other harsh collection methods, even though

1



E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

these remedies were not legally available. Borrowers, unrepresented by counsel and receiving no consideration, uniformly did not understand that these agreements constituted a complete waiver of their due process rights, ability to raise viable defenses. When borrowers missed a payment, ISLLC filed the confessions with the clerk of court. The confessions became immediately enforceable, just like a judgment issued after trial.

5.     ISLLC used these confessions to garnish wages and accounts, as well taking other harsh collection actions – all without any advance notice, without any supervision or review by a court, without the opportunity to raise a defense or counterclaim, and without any opportunity to contest ISLLC's claims.

6.     As recognized in commentary to the Uniform Consumer Credit Code more than 50 years ago, "the great majority of States prohibit... authorizations to confess judgment." Comment to Uniform Consumer Credit Code Sec. 3.306 (1978).

7.     In the last half century, thirteen states have abolished the use of authorizations to confess judgment entirely. Many others have reformed their existing laws to provide additional protections, especially for unsophisticated parties such as consumers. Based on state reforms, litigation, and action by federal agencies such as the Federal Trade Commission, the prevalence of confessions, at least in transactions with unsophisticated and unrepresented parties, has greatly receded throughout most of the country.

8.     Alas, this has not been so in Iowa. The version of Iowa Code Chapter 676 effective today, which governs confessions of judgment, has effectively the same language appearing in Iowa's first state code enacted in 1851. This was the year that Abraham Lincoln's father died, the second year of Millard Fillmore's presidency, and 17 years prior to the ratification of the 14th Amendment

2

E-FILED  2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

to the United States Constitution. In the 155 years since that ratification, Chapter 676 has —

improbably — never been scrutinized by an appellate court on due process grounds.

9.      Even though this chapter of the code governs a complete and unqualified waiver of every

due process right normally enjoyed by civil litigants, the entire chapter (including section

headings) contains only 193 words, and reads as follows:

### 676.1. Judgment by confession—how entered

A judgment by confession, without action, may be entered by the clerk of the
district court.

### 676.2. For money only—contingent liability

The judgment can be only for money due or to become due, or to secure a person
against contingent liabilities on behalf of the defendant, and must be for a specified
sum.

### 676.3. Statement

A statement in writing must be made, signed, and verified by the defendant, and
filed with the clerk, to the following effect:

1. If for money due or to become due, it must state concisely the facts out of which
the indebtedness arose, and that the sum confessed therefor is justly due, or to
become due, as the case may be.

2. If for the purpose of securing the plaintiff against a contingent liability, it must
state concisely the facts constituting such liability, and must show that the sum
confessed therefor does not exceed the same.

### 676.4. Judgment—execution

The clerk shall thereupon make an entry of judgment in the clerk's court record for
the amount confessed and costs, and shall issue execution thereon as in other cases,
when ordered by the party entitled thereto.

10.    The United States Supreme Court addressed the due process implications of confessions of

judgment in two concurrently decided cases in 1972: *D.H. Overmyer Co. Inc., of Ohio v. Frick Co.*,

405 U.S. 174 (1972) and *Swarb v. Lennox*, 405 U.S. 191 (1972). Both cases are addressed

throughout this petition.

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

11.    In *Overmyer*, the Court upheld the facial constitutionality of Ohio's cognovit statute in the context of a lawsuit between two corporate actors. *Overmyer* at 405 U.S. at 187. The nature of the challenge was that a confession of judgment could never meet due process requirements under any circumstances. Although the Court disagreed with this broad premise, it gave the caveat that:

"[This] holding … is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue." *Id.* at 188. The Court further held that, even where a confession of judgment statute itself was facially constitutional, it still may be unconstitutional according to the facts of a particular case if the confession was not voluntarily, intelligently, and knowingly given -- especially in situations involving unequal bargaining power and lack of consideration. *Id.*

12.    *Swarb* was a challenge to Pennsylvania's cognovit system and, like *Overmyer*, upheld the constitutionality of that system on its face. 405 U.S. at 200. The Court again carefully limited itself to narrow circumstances where parties had equal bargaining power. *Id.* at 201. Part of the underlying decision in *Swarb*, that a more limited class of low-income consumers challenging the constitutionality of the statute as applied to them could proceed, was unchallenged and thus allowed to remain intact by the Court. *Id.*

13.    The statutes facially upheld in these two cases and state interpretations of those statutes differed in many respects from Iowa's.

    a.    The Pennsylvania statute upheld in *Swarb* provided that conditional confessions (e.g., those styled as payment plans) couldn't be filed without serving a complaint. *Id.* at 193-94. Notice was required immediately after judgment was entered, and there were specific, effectively non-time-barred processes for

4

challenging the confession after entry. *Id.* It is also notable that, in 1972, there was effectively no wage garnishment in Pennsylvania, which remains true with limited exceptions today. *See* 42 Pa. C.S. § 8127.

b.    Ohio's statute, similarly, had additional protections that do not appear in Iowa's statute. For example, post-judgment notice was required. *Overmyer*, 405 U.S. at 182. The confession was to be produced "to the court," rather than the clerk. *Id.* at 175, n.1. *Cf.* Iowa Code § 676.3. Outside of the statute itself, the Court recognized that the standard employed by the Ohio Supreme Court for re-opening a confession of judgment case was very liberal:

> (I)f there is credible evidence supporting the defense . . . from which reasonable minds may reach different conclusions, it is then the duty of the court to suspend the judgment and permit the issue raised by the pleadings to be tried by a jury, or, if a jury is waived, by the court.

*Overmyer*, 405 U.S. at 189 (Douglas, J., concurring) (quoting *Livingstone v. Rebman*, 158 N.E.2d 366, 375 (Ohio 1959)).

14.    In the same term as *Overmyer* and *Swarb*, the Court laid out due process minima for unsophisticated consumers in a different context: prejudgment replevin. *Fuentes v. Shevin*, 407 U.S. 67 (1972). The *Fuentes* Court noted that these matters, almost exclusively involving financing companies against *pro se* low-income debtors, were "a far cry from *Overmyer*" in that:

> There was no bargaining over contractual terms between the parties who, in any event, were far from equal in bargaining power. The purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale. The appellees made no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights.

*Id.* at 95.

15.    Subsequent facial challenges to confession statutes reached different conclusions, based in part on differences between the statutes themselves.

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

16.    Some states invalidated their statutes because their statutes were less protective than those reviewed in *Overmyer* and *Swarb*. For example, in *Isbell v. County of Sonoma*, the California Supreme Court found that former California Code of Civil Procedure §§ 1132 – 1135 contained "insufficient safeguards to assure that the debtor in fact executed a voluntary, knowing, and intelligent waiver." 577 P.2d 188, 189 (Cal. 1978).

17.    California's statute circa 1978 was enacted the same year as the predecessor to Iowa Code Chapter 676 and uses language very similar (including some verbatim passages) to Iowa's current law. *Id.* at 189 – 190.

18.    *Isbell* distinguished the constitutional question raised in *Overmyer* – whether confessions of judgment were *ever* constitutional – and the narrower question of whether a confession statute had adequate safeguards to determine whether a waiver was indeed valid under the terms of *Overmyer*, i.e. was it voluntary, intelligent, and knowing, or whether such a waiver could simply be presumed by the mere filing of a document with the clerk. *Id.* at 192. The *Isbell* court also found "the statutory procedure upheld in Overmyer was not nearly as harsh in operation as the California procedure at issue" given the modest protections available to consumers in Ohio. *Id.* at 195.

19.    Moreover, the *Isbell* court also found that "the debtor's opportunity to seek post-judgment relief does not cure the unconstitutionality of a judgment entered without a valid waiver[.]" *Id.* at 194.

20.    Ultimately, the Court in *Isbell* struck down the statute as a facial violation of the Fourteenth Amendment, holding that the California procedure "requir[ing] the clerk to enter judgment upon a document which is ordinarily insufficient to demonstrate a valid waiver…is constitutionally defective." *Id. See also Osmond v. Spence*, 359 F.Supp. 124 (D. Del. 1972).

6

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

21.     In contrast, other states held that their confession of judgment systems had additional protections not present in the 1978 California code (or present-day Iowa), which gave judgment debtors a reasonable chance to challenge invalid confessions. *See, e.g., Meier v. Perdun*, 288 N.W.2d 165 (Wis. 1980) (liberal and not time-barred post-judgment remedies, including setting aside for excusable neglect, preserved constitutionality of the statute).

22.     Most states, however, headed off such challenges through legislative action either abolishing confessions of judgment or building in additional due process protections.

23.     Unlike the statutes upheld in *Overmyer* and *Swarb* and like California's prior statute in *Isbell*, Iowa's statute does not require any notice to be provided to the judgment debtor and does not prescribe any process to test the validity of the waiver, before or after judgment entered. *See generally* Iowa Code Chapter 576.

24.     Admittedly, the Iowa Legislature – like California at the time of *Isbell* [1] – has enacted narrow limitations on authorizations to confess judgment in two areas, both in connection with the adoption of uniform acts protecting vulnerable consumers.

    a.     Residential rental agreements may not authorize a person to confess judgment for a claim arising out of that agreement. Iowa Code 562A.11(1)(b). This provision tracks verbatim the language of Section 1.403(a)(2) of the 1972 version of the Uniform Residential Landlord Tenant Act, commentary for which cites a similar provision in Section 2.415 of the 1968 version of the Uniform Consumer Credit Code (UCCC). Iowa Code § 562A.11(1)(b).

    b.     Iowa's version of the Consumer Credit Code presents a weakened version of the 1968's UCCC prohibition, in that it excludes confessions "executed after

---

[1] *Isbell*, 577 P.2d at 191.

.7

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

default on a claim arising out of a consumer credit transaction." Iowa Code §

537.3306.

25.    The very limited protection for consumers in Iowa Code 537.3306 does not address the

fundamental facial and as-applied constitutional problems created by Chapter 676. *See Isbell*, 577

P.2d at 192. Moreover, our sister courts have found the distinction between a confession obtained

after rather than before default irrelevant to the constitutional analysis addressed below.

*Underwood Farmers Elevator v. Leidholm*, 460 N.W.2d 711 (N.D. 1990).

### *Chapter 676's Facial Constitutional Problems*

26.    In *Fuentes*, The United States Supreme Court summarized the "central meaning of

procedural process" as follows:

> [p]arties whose rights are to be affected are entitled to be heard; and in order that
> they may enjoy that right they must first be notified; it is equally fundamental that
> the right to notice and an opportunity to be heard must be granted at a meaningful
> time and in a meaningful manner.

407 U.S. at 80 (internal quotations omitted).

27.    A fundamental requirement of due process is the opportunity to be heard at a meaningful

time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In general, to

determine whether the basic requirements of due process have been met, a court must weigh:

    a.    the private interest that will be affected by the official action;

    b.    the risk of an erroneous deprivation of such interest through the procedures

used, and probable value, if any, of additional procedural safeguards; and

    c.    the Government's interest, including the fiscal and administrative burdens

that the additional or substitute procedures would entail.

*Id.* at 335.

28.    As written, the antiquated language of Chapter 676 facially violates the guarantee of procedural due process in the following ways:

a.    **Failure to provide notice of the lawsuit.** *In re S.P.*, 672 N.W.2d 842 (Iowa 2003). A judgment entered without notice of the suit is void for lack of personal jurisdiction. *Id.* In addition, failure to provide notice makes the risk of erroneous deprivation all but inevitable, per *Mathews.* 424 U.S. at 335.

b.    **No opportunity for a hearing of any kind, let alone "at a meaningful time and a meaningful manner."** *Fuentes* 407 U.S. at 80; *see also Underwood Farmers Elevator v. Leidholm*, 460 N.W.2d 711 (N.D. 1990) ("We conclude that in order to satisfy the *Overmyer* requirement of a case-by-case, fact-specific review, it is necessary… for a hearing to determine whether Leidholm voluntarily, knowingly, and intelligently waived his due-process rights to notice and a hearing when he signed the confession of judgment.") Since pre-deprivation hearings are only to be denied in "extraordinary situations," which do not exist here, this would require a hearing before judgment was entered to determine whether the waiver was in fact voluntary, intelligent, and knowing. *Fuentes*, 407 U.S. at 90. At the very least, a hearing on validity of the waiver would be required prior to execution or garnishment. *Community Thrift Club, Inc. vs. Dearborn Acceptance Corp.*, 487 F.Supp. 877 (N.D. Ill. 1980).

c.    **No opportunity to confront witnesses.** *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.")

d.    **No opportunity to otherwise vacate a wrongfully entered judgment by confession.** *Isbell*, 577 P.2d at 194-95. *See also Overmyer*, 405 U.S. at 188-90 (discussion

9

E-FILED  2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

in both majority and concurrence upholding facial constitutional validity of confession statute, in part based on the fact that in Ohio trial courts must vacate a judgment by confession upon a showing of a valid defense).

e.   **No judicial supervision of the process of establishing the judgment,** which by statute begins and ends solely in the hands of the clerk of court and the judgment creditor themselves. *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601 (1975). *See also W.T. Mitchell v. Grant,* 416 U.S. 600, 617-18 (1974).

### *As-Applied Constitutional Problems and Statutory Issues*

29.   Even if Chapter 676 is facially constitutional, a particular confession may nevertheless fail on due process grounds if it was not obtained by the same standards governing criminal confessions – i.e., was it knowingly, intelligently, and voluntarily given. *Overmyer,* 405 U.S. at 187; *see also Lamberts v. Lillig,* 670 N.W.2d 129, 134 (Iowa 2003) (by analogy to criminal confession jurisprudence, waiver of civil constitutional parental-caretaking interest invalid where waiver document and discussion was "relatively informal" and "relatively informal, with little if any discussion of the legal ramifications—much less the more specific constitutional ramifications—of its signing").

30.   In the context of criminal confessions, undue influence will invalidate a confession. Coerced confessions are generally not considered to be voluntary. *See, e.g., State v. Quintero,* 480 N.W.2d 50 (Iowa 1992) (statements that defendant's nephew would be tried as adult as co-conspirator and face physical and sexual abuse in jail invalidated ensuing confession as involuntary). Similarly, explicit or even implied promises of leniency render criminal confessions involuntary and thus invalid. *See, e.g., State v. Mullin,* 85 N.W.2d 598 (Iowa 1957); *State v. McCoy,* 692 N.W.2d 6 (Iowa 2005). Failure to provide proper disclosures so that a defendant understands

10

E-FILED  2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

the legal significance of their decision will also invalidate a criminal confession. *See, e.g., Miranda v. Arizona*, 384 U.S. 436 (1966).

31.     In a civil context, courts have also recognized the following factors in invalidating confessions of judgment:

    a.     The bargaining power of the parties was significantly imbalanced, and the contract was one of adhesion. *Contrast Overmyer*, 405 U.S. at 186 (noting borrower's corporate structure supported conclusion that "[t]his is not a case of unequal bargaining power or overreaching") *with Fuentes*, 407 U.S. at 95 (noting borrowers' status as unsophisticated consumers supported conclusion that parties "were far from equal in bargaining power"); *see also Swarb*, 405 U.S. at 200–01 (distinguishing a class certification narrowed to consumers with annual incomes under $10,000).

    b.     One party is represented by counsel and the other is not. *Overmyer*, 405 U.S. at 188; *Fuentes*, 407 U.S. at 94–95 (citing the distinction made so recently in *Overmyer*); *see also Lamberts*, 670 N.W.2d at 134 (pointing out significance in waiver of parental rights that neither party was represented).

    c.     There was inadequate or even an absence of consideration given in return for the confession. *See Overmyer*, 405 U.S. at 183; *Swarb*, 405 U.S. at 201 ("absence of anything received in return" factor in invalidating confession).

32.     Finally, "[t]he judgment can be only for money due or to become due, or to secure a person against contingent liabilities on behalf of the defendant, and must be for a specified sum." Iowa Code § 676.2. A document that does not specify the sum, or the correct sum, is deficient statutorily as well as constitutionally.

11

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

### *Federal Regulation of Confessions of Judgment*

33.   Concurrently with the litigation described above, the Federal Trade Commission (FTC) targeted confessions of judgment as a *per se* unfair practice when employed against consumers.

34.   In 1984, after almost a decade of rulemaking, the FTC adopted the Credit Practices Rule, which in part prohibits lenders and retail installment sellers from "directly or indirectly tak[ing] or receiv[ing] from a consumer an obligation that... constitutes or contains a cognovit or confession of judgment ... or other waiver of the right to notice and the opportunity to be heard in the event of suit or process thereon." 16 C.F.R. § 444.2; *Trade Regulation Rule: Credit Practices*, 49 FR 7740-01 (March 1, 1984).

35.   The FTC's extensive investigation into confessions of judgment lead to the following conclusions about consumer injury caused by the practice:

> Cognovit clauses typically are worded in arcane language and may appear in small print. Record evidence supports the conclusion that debtors are unaware that they have agreed to such clauses and that they waive due process rights by doing so. When debtors receive notice of a judgment entered against them, they may not understand its import or that they must act affirmatively to raise any defenses against it. This problem is exacerbated by the fact that many states... do not require notice informing the debtor of the right to contest the judgment or the grounds for doing so. As a result the debtor may fail to respond despite having valid defenses to the judgment. The rulemaking record shows that judgments entered by confession frequently are invalid on their face. It also shows that debtors frequently have some defense to the judgment.

> When debtors are not apprised of their rights and therefore fail to challenge facially invalid judgments or fail to asset valid defenses, the consumer injury is clear. The judgment debtor's property may be taken in satisfaction of a claim that would not survive judicial scrutiny at a hearing on its merits. Loss of this property causes economic hardship, since the debtor loses both its use and any equity in it. Moreover, consumers must replace any essential items that are seized, usually at a greater cost than they were credited with for the seized property...

> Even when debtors understand their right to challenge the entry of judgment, post-judgment remedies ... do not make them whole. The procedure for reopening a judgment is complex and debtors are unlikely to succeed without incurring the cost of hiring an attorney. ... Such costs are not necessarily incurred in a trial de novo.

E-FILED  2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

In a proceeding to reopen, the debtor may assert the same affirmative defenses that could have been used in defending against an action on the underlying claim. However, in a proceeding to reopen the burden and expense of instituting litigation shift from the creditor, where they would lie absent the confession of judgment, to the debtor. Because of the relative ease with which confessions of judgment may be entered, creditors may be tempted to use them indiscriminately. To the extent that consumers must institute legal action to defend against unwarranted claims, they suffer considerable economic injury through the costs that they must incur.

Although consumers with meritorious defenses may ultimately succeed in vacating judgments against them, they are deprived of the full use of their property during the process. ... Until such a lien is dissolved, the consumer's ability to use the property for collateral or to dispose of it is significantly impaired. Moreover, because the lien is effective whether or not notice is mailed to or reaches the debtor, debtors may learn of its existence only at the precise point at which they seek to use the property for such purposes. By the time debtors succeed in dissolving the lien, the opportunity for which they intended to use the property may have passed.

... Accordingly, we find that the use of cognovits causes substantial consumer injury.

*Id.* (emphasis added).

### *Iowa Student Loan Liquidity Corporation (ISLLC)*

36.   ISLLC, a private nonprofit corporation, was created in 1979 by proclamation of Governor Ray in response to Section 2105 of the federal Tax Reform Act of 1976. PL 94-455, Sec. 2105. The Tax Reform Act encouraged the growth of state-based secondary student loan markets by providing for the issuance of tax-exempt bonds by not-for-profit organizations organized to acquire and increase access to student loans. Iowa Code § 7C.4A(3).

37.   Even though ISLLC is a private nonprofit organization, it maintains strong connections to both private for-profit and governmental entities. For example, the by-laws of ISLLC have

13

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

provided for several decades that its board is chosen by the Governor,[2] and ISLLC has partnered extensively over the years with the Iowa College Student Aid Commission (ICSAC), a state agency. In addition to being strongly connected to state government ISLLC also owns a for-profit subsidiary, Aspire, that services student loans for ISLLC and others.[3] According to its 2022 IRS Form 990, ISLLC had $50,621,901 in revenue that year.

38.     The loan at issue in this case is a "Partnership Loan" originally issued under a wholly private partnership between ISLLC and various private lenders. Partnership Loans have had a controversial history in Iowa. For example, the "intense marketing" of Partnership Loans by ISLLC was one factor recognized in 2008 for a large increase in student debt.[4] This was during a time that Iowans' student debt load was the second highest in the nation.[5] According to a 2008 report of the Iowa Attorney General, the loans were frequently marketed as the lowest-cost loans available to students even though that was not always the case. Furthermore, these marketing practices did not adequately promote federal loans or ensure that federal loan eligibility had been exhausted.[6]

39.     These loans have been aggressively collected, long after the statutory limitation periods have expired, in a variety of ways including, as here, by procuring judgments through confession.

---

[2]  Issue Review: Iowa Student Loan Liquidity Corporation, Iowa Legislative Services Agency Fiscal Services Division (October 8, 2019)
https://www.legis.iowa.gov/docs/publications/IR/1050283.pdf
[3]  Id.
[4]  Iowa Board of Regents, Agenda Item 13: Access And Affordability – Part II, a Board of Regents Initiative, pg.2 (December 10-11, 2008)
https://www.legis.iowa.gov/docs/publications/SD/22851.pdf
[5]  Testimony of Robert Shireman before the Joint Government Oversight Committee of the Iowa Legislature (October 29, 2007) https://www.legis.iowa.gov/docs/publications/SD/7087.pdf
[6]  Issue Review: Iowa Student Loan Liquidity Corporation, Iowa Legislative Services Agency Fiscal Services Division (October 8, 2019)
https://www.legis.iowa.gov/docs/publications/IR/1050283.pdf

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

These confessions were framed by ISLLC or its agents to debtors as "settlement agreements." Borrowers were induced into signing these agreements when ISLLC or its agents threatened them with garnishment, often for loans that were not backed up with adequate documentation, beyond the statute of limitations, or subject to other defenses.

40.     Hundreds of these confessions were later filed over the ensuing years, sometimes leading to surprise garnishments with potentially devastating effects. For example, a former client of Iowa Legal Aid who was in this exact position was featured on a CNBC story in May 2020.[7] This case resulted in return of funds garnished and a satisfaction of judgment, after pointing out to the private collector both the age of the debt and the constitutional problems with the confession of judgment process.

41.     Unfortunately, however, this unfair, deceptive, and unconstitutional practice continues to the present day, necessitating the filing of this lawsuit.

### The Confession of Judgment in Liliana Zambrano's Case

42.     The Plaintiff, Liliana Zambrano, is a resident of Johnson County, Iowa.

43.     Ms. Zambrano is currently subject to what appears to be a $21,710.45 judgment in favor of ISLLC entered by confession on January 3, 2020 in Johnson County Case No. LACV081511.

44.     Upon information and belief, this alleged debt refers to a loan first disbursed on May 7, 2007. The loan was taken while Ms. Zambrano was attending La' James International College, a cosmetology school that has been subject to lawsuits and attorney general consumer fraud proceedings due to unfair business practices.

---

[7] https://www.cnbc.com/2020/05/11/debt-collectors-are-leveraging-the-courts-more-than-ever-before.html

E-FILED  2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

45.     Based on ISLLC's documentation filed in LACV081511, Ms. Zambrano signed a

confession of judgment on February 6, 2012.

46.     ISLLC filed the confession of judgment filed with Ms. Zambrano's unredacted social

security number.

47.     Ms. Zambrano received no consideration for signing the confession.

48.     On February 6, 2012, ISL demanded Ms. Zambrano sign paperwork, which she obliged

(although she did not understand it), including a "Confession of Judgment" that refers to ISLLC

as a "Plaintiff," and Ms. Zambrano as a "Defendant," and which includes the following text:

> That on May 7, 2007, Liliana Zambrano entered into one credit agreement with ISL,
> described as follows:
>
> a.     Note first disbursed on May 7, 2007 ($21,710.45 and 8.31%)
>
> The Defendant has failed to make payments as agreed under the credit agreement.
> The failure of the Defendant to make payment as agreed has resulted in a past due
> balance of $21,710.45.
>
> **If Defendant fails to make payment as agreed pursuant to the Settlement
> Agreement executed and delivered by Liliana Zambrano to the Plaintiff on or
> about January 20, 2012,** Plaintiff shall file this Confession of Judgment and
> execution shall then be issued without further order of this Court for the full amount
> of the judgment less credit for payments made if any, as supported by an affidavit
> of Plaintiff's representative at the time of filing.
>
> Further, it is agreed that the Defendant, Liliana Zambrano, waives the issuance and
> service of notice and hereby submits to the jurisdiction of this Court without further
> hearing regarding this Confession of Judgment. Liliana Zambrano hereby confesses
> judgment to the Plaintiff in the amount of default, plus interest as set forth in the
> Settlement Agreement and the costs of this action, subject however, to the
> agreement of the parties as stated above including credit for all payments made.

(Emphasis in original.)

49.     On January 3, 2020, ISLLC filed the February 6, 2012, Confession of Judgment with the

Iowa District Court in and for Johnson County, and the Clerk assigned it Case Number

E-FILED  2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

LACV081511. On January 6, 2020, the ISLLC obtained execution from the Clerk indicating

ISLLC claimed the "Original Amount of Judgment" against Ms. Zambrano was $21,710.45.

50.    No judge was involved in ratifying the judgment or otherwise approved the filing of the

judgment.

51.    Ms. Zambrano, who had neither legal counsel nor legal training, did not understand the

consequences of signing the confession.

52.    No affidavit was filed explaining the status of the debt, despite the fact that almost eight

years had passed.

53.    Upon information and belief, Ms. Zambrano would have raised the following defenses

and counterclaims had she been provided proper notice and hearing rights, including but not

limited to the following:

a.    Failure to provide a predicate notice to cure under Iowa Code § 537.5111

[grounds for both dismissal under Iowa Code § 537.5110(7) and a counterclaim

under Iowa Code § 537.5201(1)(a)(26)];

b.    "Unlawful debt collection under the Iowa Debt Collection Practices Act and

federal Fair Debt Collection Practices Act;

c.    That the action was barred under the Statute of Frauds, for failure to

incorporate the essential written terms of the contract in writing;

d.    Failure to provide sufficient documentation to prove ISLLC's claim.

## COUNT I – DECLARATORY & INJUNCTIVE RELIEF

54.    A judgment entered without jurisdiction is subject to collateral attack. *City of Chariton v.*

*J.C. Blunk Construction Co.*, 112 N.W.2d 829, 834 (Iowa 1962). This is true even if that

judgment has been satisfied. *Id.*

17

E-FILED  2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

55.   A collateral attack on a judgment beyond the one-year period for a petition to vacate may

be brought in an independent equitable action. *Id. See also, e.g., Rosenberg v. Jackson*, 247 N.W.2d

216 (Iowa 1976); *Johnson v. Mitchell*, 489 N.W.2d 411 (Iowa Ct. App. 1992). A void judgment is

subject to attack at any time without resort to the rules governing vacating judgments. *Claeys v.*

*Moldenschardt*, 148 N.W.2d 479, 482 (Iowa 1967).

56.   A confession of judgment filed pursuant to Iowa Code Chapter 676 is void for lack of

personal jurisdiction in that it was entered without notice or hearing. *See, e.g., In re S.P.*, 672

N.W.2d 842 (Iowa 2003).

57.   These flaws additionally render Chapter 676 facially unconstitutional as a denial of due

process of law under the 14th Amendment of the United States Constitution and Article I, Section

9 of the Iowa Constitution, as the antiquated and sparse language of that chapter categorically does

not provide adequate safeguards for a court to be able to assess whether a confession of judgment

was given voluntarily, intelligently, and knowingly.

58.   The particular facts of this case also render the confession of judgment at issue here

jurisdictionally void on as-applied due process grounds.

   a.   Ms. Zambrano was induced into signing the confession of judgment by

   threats of a lawsuit that could not legally be carried out due to the insufficient

   documentary evidence of the loan.

   b.   Ms. Zambrano was unrepresented by counsel at the time this confession was

   executed, there was a massive imbalance of bargaining power and sophistication

   between her as an individual consumer and a lender with thousands of loans in its

   portfolio, and the confession and accompanying settlement agreement were

   contracts of adhesion.

E-FILED  2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

    c.   Ms. Zambrano received no actual consideration for her complete waiver of all rights to receive notice of and contest the judgment.

59.   Ms. Zambrano is entitled to declaratory relief under Iowa R. Civ. P. 1.1101 *et seq.*, in addition to statutory provisions noted in Counts II & III below, on both the validity of the judgment in Dubuque Co. Case No. LACV113691 and the constitutionality of Iowa Code Chapter 676.

60.   Ms. Zambrano is also entitled to appropriate injunctive relief under Iowa R. Civ. P. 1.1501 *et seq.*, enjoining the direct or indirect enforcement of the judgment entered in Dubuque Co. Case No. LACV113691.

## COUNT II – IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUD ACT

61. Iowa Code § 714H.3(1) provides:

> A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes.

62.   The prohibited practice must be related to a material fact. Iowa Code § 714H.3(1).

63.   "Deception" means an act or practice that is likely to mislead a substantial number of consumers as to a material fact or facts. Iowa Code § 714H.2(5)

64.   A misrepresentation is material if it is "likely to affect a consumer's conduct or decision with regard to a product or service." *State ex rel. Miller v. Rahmani*, 472 N.W.2d 254, 258 (Iowa 1991). A statement which is literally true may nonetheless be deceptive. *Id.*

65.   ISLLC's actions were "deceptive" under IPRACFA for reasons not limited to:

    a.   Representing the debt as valid even though it was subject to challenge under statute of frauds, statute of limitations, and other grounds.

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

    b.    Threatening garnishment on a time-barred debt, a remedy not allowed by law, in order to induce the signing of the confession.

66.    An "unfair practice" means the same as defined in section 714.16. Iowa Code § 714H.2(9). An unfair practice is an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces. Iowa Code § 714.16(1)(n).

67.    State and federal courts alike consider an unfair practice to be "nothing more than conduct a court of equity would consider unfair." *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W. 2d 518, 525 (Iowa 2005) (collecting cases). The same courts have found that "statutes that prohibit "unfair practices" are designed to infuse flexible equitable principles into consumer protection law so that it may respond to the myriad of unscrupulous business practices modern consumers face." *Id.*

68.    Iowa's definitions of unfair practices themselves are rooted in and strongly influenced by the regulations and policy interpretations of the FTC, and the caselaw those materials have generated. As noted, the FTC's Credit Practices Rule has prohibited the use of confession clauses in consumer transactions since 1984:

> In connection with the extension of credit to consumers in or affecting commerce, as commerce is defined in the Federal Trade Commission Act, it is an unfair act or practice within the meaning of Section 5 of that Act for a lender or retail installment seller directly or indirectly to take or receive from a consumer an obligation that... [c]onstitutes or contains a cognovit or confession of judgment ... warrant of attorney, or other waiver of the right to notice and the opportunity to be heard in the event of suit or process thereon.

16 C.F.R. § 444.2(a)(1).

69.    The rulemaking materials the FTC employed in promulgating this rule analyze confessions of judgment under the same factors the Iowa Legislature has provided in unfairness analysis – an

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

injury to consumers that is (1) substantial, (2) unavoidable, and (3) is not outweighed by the countervailing consumer or competitive benefits the practice provides. *Trade Regulation Rule: Credit Practices*, 49 FR 7740 (March 1, 1984). *accord* Iowa Code § 714.16(1)(n).

    a.   The FTC found that "confessions of judgment cause injury by depriving consumers of notice of a suit or hearing and the opportunity to appear and present any meritorious claims or defenses... [o]nce obtained, the confessed judgment can be turned into a lien on the consumer's real and personal property." *Trade Regulation Rule: Credit Practices*, 49 FR at 7748.

    b.   The rulemaking involved empirical data gathered from surveys of low-income consumers. From this data, the FTC found that, "[o]f the creditor remedies addressed by the [Credit at Practices] rule, confessions of judgment are least likely to be understood by consumers." *Id.* at 7749. Further, per the FTC, "consumers rarely understand the significance of these clauses because they are worded in obscure technical language and because the concept of judgment by confession conflicts with the common understanding of basic due process rights." Thus, "consumers cannot reasonably avoid the injury caused by cognovits." *Id.*

    c.   The FTC found that prohibiting confessions of judgment would lead to increased collection and legal costs, and potentially higher interest rates and reduced credit availability for borrowers. However, reasoning that creditors were still left with more than ample remedies, the FTC found that these factors did not outweigh the negative aspects of the practice.

70.   In addition to the reasons articulated by the FTC, ISLLC's actions were "unfair" under IPRACFA for reasons not limited to:

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

a.    They shift the burden of proof that would otherwise be on the creditor to the debtor.

b.    ISLLC secured the confession in the absence of consideration or any benefit to Ms. Zambrano.

71.    Iowa Code § 714H.5 authorizes a consumer who suffers an ascertainable loss of money or property to recover actual damages, temporary and permanent injunctive relief, attorney fees, and costs.

72.    ISLLC acted with willful or wanton disregard for the rights or safety of Ms. Zambrano, justifying an additional statutory damages award of up to three times the amount of actual damages.

## COUNT III – DEPRIVATION OF DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION – 42 U.S.C. § 1983

73.    As outlined in detail above, ISLLC, acting under color of law for purposes of 42 U.S.C. 1983, deprived Ms. Zambrano of due process of law by utilizing a statutory process that is facially unconstitutional in that it does not provide adequate safeguards for a court to gauge whether this waiver of rights was voluntarily, knowingly, and intelligently given.

74.    In addition, as outlined in detail above, ISLLC, acting under color of law, deprived Ms. Zambrano of due process of law by obtaining a confession of judgment that was, under the circumstances of her case, not voluntarily, intelligently, or knowingly given.

75.    Although a private actor, ISLLC is nevertheless liable under 42 U.S.C. 1983 because it "has acted together with or has obtained significant aid from state officials" in obtaining a judgment by confession which violates Ms. Zambrano's constitutional rights. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 935 (1982) (creditor using unconstitutional pre-judgment attachment procedures acting in concert with state officials sufficient to invoke color of law and thus 1983 liability).

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

76. As the United States Supreme Court stated in *Fuentes*:

> The requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions. But the fair process of decision making that it guarantees works, by itself, to protect against arbitrary deprivation of property. For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that 'fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights... And no better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.

*Fuentes*, 407 U.S. at 81. Ms. Zambrano was denied these most basic constitutional protections enjoyed by civil litigants by ISLLC.

77. In addition, as explained by the FTC in promulgating the Credit Practices Rule:

> Judgment debtors whose property is encumbered through the existence of a creditor's lien lose the full use and enjoyment of their property. Debtors are unlikely to be able to sell it, for example, or to use it as collateral while it is subject to a lien. Although the debtor may eventually prevail on the merits and dissolve the lien, the post-judgment rights provided by statute cannot cure the deprivation experienced while the action is pending. Even a temporary and non-final deprivation of the use of one's property is a matter of constitutional significance and invokes the protection of the due process clause.

Trade Regulation Rule: Credit Practices, 49 FR 7740-01, 7749 (March 1, 1984). *See also* Iowa Code § 624.23.

78. A person injured on a claim actionable under 42 U.S.C. 1983 is entitled to compensatory damages, punitive damages, equitable relief, attorney fees, and costs. 42 U.S.C. §§ 1983, 1988.

## RELIEF REQUESTED

WHEREFORE, the Petitioner asks that this Court grant the following relief:

A. Declaratory relief holding the judgment entered in Johnson County Case No.

LACV081511 on January 3, 2020, to be void and unenforceable;

E-FILED 2023 NOV 20 2:27 PM JOHNSON - CLERK OF DISTRICT COURT

B.  Declaratory relief holding Iowa Code Chapter 676 to be an unconstitutional deprivation of due process of law under both Fourteenth Amendment of the U.S. Constitution and Article 1, Section 9 of the Iowa Constitution, both facially and as applied to the circumstances of the Petitioner's case;

C.  Injunctive relief under Iowa Rule of Civil Procedure 1.1501 *et seq.*, Iowa Code § 714H.5, and 42 U.S.C. 1983, enjoining the direct or indirect enforcement of the judgment entered in Johnson County Case No. LACV081511;

D.  Compensatory damages under 42 U.S.C. 1983 in an amount to be determined at trial;

E.  Actual damages under IPRACFA, Iowa Code Chapter 714H, plus punitive damages of up to three times actual damages;

F.  Reasonable attorney fees and costs pursuant to 28 U.S.C. § 1920, 42 U.S.C. § 1988, and Iowa Code 714H.5; and

G.  Any other relief just and equitable under the circumstances.

Respectfully submitted,
LILIANA ZAMBRANO, Petitioner

/s/ James Kringlen
James Kringlen AT0004503
Iowa Legal Aid
1700 S. 1st Avenue, Suite 10
Iowa City, Iowa 52240
Tel: 319-351-6570
Fax: 319-352-0079
jkringlen@iowalaw.org

/s/ Alex Kornya
Alexander Vincent Kornya, AT0009810
Iowa Legal Aid
666 Walnut St., 25th Floor
Des Moines, Iowa 50309
(515) 243-1193
akornya@iowalaw.org
ATTORNEYS FOR PETITIONER

24

**U.S. District Court**
**Southern District of Iowa (Eastern)**
**CIVIL DOCKET FOR CASE #: 3:23-cv-00086-RGE-WPK**

Zambrano v. Iowa Student Loan Liquidity Corporation
Assigned to: Judge Rebecca Goodgame Ebinger
Referred to: Magistrate Judge William P. Kelly
Case in other court:  IASD, 4-23-cv-515
                Johnson County, Iowa,
                CVCV084646
Cause: 42:1983dp Civil Right Denial of Due Process

Date Filed: 12/20/2023
Jury Demand: None
Nature of Suit: 440 Civil Rights:
Other
Jurisdiction: Federal Question

**Plaintiff**

**Liliana Zambrano**
            represented by  **Alexander Vincent Kornya**
IOWA LEGAL AID - DES
MOINES
666 WALNUT STREET
SUITE 25TH FLOOR
DES MOINES, IA 50309
515-243-1193
Email: akornya@iowalaw.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**James Kringlen**
IOWA LEGAL AID - IOWA CITY
1700 S. FIRST AVENUE
SUITE 10
IOWA CITY, IA 52240
319-351-6570
Email: jkringlen@iowalaw.org
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

V.

**Defendant**

**Iowa Student Loan Liquidity**
**Corporation**
            represented by  **Jason Michael Craig**
AHLERS & COONEY PC
100 COURT AVE
STE 600
DES MOINES, IA 50309
515-246-0372
Fax: 515-243-2149
Email: jcraig@ahlerslaw.com



*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/07/2024 | 12 | ORDER SETTING STATUS CONFERENCE. Telephonic Status Conference set for 1/15/2025 at 10:00 AM before Magistrate Judge William P. Kelly. Counsel shall call 1-877-411-9748 and enter code 1376500 at the prompt to join the call. Status Report due by 1/13/2025. See Order for particulars. Signed by Magistrate Judge William P. Kelly on 3/7/2024. (rls) (Entered: 03/07/2024) |
| 03/07/2024 | 11 | ORDER REGARDING FINAL PRETRIAL CONFERENCE REQUIREMENTS. See Order for particulars. Signed by Magistrate Judge William P. Kelly on 3/7/2024. (rls) (Entered: 03/07/2024) |
| 03/07/2024 | 10 | ORDER adopting 8 REGARDING PROPOSED SCHEDULING ORDER AND DISCOVERY PLAN: Initial Disclosures Deadline 4/18/2024. Motions to Add Parties due by 7/17/2024. Motions to Amend Pleadings due by 7/17/2024. Plaintiffs Expert Witness Disclosures due by 9/19/2024. Defendants Expert Witness Disclosures due by 11/18/2024. Plaintiffs Rebuttal Witness Disclosures due by 12/18/2024. Discovery Deadline 2/18/2025. Dispositive Motion Deadline 3/17/2025. Final Pretrial Conference set for 7/9/2025 at 9:00 AM in Des Moines - Room 410 - 4th Floor Southeast before Judge Rebecca Goodgame Ebinger. Bench Trial set for 8/18/2025 at 9:00 AM in Des Moines - Room 410 - 4th Floor Southeast before Judge Rebecca Goodgame Ebinger. Estimated length of trial is 6 days. Signed by Magistrate Judge William P. Kelly on 3/7/2024.(rls) (Entered: 03/07/2024) |
| 03/07/2024 | 9 | TEXT MINUTE ENTRY for proceedings held before Magistrate Judge William P. Kelly: Telephonic Scheduling Conference held on 2/21/2024. Attorneys Alexander Vincent Kornya, Jayme Wiebold, and James Kringlen appeared on behalf of Plaintiff. Attorney Jason Michael Craig appeared on behalf of Defendant. Status of case discussed. The parties reported they anticipate potential jurisdictional issues, as well as constitutional issues. The parties discussed 28 U.S.C. § 2403(b) and the timing of the Court certifying an issue concerning the constitutionality of an Iowa statute in this litigation to the Iowa Attorney General. The parties agreed that consolidation of the two cases, 4:23-cv-515 and 3:23-cv-86, might be appropriate and the Court will set trial for the two cases accordingly. A formal Motion for Consolidation will be needed. Separate Orders to follow. Total Court Time: 23 minutes.(rls) (Entered: 03/07/2024) |

| 02/14/2024 | 8 | PROPOSED SCHEDULING ORDER AND DISCOVERY PLAN . (Kornya, Alexander) (Entered: 02/14/2024) |
|---|---|---|
| 01/24/2024 | 7 | TEXT ORDER SETTING SCHEDULING CONFERENCE. A Telephonic Scheduling Conference is set for 2/21/2024 at 10:30 AM before Magistrate Judge William P. Kelly. Counsel shall call 1-877-411-9748 and enter code 1376500 at the prompt to join the call. The parties shall file a Proposed Order and Discovery Plan as provided under Local Rule 16 by 2/14/2024. Signed by Magistrate Judge William P. Kelly on 1/24/2024. (rls) (Entered: 01/24/2024) |
| 01/10/2024 | 6 | NOTICE of Appearance by James Kringlen on behalf of Liliana Zambrano (Kringlen, James) (Entered: 01/10/2024) |
| 12/28/2023 | | Judge Rebecca Goodgame Ebinger and Magistrate Judge William P. Kelly added. Magistrate Judge Stephen B. Jackson, Jr and Chief Judge Stephanie M. Rose no longer assigned to case. (sml) (Entered: 12/28/2023) |
| 12/22/2023 | 5 | Corporate Disclosure/Statement of Interest by Iowa Student Loan Liquidity Corporation. (Craig, Jason) (Entered: 12/22/2023) |
| 12/21/2023 | 4 | NOTICE by Iowa Student Loan Liquidity Corporation *CIVIL COVER SHEET*. (Craig, Jason) (Entered: 12/21/2023) |
| 12/21/2023 | 3 | Corporate Disclosure Packet Note: Counsel should download the attached corporate disclosure packet in compliance with Local Rule 7.1 for the disclosure statements. Corporate Disclosure Statement deadline set for defendant 1/11/2024. (btg) Modified on 12/21/2023- changed deadline date to 1/11/2024. Regenerated. (sml). (Entered: 12/21/2023) |
| 12/20/2023 | 2 | ANSWER to Complaint by Iowa Student Loan Liquidity Corporation.(Craig, Jason) (Entered: 12/20/2023) |
| 12/20/2023 | 1 | NOTICE OF REMOVAL by Iowa Student Loan Liquidity Corporation from Iowa District Court for Johnson County, case number CVCV084646. Filing fee paid in the amount of $ 405, receipt number AIASDC-5327778., filed by Iowa Student Loan Liquidity Corporation. Rule 16 Notice of Dismissal set for 3/19/2024. (Attachments: # 1 Local Rule 81(a) Removal Information Form, # 2 Original Notice and Petition, # 3 Return of Service)(Craig, Jason) (Entered: 12/20/2023) |

E-FILED   2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT IN AND FOR POLK COUNTY

| | |
|---|---|
| Jantzen Mason,<br>Petitioner,<br><br>v.<br><br>Iowa Student Loan Liquidity Corporation,<br>Respondent. | Case No.:<br><br><br>Petition |

### FACTS

#### Background

1.  "Entry of judgment by confession has long been viewed with judicial distaste. Such judgments have been described as the loosest way of binding a man's property that was devised in any civilized country." *Tara Enters., Inc. v. Daribar Mgmt. Corp.*, 369 N.J. Super. 45, 56 (N.J. App. Div. 2004) (citing *Alderman v. Diament*, 7 N.J.L. 197, 198 (1824)).

2.  A confession of judgment, sometimes referred to as a cognovit, is an ancient legal device that operates as the civil equivalent to a criminal confession, often waiving each and every right otherwise considered fundamental to due process of law in civil lawsuits.

3.  Respondent Iowa Student Loan Liquidity Corporation (ISLLC) or its agents induced borrowers, including Petitioner Jantzen Mason, to sign documents asserted to be "payment plans" or "settlement agreements" for private student loans alleged to be in default. These private loans were often time-barred, poorly documented, and subject to several affirmative defenses and claims.

4.  These "payment agreements" included authorizations to confess judgment. ISLLC coerced borrower signatures by threatening garnishment and other harsh collection methods, even though these remedies were not legally available. Borrowers, unrepresented by counsel and receiving no consideration, uniformly did not understand that these agreements constituted a complete waiver of their due process rights, and ability to raise viable defenses. When borrowers missed a payment, ISLLC filed the confessions with the clerk of court. The confessions became immediately enforceable, just like a judgment issued after trial.

5.  ISLLC used these confessions to garnish wages and accounts, as well taking other harsh collection actions – all without any advance notice, without any supervision or review by a court, without the opportunity to raise a defense or counterclaim, and without any opportunity to contest ISLLC's claims.

1


EXHIBIT
4A

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

6. As recognized in commentary to the Uniform Consumer Credit Code more than 50 years ago, "the great majority of States prohibit... authorizations to confess judgment." Comment to Uniform Consumer Credit Code Sec. 3.306 (1978).

7. In the last half century, 13 states have abolished the use of authorizations to confess judgment entirely. Many others have reformed their existing laws to provide additional protections, especially for unsophisticated parties, such as consumers. Based on state reforms, litigation, and action by federal agencies such as the Federal Trade Commission, the prevalence of confessions, at least in transactions with unsophisticated and unrepresented parties, has greatly receded throughout most of the country.

8. Alas, this has not been so in Iowa. The version of Iowa Code Chapter 676 effective today, which governs confessions of judgment, has effectively the same language appearing in Iowa's first state code enacted in 1851. This was the year that Abraham Lincoln's father died, the second year of Millard Fillmore's presidency, and 17 years prior to the ratification of the 14th Amendment to the United States Constitution. In the 155 years since that ratification, Chapter 676 has – improbably – never been scrutinized by an appellate court on due process grounds.

9. Even though this chapter of the code governs a complete and unqualified waiver of every due process right normally enjoyed by civil litigants, the entire chapter (including section headings) contains only 193 words,[1] and reads as follows:

### 676.1. Judgment by confession—how entered

A judgment by confession, without action, may be entered by the clerk of the district court.

### 676.2. For money only—contingent liability

The judgment can be only for money due or to become due, or to secure a person against contingent liabilities on behalf of the defendant, and must be for a specified sum.

### 676.3. Statement

A statement in writing must be made, signed, and verified by the defendant, and filed with the clerk, to the following effect:

---

[1] For perspective, this is only 61% of the number of words contained in the studio version of Electric Light Orchestra's 1979 hit "Don't Bring Me Down."

2

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

1. If for money due or to become due, it must state concisely the facts out of which the indebtedness arose, and that the sum confessed therefor is justly due, or to become due, as the case may be.

2. If for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting such liability, and must show that the sum confessed therefor does not exceed the same.

676.4. Judgment—execution

The clerk shall thereupon make an entry of judgment in the clerk's court record for the amount confessed and costs, and shall issue execution thereon as in other cases, when ordered by the party entitled thereto.

10. The United States Supreme Court addressed the due process implications of confessions of judgment in two concurrently decided cases in 1972: *D.H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174 (1972) and *Swarb v. Lennox*, 405 U.S. 191 (1972). Both cases are addressed throughout this petition.

11. In *Overmyer*, the Court upheld the facial constitutionality of Ohio's cognovit statute in the context of a lawsuit between two corporate actors. *Overmyer* at 405 U.S. at 187. The nature of the challenge was that a confession of judgment could never meet due process requirements under any circumstances. Although the Court disagreed with this broad premise, it gave the caveat that:

> [This] holding ... is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue.

*Id.* at 188. The Court further held that, even where a confession of judgment statute itself was facially constitutional, it still may be unconstitutional according to the facts of a particular case if the confession was not voluntarily, intelligently, and knowingly given – especially in situations involving unequal bargaining power and lack of consideration. *Id.*

12. *Swarb* was a challenge to Pennsylvania's cognovit system and, like *Overmyer*, upheld the constitutionality of that system on its face. 405 U.S. at 200. The Court again carefully limited itself to narrow circumstances where parties had equal bargaining power. *Id.* at 201. Part of the underlying decision in *Swarb*, that a more limited class of low-income consumers challenging the constitutionality of the statute as applied to them could proceed, was unchallenged and thus allowed to remain intact by the Court. *Id.*

3

E-FILED  2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

13. The statutes facially upheld in these two cases and state interpretations of those statutes differed in many respects from Iowa's.

    a. The Pennsylvania statute upheld in *Swarb* provided that conditional confessions (e.g., those styled as payment plans) couldn't be filed without serving a complaint. *Id.* at 193-94. Notice was required immediately after judgment was entered, and there were specific, effectively non-time-barred processes for challenging the confession after entry. *Id.* It is also notable that, in 1972, there was effectively no wage garnishment in Pennsylvania, which remains true with limited exceptions today. *See* 42 Pa. C.S. § 8127.

    b. Ohio's statute, similarly, had additional protections that do not appear in Iowa's statute. For example, post-judgment notice was required. *Overmyer*, 405 U.S. at 182. The confession was to be produced "to the court," rather than the clerk. *Id.* at 175, n.1. *Cf.* Iowa Code § 676.3. Outside of the statute itself, the Court recognized that the standard employed by the Ohio Supreme Court for re-opening a confession of judgment case was very liberal:

> (I)f there is credible evidence supporting the defense . . . from which reasonable minds may reach different conclusions, it is then the duty of the court to suspend the judgment and permit the issue raised by the pleadings to be tried by a jury, or, if a jury is waived, by the court.

    *Overmyer*, 405 U.S. at 189 (Douglas, J., concurring) (quoting *Livingstone v. Rebman*, 158 N.E.2d 366, 375 (Ohio 1959).

14. In the same term as *Overmyer* and *Swarb*, the Court laid out due process minima for unsophisticated consumers in a different context: prejudgment replevin. *Fuentes v. Shevin*, 407 U.S. 67 (1972). The *Fuentes* Court noted that these matters, almost exclusively involving financing companies against *pro se* low-income debtors, were "a far cry from *Overmyer*" in that:

> There was no bargaining over contractual terms between the parties who, in any event, were far from equal in bargaining power. The purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale. The appellees made no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights.

*Id.* at 95.

4

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

15. Subsequent facial challenges to confession statutes reached different conclusions, based in part on differences between the statutes themselves.

16. Some states invalidated their statutes because their statutes were less protective than those reviewed in *Overmyer* and *Swarb*. For example, in *Isbell v. County of Sonoma*, the California Supreme Court found that former California Code of Civil Procedure §§ 1132 – 1135 contained "insufficient safeguards to assure that the debtor in fact executed a voluntary, knowing, and intelligent waiver." 577 P.2d 188, 189 (Cal. 1978).

17. California's statute circa 1978 was enacted the same year as the predecessor to Iowa Code Chapter 676 and uses language very similar (including some verbatim passages) to Iowa's current law. *Id.* at 189 – 190.

18. *Isbell* distinguished the constitutional question raised in *Overmyer* – whether confessions of judgment were *ever* constitutional – and the narrower question of whether a confession statute had adequate safeguards to determine whether a waiver was indeed valid under the terms of *Overmyer*, i.e. was it voluntary, intelligent, and knowing, or whether such a waiver could simply be presumed by the mere filing of a document with the clerk. *Id.* at 192. The *Isbell* court also found "the statutory procedure upheld in Overmyer was not nearly as harsh in operation as the California procedure at issue", given the modest protections available to consumers in Ohio. *Id.* at 195.

19. Moreover, the *Isbell* court also found that "the debtor's opportunity to seek post-judgment relief does not cure the unconstitutionality of a judgment entered without a valid waiver[.]" *Id.* at 194.

20. Ultimately, the Court in *Isbell* struck down the statute as a facial violation of the Fourteenth Amendment, holding that the California procedure "requir[ing] the clerk to enter judgment upon a document which is ordinarily insufficient to demonstrate a valid waiver...is constitutionally defective." *Id. See also Osmond v. Spence*, 359 F.Supp. 124 (D. Del. 1972).

21. In contrast, other states held that their confession of judgment systems had additional protections not present in the 1978 California code (or present-day Iowa), which gave judgment debtors a reasonable chance to challenge invalid confessions. *See, e.g., Meier v. Perdun*, 288 N.W.2d 165 (Wis. 1980) (liberal and not time-barred post-judgment remedies, including setting aside for excusable neglect, preserved constitutionality of the statute).

5

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

22. Most states, however, headed off such challenges through legislative action either abolishing confessions of judgment or building in additional due process protections.

23. Unlike the statutes upheld in *Overmyer* and *Swarb* and like California's prior statute in *Isbell*, Iowa's statute does not require any notice to be provided to the judgment debtor and does not prescribe any process to test the validity of the waiver, before or after judgment entered. *See generally* Iowa Code Chapter 676.

24. Admittedly, the Iowa Legislature – like California at the time of *Isbell*[2] – has enacted narrow limitations on authorizations to confess judgment in two areas, both in connection with the adoption of uniform acts protecting vulnerable consumers.

    a. Residential rental agreements may not authorize a person to confess judgment for a claim arising out of that agreement. Iowa Code 562A.11(1)(b). This provision tracks verbatim the language of Section 1.403(a)(2) of the 1972 version of the Uniform Residential Landlord Tenant Act, commentary for which cites a similar provision in Section 2.415 of the 1968 version of the Uniform Consumer Credit Code (UCCC). Iowa Code § 562A.11(1)(b).

    b. Iowa's version of the Consumer Credit Code presents a weakened version of the 1968's UCCC prohibition, in that it excludes confessions "executed after default on a claim arising out of a consumer credit transaction." Iowa Code § 537.3306.

25. The very limited protection for consumers in Iowa Code 537.3306 does not address the fundamental facial and as-applied constitutional problems created by Chapter 676. *See Isbell*, 577 P.2d at 192. Moreover, our sister courts have found the distinction between a confession obtained after rather than before default irrelevant to the constitutional analysis addressed below. *Underwood Farmers Elevator v. Leidholm*, 460 N.W.2d 711 (N.D. 1990).

### *Chapter 676's Facial Constitutional Problems*

26. In *Fuentes*, The United States Supreme Court summarized the "central meaning of procedural process" as follows:

> [p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner.

---

[2] *Isbell*, 577 P.2d at 191.

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

407 U.S. at 80 (internal quotations omitted).

27. A fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In general, to determine whether the basic requirements of due process have been met, a court must weigh:

    a. the private interest that will be affected by the official action;

    b. the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and

    c. the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

*Id.* at 335.

28. As written, the antiquated language of Chapter 676 facially violates the guarantee of procedural due process in the following ways:

    **a. Failure to provide notice of the lawsuit.** *In re S.P.*, 672 N.W.2d 842 (Iowa 2003). A judgment entered without notice of the suit is void for lack of personal jurisdiction. *Id.* In addition, failure to provide notice makes the risk of erroneous deprivation all but inevitable, per *Mathews*. 424 U.S. at 335.

    **b. No opportunity for a hearing of any kind, let alone "at a meaningful time and a meaningful manner."** *Fuentes* 407 U.S. at 80; *see also Underwood Farmers Elevator v. Leidholm*, 460 N.W.2d 711 (N.D. 1990) ("We conclude that in order to satisfy the *Overmyer* requirement of a case-by-case, fact-specific review, it is necessary . . . for a hearing to determine whether Leidholm voluntarily, knowingly, and intelligently waived his due-process rights to notice and a hearing when he signed the confession of judgment.") Since pre-deprivation hearings are only to be denied in "extraordinary situations," which do not exist here, this would require a hearing before judgment was entered to determine whether the waiver was in fact voluntary, intelligent, and knowing. *Fuentes*, 407 U.S. at 90. At the very least, a hearing on validity of the waiver would be required prior to execution or garnishment. *Community Thrift Club, Inc. vs. Dearborn Acceptance Corp.*, 487 F.Supp. 877 (N.D. Ill. 1980).

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

    c. **No opportunity to confront witnesses.** *Goldberg v. Kelly,* 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.")

    d. **No opportunity to otherwise vacate a wrongfully entered judgment by confession.** *Isbell,* 577 P.2d at 194-95. *See also Overmyer,* 405 U.S. at 188-90 (discussion in both majority and concurrence upholding facial constitutional validity of confession statute, in part based on the fact that in Ohio trial courts must vacate a judgment by confession upon a showing of a valid defense).

    e. **No judicial supervision of the process of establishing the judgment,** which by statute begins and ends solely in the hands of the clerk of court and the judgment creditor themselves. *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601 (1975). *See also W.T. Mitchell v. Grant,* 416 U.S. 600, 617-18 (1974).

*As-Applied Constitutional Problems and Statutory Issues*

29. Even if Chapter 676 is facially constitutional, a particular confession may nevertheless fail on due process grounds if it was not obtained by the same standards governing criminal confessions – i.e., was it knowingly, intelligently, and voluntarily given. *Overmyer,* 405 U.S. at 187; *see also Lamberts v. Lillig,* 670 N.W.2d 129, 134 (Iowa 2003) (by analogy to criminal confession jurisprudence, waiver of civil constitutional parental caretaking interest invalid where waiver document and discussion was "relatively informal" and "relatively informal, with little if any discussion of the legal ramifications—much less the more specific constitutional ramifications—of its signing").

30. In the context of criminal confessions, undue influence will invalidate a confession. Coerced confessions are generally not considered to be voluntary. *See, e.g., State v. Quintero,* 480 N.W.2d 50 (Iowa 1992) (statements that defendant's nephew would be tried as adult as co-conspirator and face physical and sexual abuse in jail invalidated ensuing confession as involuntary). Similarly, explicit or even implied promises of leniency render criminal confessions involuntary and thus invalid. *See, e.g., State v. Mullin,* 85 N.W.2d 598 (Iowa 1957); *State v. McCoy,* 692 N.W.2d 6 (Iowa 2005). Failure to provide proper

E-FILED  2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

disclosures so that a defendant understands the legal significance of their decision will also invalidate a criminal confession. *See, e.g., Miranda v. Arizona,* 384 U.S. 436 (1966).

31. In a civil context, courts have also recognized the following factors in invalidating confessions of judgment:

   a. The bargaining power of the parties was significantly imbalanced, and the contract was one of adhesion. *Contrast Overmyer,* 405 U.S. at 186 (noting borrower's corporate structure supported conclusion that "[t]his is not a case of unequal bargaining power or overreaching") *with Fuentes,* 407 U.S. at 95 (noting borrowers' status as unsophisticated consumers supported conclusion that parties "were far from equal in bargaining power"); *see also Swarb,* 405 U.S. at 200–01 (distinguishing a class certification narrowed to consumers with annual incomes under $10,000).

   b. One party is represented by counsel and the other is not. *Overmyer,* 405 U.S. at 188; *Fuentes,* 407 U.S. at 94-95 (citing the distinction made so recently in *Overmyer*); *see also Lamberts,* 670 N.W.2d at 134 (pointing out significance in waiver of parental rights that neither party was represented).

   c. There was inadequate or even an absence of consideration given in return for the confession. *See Overmyer,* 405 U.S. at 183; *Swarb,* 405 U.S. at 201 ("absence of anything received in return" factor in invalidating confession).

32. Finally, "[t]he judgment can be only for money due or to become due, or to secure a person against contingent liabilities on behalf of the defendant, and must be for a specified sum." Iowa Code § 676.2. A document that does not specify the sum, or the correct sum, is deficient statutorily as well as constitutionally.

### Federal Regulation of Confessions of Judgment

33. Concurrently with the litigation described above, the Federal Trade Commission (FTC) targeted confessions of judgment as a *per se* unfair practice when employed against consumers.

34. In 1984, after almost a decade of rulemaking, the FTC adopted the Credit Practices Rule, which in part prohibits lenders and retail installment sellers from "directly or indirectly tak[ing] or receiv[ing] from a consumer an obligation that… constitutes or contains a

E-FILED  2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

cognovit or confession of judgment ... or other waiver of the right to notice and the opportunity to be heard in the event of suit or process thereon." 16 C.F.R. § 444.2; *Trade Regulation Rule: Credit Practices*, 49 FR 7740-01 (March 1, 1984).

35. The FTC's extensive investigation into confessions of judgment lead to the following conclusions about consumer injury caused by the practice:

> ...Cognovit clauses typically are worded in arcane language and may appear in small print. Record evidence supports the conclusion that debtors are unaware that they have agreed to such clauses and that they waive due process rights by doing so. When debtors receive notice of a judgment entered against them, they may not understand its import or that they must act affirmatively to raise any defenses against it. This problem is exacerbated by the fact that many states... do not require notice informing the debtor of the right to contest the judgment or the grounds for doing so. As a result the debtor may fail to respond despite having valid defenses to the judgment. The rulemaking record shows that judgments entered by confession frequently are invalid on their face. It also shows that debtors frequently have some defense to the judgment.

> When debtors are not apprised of their rights and therefore fail to challenge facially invalid judgments or fail to asset valid defenses, the consumer injury is clear. The judgment debtor's property may be taken in satisfaction of a claim that would not survive judicial scrutiny at a hearing on its merits. Loss of this property causes economic hardship, since the debtor loses both its use and any equity in it. Moreover, consumers must replace any essential items that are seized, usually at a greater cost than they were credited with for the seized property...

> Even when debtors understand their right to challenge the entry of judgment, post-judgment remedies ... do not make them whole. The procedure for reopening a judgment is complex and debtors are unlikely to succeed without incurring the cost of hiring an attorney. ... Such costs are not necessarily incurred in a trial de novo.

> In a proceeding to reopen, the debtor may assert the same affirmative defenses that could have been used in defending against an action on the underlying claim. However, in a proceeding to reopen the burden and expense of instituting litigation shift from the creditor, where they would lie absent the confession of judgment, to the debtor. Because of the relative ease with which confessions of judgment may be entered, creditors may be tempted to use them indiscriminately. To the extent that consumers must institute legal action to defend against unwarranted claims, they suffer considerable economic injury through the costs that they must incur.

> Although consumers with meritorious defenses may ultimately succeed in vacating judgments against them, they are deprived of the full use of their property during the process. ... Until such a lien is dissolved, the consumer's ability to use the property for collateral or to dispose of it is significantly impaired. Moreover, because the lien is effective whether or not notice is mailed to or reaches the debtor, debtors may learn of its existence only at the precise point at which they seek to use the property for such purposes. By the time debtors succeed in dissolving the lien, the opportunity for which they intended to use the property may have passed.

10

E-FILED · 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

... Accordingly, we find that the use of cognovits causes substantial consumer injury.

*Id.* (emphasis added).

### *Iowa Student Loan Liquidity Corporation (ISLLC)*

36. ISLLC, a private nonprofit corporation, was created in 1979 by proclamation of Governor Ray in response to Section 2105 of the federal Tax Reform Act of 1976. PL 94-455, Sec. 2105. The Tax Reform Act encouraged the growth of state-based secondary student loan markets by providing for the issuance of tax-exempt bonds by not-for-profit organizations organized to acquire and increase access to student loans. Iowa Code § 7C.4A(3).

37. Even though ISLLC is a private nonprofit organization, it maintains strong connections to both private for-profit and governmental entities. For example, the by-laws of ISLLC have provided for several decades that its board is chosen by the Governor,[3] and ISLLC has partnered extensively over the years with the Iowa College Student Aid Commission (ICSAC), a state agency. In addition to being strongly connected to state government ISLLC also owns a for-profit subsidiary, Aspire, that services student loans for ISLLC and others.[4] According to its 2022 IRS Form 990, ISLLC had $50,621,901 in revenue that year.

38. The loan at issue in this case is a "Partnership Loan" originally issued under a wholly private partnership between ISLLC and various private lenders. Partnership Loans have had a controversial history in Iowa. For example, the "intense marketing" of Partnership Loans by ISLLC was one factor recognized in 2008 for a large increase in student debt.[5] This was during a time that Iowans' student debt load was the second highest in the nation.[6] According to a 2008 report of the Iowa Attorney General, the loans were frequently marketed as the lowest-cost loans available to students even though that was not always

---

[3] Issue Review: Iowa Student Loan Liquidity Corporation, Iowa Legislative Services Agency Fiscal Services Division (October 8, 2019)
https://www.legis.iowa.gov/docs/publications/IR/1050283.pdf
[4] *Id.*
[5] Iowa Board of Regents, Agenda Item 13: Access And Affordability – Part II, a Board of Regents Initiative, pg.2 (December 10-11, 2008)
https://www.legis.iowa.gov/docs/publications/SD/22851.pdf
[6] Testimony of Robert Shireman before the Joint Government Oversight Committee of the Iowa Legislature (October 29, 2007) https://www.legis.iowa.gov/docs/publications/SD/7087.pdf

11

Case 4:23-cv-00515-RGE-WPK   Document 12-1   Filed 04/01/24   Page 105 of 117
Case 4:23-cv-00515-RGE-WPK   Document 1-2   Filed 12/20/23   Page 15 of 23

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

the case. Furthermore, these marketing practices did not adequately promote federal loans or ensure that federal loan eligibility had been exhausted.[7]

39. These loans have been aggressively collected, long after the statutory limitation periods have expired, in a variety of ways including, as here, by procuring judgments through confession. These confessions were framed by ISLLC or its agents to debtors as "settlement agreements." Borrowers were induced into signing these agreements when ISLLC or its agents threatened them with garnishment, often for loans that were not backed up with adequate documentation, beyond the statute of limitations, or subject to other defenses.

40. Hundreds of these confessions were later filed over the ensuing years, sometimes leading to surprise garnishments with potentially devastating effects. For example, a former client of Iowa Legal Aid who was in this exact position was featured on a CNBC story in May 2020.[8] This case resulted in return of funds garnished and a satisfaction of judgment, after pointing out to the private collector both the age of the debt and the constitutional problems with the confession of judgment process.

41. Unfortunately, however, this unfair, deceptive, and unconstitutional practice continues to the present day, necessitating the filing of this lawsuit.

### The Confession of Judgment in Jantzen Mason's Case

42. The Plaintiff, Jantzen Mason, is 39 years old and a resident of Omaha, Nebraska.

43. Mr. Mason is currently subject to a $6,716.25 judgment in favor of ISLLC entered by confession on July 19, 2016 in Polk County No. LACL135604.

44. Upon information and belief, this alleged debt refers to a Partnership Loan first disbursed on September 2, 2004. The loan was taken out at Vatterot College, which Mr. Mason only attended for one week.

45. Based on ISLLC's documentation filed in LACL135604, Mr. Mason signed a confession of judgment on June 21, 2012, about 8 years after the loan itself was disbursed. Mr. Mason does not recall signing this document.

---

[7] Issue Review: Iowa Student Loan Liquidity Corporation, Iowa Legislative Services Agency Fiscal Services Division (October 8, 2019)
https://www.legis.iowa.gov/docs/publications/IR/1050283.pdf
[8] https://www.cnbc.com/2020/05/11/debt-collectors-are-leveraging-the-courts-more-than-ever-before.html

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

46. Mr. Mason does not remember signing the confession of judgment. He does remember being contacted by mail and telephone by agents of ISLLC. These agents threatened to garnish his bank account. Mr. Mason received no consideration for signing the confession.

47. The confession provided that Mr. Mason owed ISLLC $6,716.25 on the balance of the Partnership Loan and referenced a separate "settlement agreement." Upon information and belief, this second document was never provided to Mr. Mason, though a copy of the settlement agreement was later filed in LACL135604.

48. The confession itself provided that if Mr. Mason defaulted on his payment plan, the confession would be filed without issuance or service of notice for the full amount confessed (less credit for payments made), that judgment and execution would issue without further order of the court.

49. Mr. Mason, who had neither legal counsel nor legal training, did not understand the consequences of signing the confession.

50. Mr. Mason made payments during at least some of the next four years.

51. Just over six years after the date noted on the confession of judgment, the confession itself was filed in LACL135604. Mr. Mason was never served with a copy of any of the initial filings, nor did ISLLC attempt to serve those filings, nor did he have any actual knowledge that the confession had been filed.

52. According to an "affidavit of default" on the loan at issue signed by Kevin Abbott, ISLLC's attorney, "[a]fter applying all payments there remain[ed] a balance of $4,562.92" on Mr. Mason's PLP loan.

53. There was no order from the trial court confirming the judgment. Upon information and belief, there was no judicial oversight of the Confession of Judgment when it was filed.

54. Upon information and belief, Mr. Mason would have raised the following defenses and counterclaims had she been provided proper notice and hearing rights, including but not limited to the following:

  a. Failure to provide a predicate notice to cure required by Iowa Code 537.5111 [grounds for both dismissal under Iowa Code 537.5110(7) and a counterclaim under Iowa Code 537.5201(1)(a)(26)];

  b. Unlawful debt collection under the Iowa Debt Collection Practices Act and federal Fair Debt Collection Practices Act;

13

    c.  That the action was barred under the Statute of Frauds, for failure to incorporate the essential written terms of the contract in writing;

    d.  That the action was barred under the applicable statute of limitations;

    e.  Failure to provide sufficient documentation to prove ISLLC's claim.

55. ISLLC attempted to enforce its judgment through garnishment on multiple occasions, further burdening judicial branch staff, law enforcement, garnishees, and Mr. Mason.

## COUNT I – DECLARATORY & INJUNCTIVE RELIEF

56. A judgment entered without jurisdiction is subject to collateral attack. *City of Chariton v. J.C. Blunk Construction Co.*, 112 N.W.2d 829, 834 (Iowa 1962). This is true even if that judgment has been satisfied. *Id.*

57. A collateral attack on a judgment beyond the one-year period for a petition to vacate may be brought in an independent equitable action. *Id. See also, e.g., Rosenberg v. Jackson*, 247 N.W.2d 216 (Iowa 1976); *Johnson v. Mitchell*, 489 N.W.2d 411 (Iowa Ct. App. 1992). A void judgment is subject to attack at any time without resort to the rules governing vacating judgments. *Claeys v. Moldenschardt*, 148 N.W.2d 479, 482 (Iowa 1967).

58. A confession of judgment filed pursuant to Iowa Code Chapter 676 is void for lack of personal jurisdiction in that it was entered without notice or hearing. *See, e.g., In re S.P.*, 672 N.W.2d 842 (Iowa 2003).

59. These flaws additionally render Chapter 676 facially unconstitutional as a denial of due process of law under the 14th Amendment of the United States Constitution and Article I, Section 9 of the Iowa Constitution, as the antiquated and sparse language of that chapter categorically does not provide adequate safeguards for a court to be able to assess whether a confession of judgment was given voluntarily, intelligently, and knowingly.

60. The particular facts of this case also render the confession of judgment at issue here jurisdictionally void on as-applied due process grounds.

    a.  Mr. Mason was induced into signing the confession of judgment by threats of garnishment that could not legally be conducted due to the age and insufficient documentary evidence of the loan.

    b.  Mr. Mason was unrepresented by counsel at the time this confession was executed, there was a massive imbalance of bargaining power and sophistication between her

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

as an individual consumer and a lender with thousands of loans in its portfolio, and the confession and accompanying settlement agreement were contracts of adhesion.

    c.  Mr. Mason received no actual consideration for her complete waiver of all rights to receive notice of and contest the judgment.

61. Mr. Mason is entitled to declaratory relief under Iowa R. Civ. P. 1.1101 *et seq.*, in addition to statutory provisions noted in Counts II & III below, on both the validity of the judgment in Polk County Case No. LACL135604 and the constitutionality of Iowa Code Chapter 676.

62. Without injunctive relief, Mr. Mason is at risk of substantial injury in that she could be subject to garnishment, subject to a debtor's exam, subject to a judgment lien, subject to limitations on credit, and other consequences through the myriad active and passive ways that the judgment in Polk County Case No. LACL135604 may be enforced.

63. Mr. Mason is also entitled to injunctive relief under Iowa R. Civ. P. 1.1501 *et seq.*, enjoining the direct or indirect enforcement of the judgment entered in Polk County Case No. LACL135604.

## COUNT II – IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUD ACT

64. Iowa Code § 714H.3(1) provides that

    A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes.

65. The prohibited practice must be related to a material fact. Iowa Code § 714H.3(1).

66. "Deception" means an act or practice that is likely to mislead a substantial number of consumers as to a material fact or facts. Iowa Code § 714H.2(5)

67. A misrepresentation is material if it is "likely to affect a consumer's conduct or decision with regard to a product or service." *State ex rel. Miller v. Rahmani*, 472 N.W.2d 254, 258 (Iowa 1991). A statement which is literally true may nonetheless be deceptive. *Id.*

68. ISLLC's actions were "deceptive" under IPRACFA for reasons not limited to:

15

    a. Representing the debt as valid even though it was subject to challenge under statute of frauds, statute of limitations, and other grounds.

    b. Threatening garnishment on a time-barred debt, a remedy not allowed by law, in order to induce the signing of the confession.

69. An "unfair practice" means the same as defined in section 714.16. Iowa Code § 714H.2(9). An unfair practice is an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces. Iowa Code § 714.16(1)(n).

70. State and federal courts alike consider an unfair practice to be "nothing more than conduct a court of equity would consider unfair." *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W. 2d 518, 525 (Iowa 2005) (collecting cases). The same courts have found that "statutes that prohibit "unfair practices" are designed to infuse flexible equitable principles into consumer protection law so that it may respond to the myriad of unscrupulous business practices modern consumers face." *Id.*

71. Iowa's definitions of unfair practices themselves are rooted in and strongly influenced by the regulations and policy interpretations of the FTC, and the caselaw those materials have generated. As noted, the FTC's Credit Practices Rule has prohibited the use of confession clauses in consumer transactions since 1984:

> In connection with the extension of credit to consumers in or affecting commerce, as commerce is defined in the Federal Trade Commission Act, it is an unfair act or practice within the meaning of Section 5 of that Act for a lender or retail installment seller directly or indirectly to take or receive from a consumer an obligation that... [c]onstitutes or contains a cognovit or confession of judgment ... warrant of attorney, or other waiver of the right to notice and the opportunity to be heard in the event of suit or process thereon.

16 C.F.R. § 444.2(a)(1).

72. The rulemaking materials the FTC employed in promulgating this rule analyze confessions of judgment under the same factors the Iowa Legislature has provided in unfairness analysis – an injury to consumers that is (1) substantial, (2) unavoidable, and (3) is not outweighed by the countervailing consumer or competitive benefits the practice provides. *Trade Regulation Rule: Credit Practices*, 49 FR 7740 (March 1, 1984). *accord* Iowa Code § 714.16(1)(n).

16

E-FILED  2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

a.  The FTC found that "confessions of judgment cause injury by depriving consumers of notice of a suit or hearing and the opportunity to appear and present any meritorious claims or defenses,[ ]. [o]nce obtained, the confessed judgment can be turned into a lien on the consumer's real and personal property." *Trade Regulation Rule: Credit Practices*, 49 FR at 7748.

b.  The rulemaking involved empirical data gathered from surveys of low-income consumers. From this data, the FTC found that, "[o]f the creditor remedies addressed by the [Credit Practices] rule, confessions of judgment are least likely to be understood by consumers." *Id.* at 7749. Further, per the FTC, "consumers rarely understand the significance of these clauses because they are worded in obscure technical language and because the concept of judgment by confession conflicts with the common understanding of basic due process rights." Thus, "consumers cannot reasonably avoid the injury caused by cognovits." *Id.*

c.  The FTC found that prohibiting confessions of judgment would lead to increased collection and legal costs, and potentially higher interest rates and reduced credit availability for borrowers. However, reasoning that creditors were still left with more than ample remedies, the FTC found that these factors did not outweigh the negative aspects of the practice.

73. In addition to the reasons articulated by the FTC, ISLLC's actions were "unfair" under IPRACPA for reasons not limited to:

a.  They shift the burden of proof that would otherwise be on the creditor to the debtor.

b.  ISLLC secured the confession in the absence of consideration or any benefit to Mr. Mason.

74. Iowa Code § 714H.5 authorizes a consumer who suffers an ascertainable loss of money or property to recover actual damages, temporary and permanent injunctive relief, attorney fees, and costs.

75. ISLLC acted with willful or wanton disregard for the rights or safety of Mr. Mason, justifying an additional statutory damages award of up to three times the amount of actual damages.

## COUNT III – DEPRIVATION OF DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION – 42 U.S.C. § 1983

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

76. As outlined in detail above, ISLLC, acting under color of law for purposes of 42 U.S.C.
1983, deprived Mr. Mason of due process of law by utilizing a statutory process that is
facially unconstitutional in that it does not provide adequate safeguards for a court to gauge
whether this waiver of rights was voluntarily, knowingly, and intelligently given.

77. In addition, as outlined in detail above, ISLLC, acting under color of law, deprived Mr.
Mason of due process of law by obtaining a confession of judgment that was, under the
circumstances of her case, not voluntarily, intelligently, or knowingly given.

78. Although a private actor, ISLLC is nevertheless liable under 42 U.S.C. 1983 because it
"has acted together with or has obtained significant aid from state officials" in obtaining a
judgment by confession which violates Mr. Mason's constitutional rights. *See Lugar v.*
*Edmonson Oil Co.*, 457 U.S. 922, 935 (1982) (creditor using unconstitutional pre-judgment
attachment procedures acting in concert with state officials sufficient to invoke color of
law and thus 1983 liability).

79. As the United States Supreme Court stated in *Fuentes*:

> The requirement of notice and an opportunity to be heard raises no impenetrable
> barrier to the taking of a person's possessions. But the fair process of decision
> making that it guarantees works, by itself, to protect against arbitrary deprivation
> of property. For when a person has an opportunity to speak up in his own defense,
> and when the State must listen to what he has to say, substantively unfair and
> simply mistaken deprivations of property interests can be prevented. It has long
> been recognized that 'fairness can rarely be obtained by secret, one-sided
> determination of facts decisive of rights... And no better instrument has been
> devised for arriving at truth than to give a person in jeopardy of serious loss notice
> of the case against him and opportunity to meet it.

*Fuentes*, 407 U.S. at 81. Mr. Mason was denied these most basic constitutional
protections enjoyed by civil litigants by ISLLC.

80. In addition, as explained by the FTC in promulgating the Credit Practices Rule:

> Judgment debtors whose property is encumbered through the existence of a
> creditor's lien lose the full use and enjoyment of their property. Debtors are
> unlikely to be able to sell it, for example, or to use it as collateral while it is subject
> to a lien. Although the debtor may eventually prevail on the merits and dissolve
> the lien, the post-judgment rights provided by statute cannot cure the deprivation
> experienced while the action is pending. Even a temporary and non-final
> deprivation of the use of one's property is a matter of constitutional significance
> and invokes the protection of the due process clause.

Trade Regulation Rule: Credit Practices, 49 FR 7740-01, 7749 (March 1, 1984).
*See also* Iowa Code § 624.23.

18

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

81. A person injured on a claim actionable under 42 U.S.C. 1983 is entitled to compensatory damages, punitive damages, equitable relief, attorney fees, and costs. 42 U.S.C. §§ 1983, 1988.

## COUNT IV – UNJUST ENRICHMENT / RESTITUTION

82. "Where property has been received as a result of a judgment improperly obtained equity may order the respondent to reconvey it." *City of Chariton v. J.C. Blunk Construction Co.*, 112 N.W.2d 829, 834 (Iowa 1962).

83. The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation.

84. There are three elements to unjust enrichment: (1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances. *Pro Com., LLC v. K & L Custom Farms, Inc.*, 870 N.W.2d 273 (Iowa Ct. App. 2015) (internal quotations and citation omitted).

85. Mr. Mason is entitled to full restitution of any amounts garnished, levied, assigned, attached, or otherwise taken to apply towards the debt in question, regardless of whether those amounts were taken voluntarily or involuntarily from the Petitioner.

## RELIEF REQUESTED

WHEREFORE, the Petitioner asks that this Court grant the following relief:

A. Declaratory relief holding the judgment entered in Polk County Case No. LACL135604 on July 19, 2016 to be void and unenforceable;

B. Declaratory relief holding Iowa Code Chapter 676 to be an unconstitutional deprivation of due process of law under both Fourteenth Amendment of the U.S. Constitution and Article 1, Section 9 of the Iowa Constitution, both facially and as applied to the circumstances of the Petitioner's case;

C. Injunctive relief under Iowa Rule of Civil Procedure 1.1501 *et seq.*, Iowa Code § 714H.5, and 42 U.S.C. 1983, enjoining the direct or indirect enforcement of the judgment entered in Polk County Case No. LACL135604;

D. Compensatory damages under 42 U.S.C. 1983 in an amount to be determined at trial;

19

E-FILED 2023 NOV 21 4:24 PM POLK - CLERK OF DISTRICT COURT

E. Actual damages under IPRACFA, Iowa Code Chapter 714H, plus punitive damages of up to three times actual damages;

F. Reasonable attorney fees and costs pursuant to 28 U.S.C. § 1920, 42 U.S.C. § 1988, and Iowa Code 714H.5;

G. Restitution for any amounts by which ISLLC was unjustly enriched; and

H. Any other relief the Court deems just and equitable under the circumstances.

Respectfully submitted,
JANTZEN MASON, Petitioner

/s/Jayme Wiebold
Jayme Wiebold, AT0013859
Iowa Legal Aid
666 Walnut St., 25th Floor
Des Moines, Iowa 50309
(515) 243-1193
jwiebold@iowalaw.org
ATTORNEY FOR PETITIONER

/s/ Alex Kornya
Alexander Vincent Kornya, AT0009810
Iowa Legal Aid
666 Walnut St., 25th Floor
Des Moines, Iowa 50309
(515) 243-1193
akornya@iowalaw.org
ATTORNEY FOR PETITIONER

20

Query    Reports    Utilities    Help    Log Out

REMOVAL

# U.S. District Court
## Southern District of Iowa (Central)
## CIVIL DOCKET FOR CASE #: 4:23-cv-00515-RGE-WPK

Mason v. Iowa Student Loan Liquidity Corporation
Assigned to: Judge Rebecca Goodgame Ebinger
Referred to: Magistrate Judge William P. Kelly
Case in other court: IASD, 3-23-cv-86
               Polk County, Iowa, LACL157263
Cause: 42:1983dp Civil Right Denial of Due Process

Date Filed: 12/20/2023
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

### Plaintiff

**Jantzen Mason**

represented by **Alexander Vincent Kornya**
IOWA LEGAL AID - DES MOINES
666 WALNUT STREET
SUITE 25TH FLOOR
DES MOINES, IA 50309
515-243-1193
Email: akornya@iowalaw.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Jayme Wiebold**
IOWA LEGAL AID - DES MOINES
666 WALNUT STREET
SUITE 25TH FLOOR
DES MOINES, IA 50309
515-400-1670
Email: jwiebold@iowalaw.org
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

V.

### Defendant

**Iowa Student Loan Liquidity
Corporation**

represented by **Jason Michael Craig**
AHLERS & COONEY PC
100 COURT AVE
STE 600
DES MOINES, IA 50309
515-246-0372
Fax: 515-243-2149
Email: jcraig@ahlerslaw.com


EXHIBIT
4B

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/07/2024 | 11 | ORDER SETTING STATUS CONFERENCE. Telephonic Status Conference set for 1/15/2025 at 10:00 AM before Magistrate Judge William P. Kelly. Counsel shall call 1-877-411-9748 and enter code 1376500 at the prompt to join the call. Status Report due by 1/13/2025. See Order for particulars. Signed by Magistrate Judge William P. Kelly on 3/7/2024. (rls) (Entered: 03/07/2024) |
| 03/07/2024 | 10 | ORDER REGARDING FINAL PRETRIAL CONFERENCE REQUIREMENTS. See Order for particulars. Signed by Magistrate Judge William P. Kelly on 3/7/2024. (rls) (Entered: 03/07/2024) |
| 03/07/2024 | 9 | ORDER adopting 7 REGARDING PROPOSED SCHEDULING ORDER AND DISCOVERY PLAN: Initial Disclosures Deadline 4/18/2024. Motions to Add Parties due by 7/17/2024. Motions to Amend Pleadings due by 7/17/2024. Plaintiffs Expert Witness Disclosures due by 9/19/2024. Defendants Expert Witness Disclosures due by 11/18/2024. Plaintiffs Rebuttal Witness Disclosures due by 12/18/2024. Discovery Deadline 2/18/2025. Dispositive Motion Deadline 3/17/2025. Final Pretrial Conference set for 7/9/2025 at 9:00 AM in Des Moines - Room 410 - 4th Floor Southeast before Judge Rebecca Goodgame Ebinger. Bench Trial set for 8/18/2025 at 9:00 AM in Des Moines - Room 410 - 4th Floor Southeast before Judge Rebecca Goodgame Ebinger. Estimated length of trial is 6 days. Signed by Magistrate Judge William P. Kelly on 3/7/2024.(rls) (Entered: 03/07/2024) |
| 03/07/2024 | 8 | TEXT MINUTE ENTRY for proceedings held before Magistrate Judge William P. Kelly: Telephonic Scheduling Conference held on 2/21/2024. Attorneys Alexander Vincent Kornya, Jayme Wiebold, and James Kringlen appeared on behalf of Plaintiff. Attorney Jason Michael Craig appeared on behalf of Defendant. Status of case discussed. The parties reported they anticipate potential jurisdictional issues, as well as constitutional issues. The parties discussed 28 U.S.C. § 2403(b) and the timing of the Court certifying an issue concerning the constitutionality of an Iowa statute in this litigation to the Iowa Attorney General. The parties agreed that consolidation of the two cases, 4:23-cv-515 and 3:23-cv-86, might be appropriate and the Court will set trial for the two cases accordingly. A formal Motion for Consolidation will be needed. Separate Orders to follow. Total Court Time: 23 minutes. (rls) (Entered: 03/07/2024) |
| 02/14/2024 | 7 | PROPOSED SCHEDULING ORDER AND DISCOVERY PLAN . (Wiebold, Jayme) (Entered: 02/14/2024) |
| 01/24/2024 | 6 | TEXT ORDER SETTING SCHEDULING CONFERENCE. A Telephonic Scheduling Conference is set for 2/21/2024 at 10:00 AM before Magistrate Judge William P. Kelly. Counsel shall call 1-877-411-9748 and enter code 1376500 at the prompt to join the call.The parties shall file a Proposed Scheduling Order and Discovery Plan as provided under Local Rule 16 by 2/14/2024. Signed by Magistrate Judge William P. Kelly on 1/24/2024. (rls) Modified on 1/24/2024 to update date (rls). (Entered: 01/24/2024) |
| 12/22/2023 | 5 | Corporate Disclosure/Statement of Interest by Iowa Student Loan Liquidity Corporation. (Craig, Jason) (Entered: 12/22/2023) |

| 12/21/2023 | 4 | NOTICE by Iowa Student Loan Liquidity Corporation *CIVIL COVER SHEET*. (Craig, Jason) (Entered: 12/21/2023) |
|---|---|---|
| 12/20/2023 | 3 | Corporate Disclosure Packet Note: Counsel should download the attached corporate disclosure packet, if applicable. In compliance with Local Rule 7.1 for the disclosure statements. Corporate Disclosure Statement deadline set for defendant 1/19/2024. (bp) (Entered: 12/20/2023) |
| 12/20/2023 | 2 | ANSWER to Complaint by Iowa Student Loan Liquidity Corporation.(Craig, Jason) (Entered: 12/20/2023) |
| 12/20/2023 | 1 | NOTICE OF REMOVAL by Iowa Student Loan Liquidity Corporation from Iowa District Court for Polk County, case number LACL157263. Filing fee paid in the amount of $ 405, receipt number AIASDC-5327729., filed by Iowa Student Loan Liquidity Corporation. Rule 16 Notice of Dismissal set for 3/19/2024. (Attachments: # 1 Local Rule 81(a) Removal Information Form, # 2 Original Notice and Petition, # 3 Return of Service)(Craig, Jason) (Entered: 12/20/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/28/2024 16:03:12 | | |
| PACER Login: | patrickbigsby | Client Code: | |
| Description: | Docket Report | Search Criteria: | 4:23-cv-00515-RGE-WPK Start date: 1/1/1980 End date: 3/28/2024 |
| Billable Pages: | 2 | Cost: | 0.20 |