IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| Jantzen Mason et al., Plaintiff, v. Iowa Student Loan Liquidity Corporation, Defendant. | CASE NO. 4:23-cv-00515 Plaintiffs' Brief in Support of Motion to Remand |
|---|---|

## Contents

INTRODUCTION ................................................................................................................... 1
FACTUAL AND PROCEDURAL BACKGROUND ............................................................. 2
ARGUMENT ........................................................................................................................... 4
   I.   *ROOKER-FELDMAN* DEPRIVES THIS COURT OF JURISDICTION .......................... 5
     A.   The Plaintiffs' Petitions Invite District Court Review and Rejection of the State-Court Judgment at Issue. 6
     B.   The Plaintiffs' Petitions Assert Injuries Caused by a State-Court Judgment Entered Prior to the Instant Proceedings. 10
     C.   Plaintiffs are "state-court losers" for Rooker-Feldman purposes. 14
   II.   IN LIEU OF BIFURCATING CLAIMS, THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER THE DAMAGES CLAIMS, OR IN THE ALTERNATIVE ISSUE A STAY IF IT CHOOSES TO BIFURCATE ................................... 15
   III.   FEDERAL SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS IS DISCRETIONARY, AND THE FACTORS WEIGH IN FAVOR OF DENYING FEDERAL SUPPLEMENTAL JURISDICTION ............................................................................... 18
CONCLUSION ...................................................................................................................... 19

## INTRODUCTION

Iowa's confession of judgment statute was enacted in effectively its present form in 1851, sixteen years prior to the ratification of the Fourteenth Amendment's extension of the guarantee of due process of law to the states. Like the California statute struck down in *Isbell v. County of Sonoma*, and unlike most if not all other laws governing confessions of judgment in other states, the sparse language of Iowa Code Chapter 676 is utterly devoid of a single procedural protection for a judgment debtor. The law as written is a product of another era, especially as applied to

1

unrepresented consumers in positions of unequal bargaining power, as was recognized by the Federal Trade Commission several decades ago. Petition Pg. 9 ¶¶ 33.

Here, the Plaintiffs seek a ruling holding confessed judgments entered under Chapter 676 to be void and unenforceable. In that way, the Plaintiffs seek to finally subject Chapter 676 to the same constitutional and consumer protection scrutiny that has led to such laws being amended or repealed across most of the rest of this nation. Granting the relief the Plaintiffs request would require this Court to overturn what Iowa law treats as "the judgment of the court in the same sense as any other final adjudication, in any other cause." *Edgar v. Greer*, 7 Clarke 136 (Iowa 1858). That is why each Plaintiff filed suit in state court to collaterally attack and void each confession on jurisdictional grounds, rooted in principles of due process, as well as seeking supplemental damages. However constitutionally flawed Iowa's confession of judgment statute is, the circumstances of this case nevertheless deprive this Court of jurisdiction pursuant to the *Rooker-Feldman* doctrine, primarily because the central relief sought in these combined cases involves setting aside "a state-court judgment rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

No matter the precise contours of *Rooker-Feldman*, there is no doubt that the doctrine applies when a federal court is asked to sit in judgment of state court proceedings. As that is the core of the remedy the Plaintiffs request, this Court should grant the motion and remand this case to the state court.

## FACTUAL AND PROCEDURAL BACKGROUND

The four lawsuits now consolidated and before the Court on this motion differ in some minor respects, but for the purposes of this motion present the same basic pattern. Defendant Iowa Student Loan Liquidity Corporation (ISLLC) is a private nonprofit organization that engages in

the promotion, origination, acquisition, servicing, and collection of student loans. Petitions at 11 ¶ 36. Initially conceived as a guarantor for federally backed Federal Family Education Loans (FFEL), over time ISLLC came to primarily engage in activities related to private lending, especially after the discontinuation of FFEL in 2010. Iowa Legislative Services Agency, *Issue Review: Iowa Student Loan Liquidity Corporation* (2019). The Partnership Loan Program (PLP) at issue in this case is one of ISLLC's private loan program, and does not directly involve governmental funds or sureties. *Id*. ISLLC also is the sole owner of a for-profit subsidiary, Aspire Resources Inc., which services student loans in Iowa but also throughout the country. Petitions at 11 ¶ 37; ISLLC corporate disclosure statement.

Even though ISLLC has primarily engaged in wholly private lending activities for many years, and operates a for-profit loan servicing company, it nevertheless has many ties to the State of Iowa. For example, ISLLC's bylaws provide that its board of directors is selected by the Governor of Iowa, and it has some delegated authority to issue tax-exempt public bonds. Petitions ¶¶ 35, 37.

Each of the four Plaintiffs allegedly became indebted to ISLLC through PLP loans. Petitions ¶¶ 38-39. The loans were disbursed between 2003 and 2012. Petitions ¶ 44. After allegedly becoming delinquent on these loans, ISLLC or its agents threatened to garnish the Plaintiffs, and negatively impact their credit. Gibson Petition at ¶¶ 45-55; Mason petition at ¶¶ 45-55; McDonald Petition at ¶¶ 45-56; Zambrano Petition at ¶¶ 45-53. Each Plaintiff was induced into signing "settlement agreements," which contained confession of judgment clauses. *Id*. ISLLC provided no consideration in return for these confessions, and the Plaintiffs had neither counsel nor any legal training of their own. *Id*. These confessions were filed in state court between 2016 and 2022. *Id*. All of the Plaintiffs except Zambrano were later subject to garnishment. *Id*.

Between November 7 and November 21, 2023, each of the four Plaintiffs filed separate Iowa state court lawsuits in Linn, Johnson, Dubuque, and Polk Counties. *See generally* Petitions. The core claims of these lawsuits were premised as original actions in equity, recognized under Iowa law, collaterally attacking the confessions of judgments on jurisdictional grounds. Petitions at 17-19. The core declaratory and injunctive relief sought by Plaintiffs includes rendering the confession of judgment void and unenforceable. *Id*. at 23-24 ¶¶ A & C. Plaintiffs also seek actual, compensatory, and punitive damages arising from ISLLC's use of unlawful and unconstitutional consumer practices, under both 42 U.S.C. § 1983 and Iowa's Private Right of Action for Consumer Fraud Act at Iowa Code Chapter 714H. *Id*. at ¶¶ D & E. They also seek declaratory relief holding Iowa Code Chapter 676 unconstitutional under the U.S. and Iowa Constitutions, both facially and as applied to the facts of each of their cases. *Id*. at ¶ B.

ISLLC's notices of removal asserted this Court had jurisdiction pursuant to each Plaintiff's claims arising under the Fourteenth Amendment to the U.S Constitution and 42 U.S.C. § 1983. Not. of Removal, ¶3. ISLLC did not address the apparent jurisdictional problem inherent in this lawsuit's primary focus: that it directly attacks a state court proceeding that is treated by Iowa law as identical to any other state court judgment, rendered before these proceedings commenced.

**ARGUMENT**

Although the nature of confessions of judgment issued pursuant to Iowa Code Chapter 676 presents some ambiguity as to whether these confessions should be considered "judgments," on balance those ambiguities should be resolved in favor of remand to state court. First, the *Rooker-Feldman* doctrine bars this court from exercising jurisdiction over the Plaintiffs' core relief because it involves voiding and enjoining the enforcement of confessions of judgment, which Iowa law

treats as functionally equivalent to any other state court judgment. Second, this Court should decline to exercise jurisdiction over the remaining federal claims because they would constitute parallel proceedings subject to the exceptional circumstances of the *Colorado River* abstention doctrine, most notably because bifurcating these cases based on the relief sought will lead to piecemeal litigation of the underlying constitutional issues. Finally, the remaining supplemental state law claims should be remanded with the federal claims.

I.     *ROOKER-FELDMAN* DEPRIVES THIS COURT OF JURISDICTION.

Under what has come to be known as the "*Rooker-Feldman* doctrine," lower federal courts "do not have jurisdiction... over challenges to state court decisions in particular cases arising out of judicial proceedings..." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Exxon Mobil Corp.*, 544 U.S. at 283. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

A motion to remand based on a defect in subject matter jurisdiction may be made any time following the filing of the notice of removal under section 1446(a). *Id*. Federal district courts must resolve all doubts regarding jurisdiction in favor of retaining the case in state court. *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). The party opposing remand has the burden to prove federal subject matter jurisdiction exists beyond a preponderance of the evidence. *Id.*

Navigating the interplay between state and federal courts is a complex but necessary element of a federalist legal system. Federal jurisprudence has developed several doctrines to determine whether a federal district court has jurisdiction in the first place, and if it does, whether it should nevertheless abstain from exercising jurisdiction. The *Rooker-Feldman* doctrine is an example of the former – *i.e.*, a hard jurisdictional limit. *Rooker-Feldman* provides that lower federal courts only have jurisdiction over general challenges to state-promulgated statues and rules "that *do not* require review of a final state court judgment in a particular case." *Feldman*, 460 U.S.

at 486 (emphasis added). However, the lower federal courts do not have jurisdiction to adjudicate cases in federal court that are "[1] brought by state-court losers [2] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and [3] inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284. The Plaintiffs will address these factors in reverse order.

    A. <u>The Plaintiffs' Petitions Invite District Court Review and Rejection of the State-Court Judgment at Issue.</u>

*Rooker-Feldman* bars federal court jurisdiction over actions "inviting district court review and rejection of [state-court] judgments." *Exxon*, 544 U.S. at 284; *see also Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.,* 487 F.3d 1154, 1156 (8th Cir. 2007). Review and rejection of the state court confessions of judgment at issue is precisely the relief the Plaintiffs sought in their state court actions removed to this Court. While *Rooker-Feldman* will not apply when a plaintiff "alleges unconstitutional actions in seeking and executing" a state court judgment, it does apply when a plaintiff challenges the "issuance of the . . . order." *See Riehm v. Engelking*, 538 F.3d 952, 966 (8th Cir. 2008). Among other relief sought, their petitions request declaratory and injunctive relief specifically to declare void and unenforceable the state court confessions of judgment and enjoin their enforcement.

Despite being entered in a manner utterly devoid of both due process and without meaningful judicial supervision, confessions of judgment are nevertheless functionally equivalent to any other civil judgment in Iowa. *Greer*, 7 Clarke at 136. Declaring a state court judgment void and enjoining its enforcement practically equates to appellate review, i.e. the core of what *Rooker-Feldman* is supposed to prevent federal courts from doing. *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1992) (The doctrine bars a state-court loser "from seeking what in substance would

6

be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.")

Admittedly, because Iowa's confession of judgment statute does not even require notice to the debtor, there is no meaningful opportunity to appeal in state court either. However, "[t]he 'basic theory' of the *Rooker–Feldman* doctrine is that only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack subject-matter jurisdiction over attempted appeals from a state-court judgment." *Friends of Lake View School District Incorporation No. 25 of Phillips County v. Beebe*, 578 F.3d 753, 758 (8th Cir. 2009) (internal quotations omitted). Rather, the U.S. Supreme Court alone has federal appellate jurisdiction over state court judgments. 28 U.S.C. § 1257(a); *accord Birchansky v. Clabaugh*, 421 F.Supp.3d 658, 665 (S.D. Iowa 2018).

While the Supreme Court narrowed *Rooker-Feldman* significantly in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), post-*Exxon* cases have clarified this core jurisdictional doctrine only by finding that federal jurisdiction is appropriate where the claims and relief sought are independent of underlying state court judgment. For example, in *Hageman v. Barton*, the Eighth Circuit rejected application of *Rooker-Feldman* to violations of the Fair Debt Collection Practices Act arising from injuries caused by the state court judgment. 817 F.3d 611 (8th Cir. 2016). In *Hageman*, the plaintiff did not seek to overturn the state court default judgment, but rather alleged "independent claims arising from conduct in the underlying state proceedings." *Id.* at 614. Specifically, the plaintiff "alleges statutory penalties based on [the defendant's] actions in the process of obtaining the judgment and order." *Id.* at 616. Because of this distinction between the two categories of claims, the *Hageman* court held that federal jurisdiction was appropriate. *Id.*; *see also, e.g., MSK EyEs Ltd.* v. *Wells Fargo Bank, Nat. Ass'n,* 546 F.3d 533 (8th Cir. 2008)

7

(holding appellant's claims allege unlawful conduct by appellee that do not require review and rejection of the underlying state-court judgment); *Janson v. Katharyn* v. *Davis, LLC*, 806 F.3d 435 (8th Cir. 2015) (holding *Rooker-Feldman* is narrowly construed to bar state-court losers from federal review of state-court judgments, and it does not include independent claims "not attacking or directed at the state court judgment").

In *Riehm*, the Eighth Circuit rejected a *Rooker-Feldman* jurisdictional challenge because the federal plaintiff did not seek to overturn certain *ex parte* protective orders, but instead brought claims in federal court seeking damages for injuries arising out of those orders. 538 F.3d at 965. In *Riehm*, the orders themselves only lasted a matter of days and had expired long before the federal action was filed. *Id*.

This case differs from *Hageman*, *Riehm*, and other similar holdings because the core relief sought by the Plaintiffs is <u>not</u> independent of the underlying state judgment, although admittedly made in tandem with supplemental damages and injunctive relief sought based on the effects of that judgment.[1] The Plaintiffs filed an original state court action in equity to attack, enjoin enforcement of, and overturn the confessions of judgment in question. Proceeding in federal court would impermissibly allow the federal court to void and prevent enforcement of an action that, for all of its procedural defects, is nevertheless treated under current law as identical to a state-court judgment. *See Watson v. Nebraska*, 749 Fed. Appx. 485 (8th Cir. 2019) ("Federal courts have no authority to 'quash' state-court judgments"). If the Plaintiffs are ultimately successful with their claims in federal court, it would also undermine the creditor's ability to execute on the state court

---

[1] As explained in Sections II and III of this brief, this Court should abstain from exercising jurisdiction over those claims as well.

judgments, to conduct post-judgment discovery, to enforce judgment liens, and other post-judgment remedies.

The Plaintiffs recognize that the posture of this case is atypical in that the *Rooker-Feldman* doctrine is far more frequently raised by a defendant to an action originally filed in federal court, and less frequently invoked by state court filers themselves. The Eighth Circuit has even written that "the *Rooker-Feldman* doctrine does not apply to cases removed to federal court." *Wills v. Encompass Insurance Company*, 47 F.4th 900, 903-04 (8th Cir. 2022). Despite the seeming severity of that proclamation, the *Wills* court made clear that its statement refers to removal before the final original state court judgment was rendered, not removal of a later-filed action collaterally attacking that judgment. *Id.* at 904; *see also* Section I-B of this brief.

In any event, courts routinely apply *Rooker-Feldman* to cases that, like this one, were originally filed in state court and then removed. *See, e.g., Neal v. Wilson*, 112 F.3d 351, 356 (8th Cir. 1997) (affirming district court's application of *Rooker-Feldman* and remand to state court where respondent sought removal of Arkansas Supreme Court disbarment proceeding); *Taylor v. Federal Nat. Mortg. Ass'n*, F.3d 529, 535, n.4 (7th Cir. 2004) (holding that *Rooker-Feldman* applied in civil action where "the Defendants erroneously attempted to remove Taylor's suit to federal court"); *Preston v. CitiMortgage, Inc.*, 636 Fed.Appx. 968, 969 (10th Cir. 2016) (discussing district court's dismissal under *Rooker-Feldman* of related foreclosure actions that had been improperly removed); *State v. Tennant*, 262 F.Supp.3d 831, 834 (S.D. Iowa 2017) (finding *Rooker-Feldman* barred jurisdiction where criminal defendant sought removal and interlocutory federal review of state court proceeding).

While Iowa's confession statute does not provide any procedural safeguards allowing such judgments to be reopened or appealed, Iowa state courts recognize an inherent right to collaterally

attack jurisdictionally void judgments generally through an original equitable action. *See, e.g., Rosenberg v. Jackson*, 247 N.W.2d 216 (Iowa 1976). If not subject to *Rooker-Feldman*, every such state court action challenging a confession of judgment on as-applied federal constitutional grounds would be subject to removal. Although ISLLC at this time has not attempted to garnish or otherwise enforce the judgments against these four Plaintiffs since these affirmative lawsuits were filed against ISLLC, it is inevitable that temporary injunctive relief may be necessary in such future cases to prevent that immediate, ongoing harm. This court could not grant such an injunction without at least severely limiting the effectiveness of the confession of judgment, however temporarily. It is hard to see how such relief would not run afoul of *Rooker-Feldman*, and possibly the Anti-Injunction Act. *See* 28 U.S.C. 2283 ("a court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.")

B. The Plaintiffs' Petitions Assert Injuries Caused by a State-Court Judgment Entered Prior to the Instant Proceedings.

Another post-*Exxon* element of the *Rooker-Feldman* doctrine is that the claim must attack an action that constitutes a "state court judgment" that has furthermore been fully adjudicated prior to the filing of the federal claim. *Exxon* at 816. Many of the cases addressing this facet of the doctrine focus on both the nature and timing of the state-court action being challenged.

For example, in *Parker Law Firm v. Travelers Indemnity Company*, 985 F.3d 579 (8th Cir. 2021), the Eighth Circuit found a prior New York state court order to enforce an arbitration clause was a "judgment" for *Rooker-Feldman* purposes. Even though an appeal was pending in New York state court when the federal action was filed, the Eighth Circuit held that the jurisdiction to appeal lay with New York state courts and not a lower federal court. *Id.*, 985 F.3d at 584. In *Scheffler v.*

*City of Blaine*, 821 Fed. Appx. 653 (8th Cir. 2020), a decision rendered by the Minnesota Supreme Court was considered final at the time the opinion was issued, rather than when the Clerk of the Supreme Court issued a final administrative order in the case.

In contrast, the Eighth Circuit has rejected application of *Rooker-Feldman* to state court orders lacking an element of finality. For example, in *Wills v. Encompass Insurance Company*, the Eighth Circuit retained jurisdiction of a case that was removed to federal district court after a non-dispositive summary judgment decision in state court. 47 F.4th at 903-904. The court found that "the *Rooker-Feldman* doctrine has no application to a properly removed case where, as here, there is no attack on a separate and final state-court judgment." *Wills*, of course, is inapplicable to the present situation, because it was not the original confessions that weres removed to this Court on a quasi-interlocutory basis, but rather the subsequent actions collaterally attacking them. In addition, the lack of any direct mechanism to appeal, set aside, or reopen a confession entered under Iowa law renders them "final."

While the Eighth Circuit has not yet weighed in on whether a confession of judgment is a state-court judgment for the purposes of the *Rooker-Feldman* doctrine, other post-*Exxon* courts have considered the issue. For example, in *Main Street Bank & Trust v. Saltonstall*, a federal district court concluded that a confession of judgment is a final court order for the purpose of the *Rooker-Feldman* doctrine. 2006 WL 2385274 at *5 (C.D. Ill. Aug. 17, 2006). Admittedly, the Illinois confession of judgment statute differs from Iowa's in that it has more due process protections, and therefore more opportunity for "judicial inquiry." For example, the Illinois statute provides that a motion to open the confession can be filed at any time if the motion is filed with "due diligence." *Id.* at *4; IL R. S.Ct. Rule 276; 735 ILCS 5/12-813; *Harris Bank Argo v. Midpack Corp.*, 151 Ill.App.3d 293 (Ill. App. Ct. 1986). Before a creditor can garnish a debtor pursuant to a confessed

judgment, the confessed judgment must be confirmed. 735 ILCS 5/12-813. Confirming the confessed judgment requires personal service of the debtor and a trial on the merits. *Id*. Iowa's statute has none of these features.

No state has seen more rulings on the interplay between confessions of judgment and *Rooker-Feldman* than Pennsylvania. For example, in *Complete Business Solutions Group, Inc. v. Sunrooms America, Inc.*, a court treated a confession of judgment as final "unless… stricken or opened in state court." 474 F.Supp.3d 693 (E.D. Penn. 2020). Again, unlike the Iowa statute at issue in the present case, Pennsylvania's confession of judgment statute includes an opportunity to open or strike the confessed judgment by filing a motion. Pa. R. Civ. P. 2959. Despite the existence of this statutory mechanism for challenging finality, the *Sunrooms* court applied a similar analysis to that in *Saltsonstall*, holding that absent being stricken by or subject to pending proceedings in state court, a judgment by confession is "a final judgment for purposes of the *Rooker-Feldman* doctrine." *Sunrooms*, 474 F.Supp.3d at 697. Like Iowa, Pennsylvania expressly treats a judgment by confession as a final judgment. Pa. R. Civ. P. 2959(f). Like Illinois, the Pennsylvania statute provides the opportunity to open or strike a confessed judgment after it has been entered when the debtor files the motion within 30 days after receiving notice of execution on the judgment. However, if filing the motion beyond the 30-day requirement, the court may strike or open a confessed judgment if the debtor shows there were compelling reasons for the delay. Pa. R. Civ. P. 2959(a)(3). The Pennsylvania statute also provides additional due process protections, including requiring notice to the debtor that a confessed judgment has been entered against them served through regular mail and notice at least 30 days before filing for execution, which may be served by personal service or certified mail. Pa. R. Civ. P. 236; Pa. R. Civ. P. 2958.1.

Like *Sunrooms*, most federal courts in Pennsylvania and elsewhere have held that *Rooker-Feldman* deprives them of jurisdiction to hear an action directly challenging a state court judgment by confession. *See, e.g., Harley v. AMC Patriot LN IV LLC*, 2018 WL 558462 (E.D. Penn. 2018) (Complaint seeking relief of voiding foreclosure and sheriff sale barred under *Rooker-Feldman* because it "directly seeks to have the state court judgment set aside."); *Stoss v. Singer Financial Corp.*, 2010 WL 679115 at *4 (E.D. Penn. 2010); *In re Stivala Investments, Inc.*, 391 B.R. 276, 280 (M.D. Penn. 2008); *OriginClear Inc. vs. GTR Source*, 2021 WL 5907878 (W.D.N.Y. 2021).

There are also admittedly some cases, also from Pennsylvania, that held the other way and found *Rooker-Feldman* inapplicable. *See, e.g. First Commonwealth Bank v. Fresh Harvest River*, 2012 WL 1982537 (W.D. Penn. 2012); *Industrial Real Estate Management, Inc. v. Copylite Products Corporation*, 2019 WL 13207632 (E.D. Penn. 2019). However, those courts relied upon procedural protections or events that had deprived the confession of judgment of finality and thus within the jurisdiction of the court. *Id*. In contrast, due to a total lack of procedural protections before and after it is entered, a confessed judgment in Iowa is even more "final" than a confessed judgment in Pennsylvania or Illinois. Unlike those statutes described above, Iowa Code Chapter 676 lacks any commensurate due process safeguards, much like the statute struck down in *Isbell v. County of Sonoma*, 577 P.2d 188, 189 (Cal. 1978).

Iowa Code § 676.1 provides that a confession of judgment in Iowa is a judgment "without action, [that] may be entered by the clerk of the district court." Although this could be construed to suggest that entry of a confession of judgment is an administrative action or otherwise short of being a final state court judgment, Iowa law has always treated a confession of judgment as "the judgment of the court in the same sense as any other final adjudication, in any other cause." *Edgar v. Greer*, 1858 WL 233 (1858); *see also, e.g., Hughes v. Burlington Northern R. Co.*, 545 N.W.2d

318, 320 (Iowa 1996) (giving entry of judgment by confession pursuant to Iowa Code Chapter 676 as an example of a "final adjudication" under Iowa law). Furthermore, the Iowa Code specifically states that the clerk of the district court "<u>shall</u> issue execution thereon as in other cases..." Iowa Code § 676.4 (emphasis added). Execution of the confessed judgment is available to the creditor immediately upon judgment entry, even pending appeal (assuming the debtor is aware of the entry of the confessed judgment in order to appeal). Iowa R. App. P. 6.601. Because of the way confession of judgments are treated in Iowa – the same as any other final adjudication in Iowa with execution available immediately – a confession of judgment must also be considered a state-court judgment under the *Rooker-Feldman* doctrine.

   C.  <u>Plaintiffs are "state-court losers" for Rooker-Feldman purposes.</u>

For *Rooker-Feldman* to deprive the district court of jurisdiction, the claim before the federal district court must have been brought by a "state-court loser." *Id.* Here, the Plaintiffs are the "losers" of the state court confessions of judgment the same way they would be if subject to a judgment after a lawsuit, because Iowa treats these judgments as functionally identical.

Some cases have declined to apply *Rooker-Feldman* where a claimant was not actually a participating party in the prior state court litigation. In *Riehm v. Engelking*, the Eighth Circuit considered whether a federal plaintiff was barred from adjudicating a constitutional challenge related to a state-court *ex parte* temporary protective order in federal court. 538 F.3d at 964-65. The *Riehm* court compared the identity of the parties to the state court action in question and concluded that the *Rooker-Feldman* doctrine did not apply to the federal plaintiff's 14th Amendment claim because the federal plaintiff was not a party to the *ex parte* petition in state court. *Id.* The federal plaintiff did not participate in the state court proceeding that resulted in the issued *ex parte* order. *Id.* Therefore, the federal plaintiffs were not considered "state-court losers" and the *Rooker-Feldman* doctrine did not bar federal adjudication of the plaintiff's claims. *Id.*

However, unlike in *Riehm*, in this case the Plaintiffs were named parties to the actions. Judgment was entered against each of them, albeit without notice or an opportunity to be heard. The nature of an action that is *ex parte* by design is distinguishable from an action that is *ex parte* by waiver, whether that waiver is constitutionally valid or not. More importantly, the confessions of judgment at the center of this case persist to this day, in contrast to the ephemeral temporary orders in *Riehm* that expired long before the federal action was brought. The *Riehm* court never had to wrestle with the actual practical effect of voiding the *ex parte* orders at issue, but this Court would. Even with Chapter 676's unconstitutional deprivation of due process, the Plaintiffs are "state court losers" for the purposes of *Rooker-Feldman*.

II. IN LIEU OF BIFURCATING CLAIMS, THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER THE DAMAGES CLAIMS, OR IN THE ALTERNATIVE ISSUE A STAY IF IT CHOOSES TO BIFURCATE

While the central claims in this case are jurisdictionally barred by *Rooker-Feldman*, the Plaintiffs have also made supplemental damages claims under 42 U.S.C. 1983, unjust enrichment, and Iowa Code Chapter 714H. To the extent this Court has jurisdiction over those damages claims, this Court should still abstain from bifurcating the case and exercising jurisdiction over those claims. The so-called *Colorado River* abstention doctrine permits a federal court to abstain from hearing a case when parallel litigation is pending in state court, and exceptional circumstances warrant abstention. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 819 (1976). "This rule is based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Spectra Commc'ns Grp., LLC v. City of Cameron, Mo.*, 806 F.3d 1113 (8th Cir. 2015) (quoting *Colorado River*, 424 U.S. at 817).

If the proceedings are parallel, the next step in the analysis is to determine whether there are "exceptional circumstances." The Eighth Circuit uses a six-factor test for determining whether there are exceptional circumstances warranting abstention under *Colorado River*:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009). Courts "do not apply these factors as a 'mechanical checklist,' but instead weigh these factors 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Spectra*, 806 F.3d at 1121 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).

Although the Plaintiffs were unable to locate Eighth Circuit precedent addressing how *Colorado River* abstention would apply to a single case later bifurcated between state and federal court, the unusual nature of this case nevertheless presents exceptional circumstances under *Colorado River*. First, the Eighth Circuit has recognized the risk of piecemeal litigation as the "predominant factor" of the six *Colorado River* exceptional circumstances factors. *Spectra,* 806 F.3d at 1121. This is because "federal and state courts could reach conflicting opinions on the same issues, which could cause unwarranted friction between state and federal courts, a result which is obviously undesirable [when] avoidable[.]" *Id*. (internal quotations omitted). Also, while the § 1983 claims seek relief in addition to voiding and enjoining enforcement of the confession, the underlying issues of constitutionality addressed in either forum will be dispositive and possibly preclusive. This would set this newly minted pair of cases in an inevitable race to preclusion, or alternatively reach inconsistent outcomes that will exhaust more judicial resources to untangle.

The parties deserve a conclusive outcome after an efficient adjudication process, and bifurcation would not serve that end.

Of the remaining five factors, the first two are not relevant to this case. The fourth factor – which case has priority – is likely of limited use in describing a single case that may be bifurcated as opposed to cases filed in separate forums *ab initio*, and here neither forum has progressed to the merits. *See Spectra*, 806 F.3d at 1122. The fifth factor, whether federal or state law controls, admittedly weighs against abstention, but is outweighed by the other factors. As for the sixth factor, whether the state forum can adequately protect the Plaintiffs' interests, in this case it is the Plaintiffs themselves who are seeking to remand their action back to the forum where it was initiated.

As the Eighth Circuit has noted, there must also be "a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court" for *Colorado River* abstention to be applicable. *Window World International, LLC v. O'Toole*, 21 F.4th 1029 (8th Cir. 2022); *see also Moses H. Cone*, 460 U.S. at 28. This concern is often raised with parallel litigation initiated in separate forums that, while similar, may not completely overlap and thus leave some matters unaddressed. *Window World*, 21 F.4th at 1033-1034. Many cases finding proceedings not "parallel" for *Colorado River* abstention purposes focus on situations where more than one action was initially filed, sometimes in different states, with different parties, with different claims or facts. In the present case, at least as to the supplemental federal claims, bifurcating those claims from those jurisdictionally barred by *Rooker-Feldman* would constitute "parallel proceedings" in part because they originated from the same case. There is a substantial likelihood that a remanded, non-bifurcated state proceeding will fully dispose of the claims presented in this case because that was how the case was initially plead.

Should this Court still have doubts about whether the proceedings are sufficiently parallel, it can of course always stay rather than remand the remaining federal claims. *Id.*; *see also Ritchie Capital Management, LLC v. BMO Harris Bank, N.A.*, 868 F.3d 661, 666 (8th Cir. 2017) (The Eighth Circuit has "emphasized a preference for stays over dismissals to preserve any claims that might not be resolved by the parallel proceedings.")

III. **FEDERAL SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS IS DISCRETIONARY, AND THE FACTORS WEIGH IN FAVOR OF DENYING FEDERAL SUPPLEMENTAL JURISDICTION**

In addition to *Colorado River* abstention, the Court should also exercise discretion and decline to retain any state law claims made under IPRACFA or common law unjust enrichment. Unlike claims based in federal law, supplemental federal jurisdiction over state law claims is provided by 28 U.S.C. § 1367(a) when the district court has original jurisdiction over an action and the other claims "are so related... that they form part of the same case or controversy..." Supplemental jurisdiction over related state claims is discretionary:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
> 1) the claim raises a novel or complex issue of State law,
> 2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> 3) the district court has dismissed all claims over which it has original jurisdiction, or
> 4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to these factors, the district court should consider "the values of judicial economy, convenience, fairness, and comity" when deciding whether to exercise supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988).

If the Court finds itself without jurisdiction for the core claims to invalidate and enjoin enforcement of the confessions, and then abstains from bifurcating the case to retain the remaining

federal claims, then the supplemental state law claims should also be remanded. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Dodson v. University of Ark. for Medical Sciences*, 601 F.3d 750, 756 (8th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). Generally speaking, retention of state claims after federal claims have been disposed generally turns on the amount of time already expended by the court in developing them, which here would be essentially none. *Id*.

## CONCLUSION

While the fundamentally flawed process of Iowa's confession of judgment statute does admittedly present unusual circumstances, federal district courts must resolve all doubts regarding jurisdiction in favor of remanding the case to state court. *In re Prempro Prod. Liab. Litig.*, 591 F.3d at 620. *Rooker-Feldman* deprives this Court of jurisdiction to void a confession of judgment, to which Iowa law grants the same full force and effect of a judgment entered without waiver of due process, or to enjoin its enforcement. The remaining federal claims are subject to the exceptional circumstances of the *Colorado River* abstention doctrine, especially the risk of piecemeal litigation, and so the Court should abstain from exercising jurisdiction over those claims. This matter should be remanded in its entirety to the state courts where the individual claims were initially and correctly filed, for further proceedings.

Respectfully submitted,

JANTZEN MASON *et al.*,

_____/S/    Alex Kornya_____
Alexander Vincent Kornya,
AT#0009810
IOWA LEGAL AID
666 Walnut St. 25th Floor
Des Moines, IA 50309
[T] 515-243-1193
[F] 515-244-4618
akornya@iowalaw.org
ATTORNEY FOR PLAINTIFFS

CERTIFICATE OF SERVICE

I, Alex Kornya, hereby certify that on July 1, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jason M. Craig
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
jcraig@ahlerslaw.com
ATTORNEYS FOR DEFENDANT ISLLC

By:      /s/ Alex Kornya

20