IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JANTZEN MASON, JEFFERY CARSTENSEN, CASSANDRA MARIE GIBSON, AMANDA MCDONALD, and LILIANA ZAMBRANO, | No. 4:23-cv-00515-RGE-WPK |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| IOWA STUDENT LOAN LIQUIDITY CORPORATION, | |
| Defendant. | |

## I.    INTRODUCTION

Plaintiffs Jantzen Mason, Jeffery Carstensen, Cassandra Marie Gibson, Amanda McDonald, and Liliana Zambrano sue Defendant Iowa Student Loan Liquidity Corporation (ISLLC) in this consolidated matter. Plaintiffs challenge the constitutionality of, as well as ISLLC's use of, Iowa's confession-of-judgment statue, Iowa Code Chapter 676. Plaintiffs also allege claims for violation of Iowa's Private Right of Action for Consumer Frauds Act and unjust enrichment. ISLLC moves for summary judgment, arguing Plaintiffs were not deprived of due process and ISLLC is not liable under the Consumer Frauds Act. In addition, ISLLC argues it was not unjustly enriched because it adhered to the terms of express contracts, which Plaintiffs signed. Plaintiffs resist.

For the reasons set forth below, the Court grants in part and denies in part ISLLC's motion for summary judgment.

## II.    BACKGROUND

### A.    Factual Background

The following facts are either uncontested or, if contested, viewed in the light most

favorable to Plaintiffs, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

ISLLC was created "for the purpose of acquiring student loan notes incurred under the Higher Education Act of 1965." Pls.' App. Supp. Resist. Mot. Summ. J. 109, ECF No. 80-3 (Restatement of the ISLLC Articles of Incorporation). ISLLC owns a subsidiary, Aspire Resources, Inc., which services student loans for ISLLC and others. *See* Def.'s Corp. Disclosure Statement, ECF No. 5. For purposes of this lawsuit, ISLLC stipulated it will be responsible for any acts or omissions of Aspire. Def.'s Stipulation, ECF No. 23.

At various times, ISLLC disbursed or acquired Plaintiffs' loans. *See* Def.'s App. Supp. Mot. Summ. J. 009–013 (Mason promissory note with non-party Principal Bank), 020–021 (Mason and Zambrano loan sales to ISLLC), 063–065 (Carstensen promissory note with ISLLC), 130–132 (Zambrano promissory note with Principal Bank), 156–165 (Gibson promissory with ISLLC), 207–210 (McDonald promissory note with Principal Bank and loan transmittal to ISLLC), ECF No. 66-3. Aspire serviced all of Plaintiffs' loans. Def.'s Reply Pls.' Statement Facts ¶ 12, ECF No. 83.

Plaintiffs, at different points, stopped making loan payments before their loans were paid in full. *See* ECF No. 66-3 at Def.'s App. 022–024 (Mason payment history), 071–074 (Carstensen), 135–136 (Zambrano), 168 (Gibson), 213 (McDonald). ISLLC asserts it sent notice-to-cure-default letters to Plaintiffs in response. *Id.* at Def.'s App. 025 (ISLLC notice to cure letter to Mason), 075–076 (Carstensen), 144–145 (Zambrano), 169–170 (Gibson), 222–223 (McDonald). Plaintiffs remember receiving numerous calls from ISLLC or people collecting on behalf of ISLLC concerning their debt. *See* Pls.' Statement Material Facts Supp. Resist. Mot. Summ. J. ¶¶ 27 (Carstensen), 38 (Gibson), 52 (Mason), 63 (Zambrano), 71 (McDonald), ECF No. 80-2. Plaintiffs each spoke with a representative from ISLLC, and the representative told Plaintiffs they could enter into repayment plans or agreements to reduce their monthly payments and or interest rates.

*See id.* ¶¶ 28–31 (Carstensen), 39–42 (Gibson), 52–55 (Mason), 64–67 (Zambrano), 72–74 (McDonald). Some Plaintiffs remember brief mentions of confessions of judgment, while others do not. *Id.* During this time, Plaintiffs were financially struggling. *See id.* ¶¶ 28 (Carstensen), 38 (Gibson), 52 (Mason), 72 (McDonald); Zambrano Decl. ¶ 6, ECF No. 80-3.

Plaintiffs eventually entered into agreements with ISLLC, each of which was entitled "SETTLEMENT AGREEMENT." ECF No. 66-3 at Def.'s App. 026–029 (Mason settlement agreement), 077–081 (Carstensen), 137–140 (Zambrano), 176–179 (Gibson), 214–217 (McDonald). Each settlement agreement incorporated a confession of judgment and required Plaintiffs to execute the confession of judgment contemporaneously with the settlement agreement. *Id.* at Def.'s App. 026 ¶ 3 (Mason), 078 ¶ 3 (Carstensen), 137 ¶ 3 (Zambrano), 179 ¶ 19 (Gibson), 214 ¶ 3 (McDonald). The settlement agreements all also contained a provision above the signature line stating in bold all-caps,

**IMPORTANT: READ BEFORE SIGNING: THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

*Id.* at Def.'s App. 029 (Mason), 081 (Carstensen), 140 (Zambrano), 179 (Gibson), 217 (McDonald).

Included with each confession of judgment was a cover letter stating Plaintiffs needed to notarize the confession of judgment to take advantage of the payment arrangements outlined in the settlement agreements. *Id.* at Def.'s App. 030 (Mason), 092 (Carstensen), 141 (Zambrano), 182–183 (Gibson),[1] 218 (McDonald). The cover letters state in bold text, "Please be advised a

---

[1] The cover letter provided for Gibson is a generic cover letter not addressed to anyone. *See* ECF No. 66-3 at Def.'s App. 182–183. The language in the generic cover letter is slightly different from the other cover letters but is substantively the same. *See id.*

Confession of Judgment is a binding legal document that should not be entered into lightly. Please read it carefully and if you have any questions or concerns whatsoever, be sure to have your attorney review the document before you sign it." *Id.* Plaintiffs do not remember receiving the cover letters. Carstensen Decl. ¶ 15, ECF No. 80-3 at Pls.' App. 130; Gibson Decl. ¶ 14, ECF No. 80-3 at Pls.' App. 132; Mason Decl. ¶ 14, ECF No. 80-3 at Pls.' App. 135; Zambrano Decl. ¶ 13, ECF No. 80-3 at Pls.' App. 138; McDonald Decl. ¶ 13, ECF No. 80-3 at Pls.' App. 141.

The confessions of judgment state the loan amount and interest rate for each Plaintiff. ECF No. 66-3 at Def.'s App. 031–032 (Mason), 093–094 (Carstensen), 142–143 (Zambrano), 185–186 (Gibson), 219–220 (McDonald). The confessions of judgment also state ISLLC "shall file this Confession of Judgment and execution shall then be issued without further order of this Court for the full amount of the judgment" minus payments made. *Id.* Additionally, the confessions of judgment state each Plaintiff "waives the issuing and service of notice and hereby submits to the jurisdiction of this Court without further hearing regarding this Confession of judgment." *Id.* All confessions of judgment were notarized and separately signed by Plaintiffs. *Id.*[2]

Subsequently, Plaintiffs defaulted on their loans. *See* ECF No. 66-3 at Def.'s App. 022–024, 071–074, 135–136, 168, 213. ISLLC asserts it mailed notice-to-cure-default letters to Plaintiffs prior to entering the confessions of judgment. *See* Def.'s Suppl. App. Supp. Mot. Summ. J. 003 (Carstensen), 005 (Gibson), 006 (Mason), 007 (McDonald), 008 (Zambrano), ECF No. 83-1. Afterward, ISLLC's attorney entered the confessions of judgment in Iowa District Courts on various dates. *See* ECF No. 66-3 at Def.'s App. 041–042 (Mason filed July 18, 2016), 098–099 (Carstensen filed October 25, 2023), 149–150 (Zambrano filed January 3, 2020), 191–192 (Gibson filed July 26, 2022), 226–227 (McDonald filed June 22, 2018). Plaintiffs assert they did not receive notice of the entries of the confessions of judgment. *See* Carstensen Decl. ¶ 20,

---

[2] Some Plaintiffs executed amendments to the settlement agreements, but these did not affect the confessions of judgment. *See, e.g.*, ECF No. 66-3 at Def.'s App. 221.

ECF No. 80-3 at Pls.' App. 130; Gibson Decl. ¶ 18, ECF No. 80-3 at Pls.' App. 133; Mason Decl. ¶ 18, ECF No. 80-3 at Pls.' App. 136; Zambrano Decl. ¶ 17, ECF No. 80-3 at Pls.' App. 139; McDonald Decl. ¶ 19, ECF No. 80-3 at Pls.' App. 142.

Years later, ISLLC attempted to garnish Plaintiffs' bank accounts and/or wages. *See* ECF No. 66-3 at Def.'s App. 44–62 (Mason), 114–129 (Carstensen), 151–155 (Zambrano), 196–206 (Gibson), 240–259 (McDonald). In each instance, ISLLC moved to execute the confessions of judgment and the Iowa District court granted the request. *Id.* Afterward, a sheriff served notice of garnishment on Plaintiffs' banks and/or employers. *Id.* The notices of garnishment contained the case number under which the confession of judgment was entered, the case's caption, and a variety of other information concerning the logistics of the garnishment. *Id.* Additionally, the notices of garnishment contained questions for the garnishee concerning the garnishee's relationship with Plaintiffs. *Id.*; *see also* Iowa Code § 642.5 (setting forth the questions a sheriff may ask of a garnishee). The notices of garnishment also state, "Garnishment is effective immediately upon service and should continue until the expiration date . . . ." *Id.*

For Mason, a sheriff served notice of garnishment on Mason's bank, at which point the bank froze Mason's assets so Mason could not access them. ECF No. 66-3 at Def.'s App. 44–62. Mason attempted to challenge the garnishment but was unsuccessful. *Id.* No funds were ultimately taken from the bank, but the funds remained frozen during Mason's attempts to quash the garnishment, preventing him from using them. *Id.*; *see also* ECF No. 80-1 ¶ 23. It is unclear whether Mason was served notice of the garnishment.

A sheriff served notice of garnishment on Carstensen's bank, and the bank forwarded notice to Carstensen. ECF No. 66-3 at Def.'s App. 114–129. Carstensen also attempted to quash the garnishment. *Id.* Before the Iowa District Court ruled on the motion, Carstensen and ISLLC reached an agreement stating ISLLC would stop collection efforts and withdraw its garnishment requests. *Id.* No funds were taken by ISLLC, but Carstensen's account was frozen during this time

period. *Id.*; *see also* ECF No. 80-1 ¶ 42.

A sheriff served notice of garnishment on Zambrano's former employer. ECF No. 66-3 at Def.'s App. 151–155. Because Zambrano no longer worked there, ISLLC garnished no funds. *Id.* ISLLC did not attempt to garnish Zambrano after the attempt. *Id.* It is unclear whether Zambrano received notice of the attempted garnishment.

A sheriff provided notice of garnishment to Gibson's former employer. ECF No. 66-3 at Def.'s App. 196–206. On the notice, the employer indicated it forwarded the notice of garnishment to Gibson in a pay envelope. *Id.* No funds appear to have been garnished from this attempt. *Id.* A sheriff also served notice of garnishment on Gibson's bank. *Id.* The bank indicated it delivered a copy of the notice of garnishment to Gibson but does not indicate how delivery was accomplished. *Id.* ISLLC eventually received funds from Gibson's bank sufficient to satisfy ISLLC's judgment against Gibson. *Id.*

Lastly, ISLLC had a sheriff attempt to garnish McDonald three times. ECF No. 66-3 at Def.'s App. 240–259. On the first attempt, a sheriff served notice of garnishment on McDonald's employer, though no wages were collected. *Id.* McDonald's employer indicated it delivered a copy of the notice to McDonald via U.S. Mail. *Id.* Next, a sheriff garnished McDonald's bank from which $172.63 was collected. *Id.* ISLLC submitted documentation to the Iowa District Court showing it had served McDonald concerning this garnishment. *Id.* In the third attempt, a sheriff served notice of garnishment on McDonald's employer, but no wages were garnished from this attempt. *Id.* The employer indicated it delivered a copy of the notice of garnishment to McDonald via U.S. Mail. *Id.*

Additional facts are set forth below as necessary.

### B.    Procedural Background

Plaintiffs bring the current consolidated matter for claims arising from ISLLC's use of Iowa's confession-of-judgment statute, Iowa Code Chapter 676. Plaintiffs originally filed separate

suits in Iowa District Courts alleging similar causes of action against ISLLC. *See* Br. Supp. Joint Mot. Consolidate 1, 3, ECF No. 15-1. ISLLC removed these cases to federal court. *See id.* The parties then filed a joint motion to consolidate the removed cases. Joint Mot. Consolidate, ECF No. 15. The Court granted the motion. Text Order Grant. Joint Mot. Consolidate, ECF No. 18.

In Count I, Plaintiffs seek a declaratory judgment holding Iowa Code Chapter 676 unconstitutional facially and as applied to Plaintiffs under the Fourteenth Amendment of the United States Constitution and Article I, Section Nine of the Iowa Constitution. Am. Compl. ¶¶ 140–46, ECF No. 71; *see* Iowa Code § 676 *et seq.*; U.S. Const. amend. XIV; Iowa Const. art. I, § 9. In Count II, Plaintiffs allege ISLLC violated the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code 714H *et seq.* ECF No. 71 ¶¶ 147–62. In Count III, Plaintiffs seek damages under § 1983 for violation of due process under the Fourteenth Amendment. *Id.* ¶¶ 163–68. In Count IV, Plaintiffs allege ISLLC's actions resulted in unjust enrichment. *Id.* ¶¶ 169–72.

ISLLC moves for summary judgment. Def.'s Mot. Summ. J., ECF No. 66. Plaintiffs resist and ISLLC responds to Plaintiffs' resistance. Pls.' Resist. Mot. Summ. J., ECF No. 80; Def.'s Reply Supp. Mot. Summ. J., ECF No. 88.

The Court finds the parties' briefing and the record adequately present the issues without need for oral argument. *See* LR 7(c); Fed. R. Civ. P. 78(b). The Court decides ISLLC's motion for summary judgment as set forth below.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists where the issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

When analyzing whether a party is entitled to summary judgment, the "non-moving party receives the benefit of all reasonable inferences supported by the evidence but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)). "The plaintiff must substantiate [the] allegations with sufficient probative evidence that would permit a finding in [the plaintiff's] favor." *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and the moving party is entitled to judgment as a matter of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## IV.    DISCUSSION

### A.    Count I: Declaratory Judgment Under the Fourteenth Amendment of the United States Constitution and Article I, Section Nine of the Iowa Constitution

In Count I, Plaintiffs seek a declaratory judgment holding Iowa Code Chapter 676 facially unconstitutional and unconstitutional as applied to Plaintiffs under the Fourteenth Amendment of the United States Constitution and Article I, Section Nine of the Iowa Constitution. ECF No. 73 ¶¶ 140–46. In Plaintiffs' resistance, they concede Chapter 676 is not facially unconstitutional. ECF No. 80 at 2.

ISLLC argues Plaintiffs' as-applied challenge fails because Plaintiffs waived their right to prejudgment notice and hearing. Def.'s Br. Supp. Mot. Summ. J. 7–12, ECF No. 66-1. ISLLC also argues Plaintiffs' due process rights are not impinged by entry of the confessions of judgment because Plaintiffs' property is not taken when the confession of judgment is entered. *Id.* at 6–7.

Instead, ISLLC asserts the meaningful time to challenge a confession of judgment is when the judgment creditor attempts to execute on the confession of judgment at garnishment proceedings. *Id.* Lastly, ISLLC argues post-judgment remedies allow Plaintiffs to collaterally challenge the confessions of judgment, satisfying due process concerns. *Id.* at 5–6.[3]

The Fourteenth Amendment of the United States Constitution "requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'" "[b]efore a judicial deprivation of property can take place, . . . ." *United States v. Adejumo*, 777 F.3d 1017, 1019 (8th Cir. 2015) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). An individual may waive both their right to prejudgment notice and hearing. *D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 185 (1972).

In *Overmyer*, the Supreme Court applied the same standard used in criminal proceedings to determine whether a cognovit-debtor (a confession-of-judgment debtor) waived their prejudgment rights to notice and hearing—namely that the waiver be "voluntary, knowing, and intelligently made, . . . ." *Id.* (citation omitted). Under this standard, courts apply a two-part test. First, courts assess whether the waiver was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Rooney*, 63 F.4th 1160, 1168 (8th Cir. 2023) (citation omitted). Second, the waiver must be made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (citation omitted). "[I]n the civil no less than the criminal area, 'courts indulge every reasonable presumption against waiver.'" *Fuentes v. Shevin*, 407 U.S. 67, 94 n.31 (1972)

---

[3] Neither party draws a distinction between the due process analysis under the Fourteenth Amendment of the United States Constitution and Article I, Section Nine of the Iowa Constitution. *See* ECF Nos. 66-1, 80, 86. Indeed, both parties focus their arguments on the constitutionality of Chapter 676 under the Fourteenth Amendment of the United States Constitution. *See id.* As such, the Court analyzes whether use of the confessions of judgment against Plaintiffs satisfies due process under the Fourteenth Amendment of the United States Constitution.

(quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)). This determination is fact intensive. *Overmyer*, 405 U.S. at 187–88 ("The facts of this case, as we observed above, are important, . . . ."), *id.* at 188 ("Our holding, of course, is not controlling precedent for other facts of other cases.").

To satisfy the standard set forth in *Overmyer*, a confession-of-judgment debtor necessarily must have the opportunity to challenge the validity of their contractual waiver. Some courts have found the waiver hearing must occur prior to entry of the confession of judgment. *See, e.g.*, *Osmond v. Spence*, 359 F. Supp. 124, 127 (D. Del. 1972) ("[T]he Court restates its holding that the original 10 Del.C. § 2306 is unconstitutional insofar as it permitted the entry of judgments on cognovit notes prior to a hearing on the issue of whether the debtor had effectively waived his due process rights by executing the note."); *Isbell v. Cnty. of Sonoma*, 577 P.2d 188, 194 (Cal. 1978) ("In short, the California statutes do not permit a prejudgment judicial determination of the validity of the debtor's waiver, . . . . Thus a judgment entered pursuant to the California procedure is constitutionally defective."). Other courts have held the waiver hearing need only occur prior to deprivation of property or promptly thereafter. *See, e.g.*, *Jordan v. Fox, Rothschild, O'Brien, & Frankel*, 792 F. Supp. 393, 396 (E.D. Pa. 1992), *aff'd and remanded,* 20 F.3d 1250 (3d Cir. 1994) ("The right to be heard and to contest the validity of a cognovit debtor's waiver of rights arises at the time of an *execution* of a confessed judgment."); *Hurdleston v. New Century Fin. Servs., Inc.*, 629 F. Supp. 2d 434, 442 (D.N.J. 2009) (finding if "there was no actual deprivation of property, no due process rights provided by the Fourteenth Amendment were violated").

The Court finds the latter reasoning more in line with the Supreme Court's decision in *Overmyer*. In *Overmyer*, the Supreme Court noted "Overmyer may not have been able to predict with accuracy just how or when [the judgment creditor] would proceed under the confession clause . . . but this inability does not in itself militate against effective waiver." 405 U.S. at 187. The judgment creditor's ability to enter the cognovit at any time once prerequisite conditions were met

implies Ohio's—the state in which the cognovit was signed—civil procedures at issue did not require a court to first assess the validity of Overmyer's waiver of notice and hearing. *Id.* Thus, *Overmyer* does not require a court to determine whether a judgment debtor's waiver of notice and hearing was made voluntarily, knowingly, and intelligently prior to entry of judgment. Instead, the waiver determination need only occur prior to deprivation of property. *Cf. Jordan*, 792 F. Supp. at 396; *Hurdleston*, 629 F. Supp. 2d at 442.

Relatedly, the confession-of-judgment debtor must have the opportunity to present defenses relating to the underlying obligation. In *Overmyer*, the Supreme Court highlighted the significance of the judgment court's ability under Ohio law to "vacate its judgment upon a showing of a valid defense [by Overmyer] . . . . [Wherein] defenses such as prior payment or mistaken identity, . . . could be asserted." *Id.* at 188. As such, the Court determines there must be some moment pre-deprivation for judgment debtors to present defenses to the underlying debt.

The Court first considers whether mere entry of the confessions of judgment results in deprivation of property. Assuming mere entry does not result in a deprivation of property, the Court addresses whether Plaintiffs waived their rights to prejudgment notice and hearing. Lastly, the Court examines whether post-judgment procedures allowed Plaintiffs the opportunity for notice and hearing before they were deprived of their property.

### 1.   Whether mere entry of the confessions of judgment results in a deprivation of property

As discussed above, *Overmyer* requires confession-of-judgment debtors have the opportunity to challenge the validity of the waivers and submit defenses against the underlying judgments before they are deprived of their property.

Plaintiffs argue mere entry of the confessions of judgment results in a deprivation of their property, and thus violates due process regardless of whether Plaintiffs' waived prejudgment notice and post-judgment protections. ECF No. 80 at 2–3. In support, Plaintiffs first assert entry

of the confessions of judgment automatically triggers a lien on their property—resulting in a deprivation of property without notice or hearing. *Id.* at 3. Plaintiffs, however, dropped their facial challenge and fail to cite to record evidence showing they own property which had a lien placed on it due to entry of the confessions of judgment. Based on the record, Plaintiffs thus do not appear to be affected by such a provision.

Second, Plaintiffs argue entry of confessions of judgment results in collateral economic effects such as reduced credit scores. *Id.* This argument, however, is foreclosed by *Overmyer*. If the collateral consequences associated with entry of confessions of judgment were enough to violate due process, then every confession of judgment violates due process. This idea runs counter to *Overmyer*, which held confessions of judgment can be valid based on the facts at issue.

Accordingly, a reasonable jury could not, based on the record, conclude Plaintiffs suffered a deprivation of property due to mere entry of the confessions of judgment.

### 2.    Whether Plaintiffs waived their right to prejudgment notice and hearing

The parties dispute whether Plaintiffs, via the confessions of judgment, waived their right to notice and hearing prior to judgment. ECF No. 66-1 at 7–12; ECF No. 80 at 5–9. ISLLC argues the language in the settlement agreements and confessions of judgment provide sufficient information to inform Plaintiffs they were waiving their right to notice and hearing. ECF No. 66-1 at 8–9. In addition, ISLLC asserts Plaintiffs signed the confessions of judgment voluntarily in exchange for lowered monthly payments and/or interest rates on their loans. *Id.* at 9–12. ISLLC also argues Plaintiffs had sufficient time to consider whether to sign the confessions of judgment and contact an attorney if they chose to do so. *Id.*

Plaintiffs first argue the confessions of judgment were presented in contracts of adhesion. ECF No. 80 at 6. In support, Plaintiffs point to: 1) ISLLC using the same material terms between settlement agreements; 2) Plaintiffs' inability to change these terms; and 3) ISLLC's use of legal

language an average consumer would not understand. *Id.* Next, Plaintiffs argue ISLLC's settlement agreements and confessions of judgment do not inform Plaintiffs of their right to notice and hearing prior to judgment. *Id.* Without such information included in the documents, Plaintiffs assert they cannot knowingly and intelligently waive their right to notice and hearing because they would not understand they are giving up such rights. *Id.* at 6–7.

Determination of whether an individual waives their right to notice and hearing is a question of fact. *Overmyer*, 405 U.S. at 187–88. Here, there are facts from which a reasonable jury could conclude Plaintiffs did not waive their rights. *Overmyer* does not foreclose this conclusion. In *Overmyer*, both parties were sophisticated entities. 405 U.S. at 186–87. The Supreme Court described Overmyer as a corporation that had a "complicated" corporate structure, widespread activities, and been party to "tens of thousands of contracts with many contractors." *Id.* at 186. As such, *Overmyer* was "not a case of unequal bargaining power or overreaching," and the agreement "was not a contract of adhesion." *Id.*

In comparison, Plaintiffs are not sophisticated corporations with widespread dealings that have engaged in thousands of contracts. Plaintiffs have no legal training nor have they studied the law. Carstensen Decl. ¶ 4, ECF No. 80-3 at Pls.' App. 128; Gibson Decl. ¶ 4, ECF No. 80-3 at Pls.' App. 131; Mason Decl. ¶ 4, ECF No. 80-3 at 134; Zambrano Decl. ¶ 4, ECF No. 80-3 at Pls.' App. 137; McDonald Decl. ¶ 3, ECF No. 80-3 at Pls.' App. 140. Though Plaintiffs were able to negotiate their monthly payments and/or interest rates, there is no indication in the record they were able to negotiate other material terms in the settlement agreements. Further, all of the settlement agreements are similar aside from the monthly payments, interest rates, and underlying debt. *Compare e.g.*, ECF No. 66-3 at Def.'s App. 026–029 *with* ECF No. 66-3 at Def.'s App. 077–081. This lends credence to Plaintiffs' argument the settlement agreements and confessions of judgment are contracts of adhesion. *Cf. Overmyer*, 405 U.S. at 186–88. Plaintiffs also assert they do not remember receiving the identified cover letters, and thus do not remember

the language in the cover letter advising them the confessions of judgment were binding legal documents and to consult an attorney if they had questions. Carstensen Decl. ¶ 20, ECF No. 80-3 at Pls.' App. 130; Gibson Decl. ¶ 18, ECF No. 80-3 at Pls.' App. 133; Mason Decl. ¶ 18, ECF No. 80-3 at Pls.' App. 136; Zambrano Decl. ¶ 17, ECF No. 80-3 at Pls.' App. 139; McDonald Decl. ¶ 19, ECF No. 80-3 at Pls.' App. 142. Finally, Plaintiffs state they did not understand that signing the confessions of judgment permitted ISLLC to file them without Plaintiffs first receiving notice or their day in court. Carstensen Decl. ¶ 17, ECF No. 80-3 at Pls.' App. 130; Gibson Decl. ¶ 16, ECF No. 80-3 at Pls.' App. 133; Mason Decl. ¶ 16, ECF No. 80-3 at Pls.' App. 136; Zambrano Decl. ¶ 15, ECF No. 80-3 at Pls.' App. 138–139; McDonald Decl. ¶ 15, ECF No. 80-3 at Pls.' App. 142.

From this, a reasonable jury could conclude Plaintiffs did not waive their rights to prejudgment notice and hearing. This, however, does not end the Court's analysis, as post-judgment remedies may satisfy due process concerns.

### 3.    Whether Plaintiffs were provided notice and an opportunity to be heard before deprivation of their property

ISLLC first contends—contrary to terms on the face of the confessions of judgment—that Iowa law and Iowa Rules of Civil Procedure require the clerk of court who enters the confession of judgment to provide notice by mail to all parties. ECF No. 86 at 2–3. Were this to be the case though, the Iowa District Court docket should have "a note in the docket of the mailing." *See* Iowa Rule of Civil Procedure 1.442(6) (stating, "[T]he clerk . . . shall make a note in the docket of the mailing."). None of Plaintiffs' state court dockets contain an entry reflecting mailing of notice to Plaintiffs after entry of the confession of judgment. As such, the record does not support the proposition the state court provided Plaintiffs with notice of the confessions of judgment's entries.

Next, ISLLC argues Plaintiffs, pursuant to Iowa law, received post-judgment notice about garnishment proceedings and Plaintiffs could provide any reason they were not liable for ISLLC's

garnishment claims at that time. ECF No. 86 at 4–5. Chapter 642 of the Iowa Code addresses garnishments. Sections 642.14A and 642.14B set forth notice requirements for when the garnishee is the judgment debtor's nonemployer and employer, respectively. In both cases, the notice of garnishment must include the following information:

> a. Inform the defendant that judgment has been entered in the main action and the defendant's funds or other property is subject to execution under the judgment.
> b. Inform the defendant that the defendant has the right to claim funds or other property exempt from execution or garnishment and a right to request and have a timely hearing before a judge to claim such exemptions.
> c. Inform the defendant that if the defendant does not file a motion or other appropriate pleading to claim funds or other property exempt from execution or garnishment under state or federal law, the defendant may lose any such rights and the funds or other property maybe applied to the judgment against the defendant.
> d. Inform the defendant that state and federal laws may place limits on the amount of earnings that may be garnished annually and per pay period and limits on other funds and property that may be garnished or levied against.
> e. Contain the full text of section 630.3A.
> f. State that the defendant may wish to consult a lawyer for advice as to the meaning of the notice.
> g. Inform the defendant that any garnishment for fines imposed on a defendant in a criminal case is subject to section 909.6, including the provision that any law which exempts a person's personal property from any lien or legal process is not applicable for such garnishment.

Iowa Code § 642.14A(3); *id.* § 642.14B (stating the notice must contain the information within § 642.14A(3)). In both instances, a sheriff will serve the garnishee the notice of garnishment and will, upon request by the plaintiff, require the garnishee to answer questions relating to money or property owned by the garnishee that is owing to the judgment debtor. *See id.* § 642.5.

When the garnishee is a nonemployer of the judgment debtor, the judgment creditor must serve the judgment debtor notice no more than seven business days after the sheriff files the garnishee's answers with the court. Iowa Code § 642.14A(1). The notice must show the garnishee is indebted to the defendant and include the information listed above. *Id.* The notice must "be served by personal service or restricted certified mail and first-class mail to the last known address of the defendant." *Id.* § 642.14A(2). Proof of such service must be filed with the court. *Id.*

When the garnishee is the judgment debtor's employer, the garnishee must provide notice of garnishment to the judgment debtor with the "remainder of" the judgment debtor's earnings "or in lieu" thereof. *Id.* § 642.14B. In response to the sheriff's examination, the garnishee must answer questions concerning this service. *Id.* Notice may be delivered by personal service, mail, or electronic means and must contain the same information within § 642.14A(3). *Id.*

At the garnishment hearing, the judgment debtor may "set up facts showing that the debt or the property with which it is sought to charge the garnishee is exempt from execution, or for any other reason is not liable for plaintiff's claim, and if issue thereon be joined by the plaintiff, it shall be tried with the issues as to the garnishee's liability." *Id.* § 642.15.

ISLLC argues the notice provided in §§ 642.14A and 642.14B along with the subsequent garnishment proceedings satisfy due process requirements for the confessions of judgment. ECF No. 66-1 at 7; ECF No. 86 at 5. Even accepting, *arguendo*, ISLLC is correct that Plaintiffs may challenge the underlying debt and validity of the waivers at garnishment proceedings, this opportunity comes too late. When a sheriff serves the notice of garnishment on a garnishee, the garnishee is directed—via the authority of the Iowa District Court—that the "[g]arnishment is effective immediately upon service . . . ." *E.g.*, ECF No. 66-3 at Def.'s App. 047. At this point, Plaintiffs—aside from Zambrano as discussed below—suffered a deprivation of their property.

For example, when a bank is served notice of garnishment, this may result in the bank freezing the funds until further direction of the state court. *See, e.g.*, *id.* at Def.'s App. 117. When an employer is served notice of garnishment, the employer will then deliver a copy of the notice of garnishment to the judgment debtor "with the remainder of or in lieu of the [judgment debtor's] earnings." Iowa Code § 642.14B. In both scenarios, judgment debtors are deprived of their property before *they* are served notice and have had the opportunity for a hearing—regardless of whether they may eventually recover their property via the garnishment proceedings. As the Supreme Court noted, "it is now well settled that a temporary, nonfinal deprivation of property is

nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." *Fuentes v. Shevin*, 407 U.S. 67, 84–85 (1972) (citation omitted). Such appears to be the case here.

Separately, ISLLC argues its use of confessions of judgment satisfy due process because judgment debtors may vacate a judgment that is obtained with fraud or irregularity. ECF No. 66-1 at 5–6. ISLLC also asserts Iowa law permits a cause of action in equity to collaterally attack judgments entered without notice or jurisdiction, which can be brought at any time. *Id.* at 6. Both lines of argument fail for the same reasons set forth above. Even assuming these are valid options, judgment debtors suffer deprivation of property before they receive notice and the opportunity for a hearing. The ability to challenge a faulty judgment after deprivation of property is no substitute for the opportunity to defend against such deprivation in the first instance.

A reasonable jury could not conclude the post-judgment remedies available to Plaintiffs provided a meaningful opportunity for notice and hearing prior to deprivation of Plaintiffs' property based on the record.

This conclusion does not apply to Zambrano. The record fails to show Zambrano suffered a deprivation of property from ISLLC's use of her confession of judgment. ISLLC attempted, but failed, to garnish Zambrano. *See* ECF No. 66-3 at Def.'s App. 151–155. ISLLC did not further attempt to garnish Zambrano. *Id.* As such, a reasonable jury could not find Zambrano's due process rights were violated.

Accordingly, the Court denies ISLLC's motion for summary judgment as to Count I for Plaintiffs Mason, Carstensen, Gibson, and McDonald. The Court grants ISLLC's motion for summary judgment as to Count I for Zambrano.

### B.    Count II: Violation of the Iowa Private Right of Action for Consumer Frauds Act

In Count II, Plaintiffs allege ISLLC violated the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code 714H *et seq*. ECF No. 73 ¶¶ 147–62. ISLLC first argues Plaintiffs actions

are time barred because they were not brought within two years of the last event giving right to Plaintiffs' consumer fraud claim. ECF No. 66-1 at 12, 17. Next, ISLLC asserts Chapter 714H does not apply to ISLLC's conduct because its actions were permitted by statute. *Id.* at 13. ISLLC also argues its use of confessions of judgment are not in connection with the advertisement, sale, or lease of consumer merchandise, and thus Chapter 714H does not apply. *Id.* at 13–14. ISLLC further argues Plaintiffs suffered no ascertainable losses. *Id.* at 14–15. Lastly, ISLLC argues it did not knowingly engage in a deceptive or unfair practice as required by Chapter 714H. *Id.* at 15–17.

Chapter 714H states in relevant part,

A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes.

Iowa Code § 714H.3(1). Chapter 714H's definition of "merchandise" is the same as § 714.16. Iowa Code § 714H.2(6). In § 714.16, merchandise "includes any objects, wares, goods, commodities, intangibles, securities, bonds, debentures, stocks, real estate or services." Iowa Code § 714.16(e). The Court first turns to whether ISLLC advertised, sold, or leased consumer merchandise to Plaintiffs.

Plaintiffs[4] argue the merchandise ISLLC advertised, sold, or leased to Plaintiffs are "debentures" in the form of Plaintiffs' original student loans and ISLLC's confessions of judgment. ECF No. 80 at 10. This is an incorrect interpretation of the statute. A debenture is "[a] debt secured only by the debtor's earning power, not by a lien on any specific asset." *Debenture*, Black's Law Dictionary (12th ed. 2024); *see also* 6A William Meade Fletcher, *Fletcher*

---

[4] Plaintiffs concede Mason and McDonald's Count II claims are time barred. ECF No. 80 at 18. For ease of reading, however, the Court continues using the term "Plaintiffs" to describe the arguments made by Carstensen, Gibson, and Zambrano in Count II.

*Cyclopedia of the Law of Corporations* § 2649.10 (West 2024) ("The term debenture means an unsecured debt instrument."). Debentures are typically issued by corporations to generate credit, and the term "bond" is commonly used to reference both bonds and debentures. Fletcher, *supra* § 2649.10.

Though the term debenture is most commonly used in corporate settings, if it applies here, Plaintiffs would be the ones issuing debentures to ISLLC in exchange for their loans. If ISLLC were issuing debentures, then Plaintiffs would have lent money to ISLLC with the expectation ISLLC would repay the money plus interest—the exact opposite scenario of the present case.

As such, ISLLC did not advertise, sell, or lease "consumer merchandise" to Plaintiffs as defined within Chapter 714H. ISLLC is thus not liable to Plaintiffs as a matter of law under Chapter 714H. Given the above, the Court declines to discuss ISLLC's remaining arguments.

The Court grants ISLLC's motion for summary judgment as to Count II.

### C.    Count III: Violation of the Fourteenth Amendment of the United States Constitution Brought Pursuant to 42 U.S.C. § 1983

In Count III, Plaintiffs sue under 42 U.S.C. § 1983 and allege ISLLC deprived Plaintiffs of their property without due process of law in violation of the Fourteenth Amendment of the United State Constitution. ECF No. 73 ¶¶ 163–68. Though ISLLC is a private actor, Plaintiffs allege ISLLC acted under color of law because it acted in concert with or obtained significant aid from state officials. *Id.*

ISLLC asserts three reasons why Count III fails as a matter of law. First, ISLLC argues it did not act under color of law for purposes of § 1983. ECF No. 66 at 18–20. Next, ISLLC argues it acted in good faith when relying on presumptively valid state laws and is thus not liable under a § 1983 claim. *Id.* at 20–21. Lastly, ISLLC argues Mason, Zambrano, and McDonalds' Count III claims are time barred. *Id.* at 21. The Court addresses ISLLC's argument concerning whether it acted in good faith, and finding that issue dispositive, declines to address the remaining arguments.

"[A] plaintiff who sues a private-party defendant based on the defendant's employment of a state law that has been declared unconstitutional must show that the defendant was not acting in good-faith reliance on that law." *Brown v. Am. Fed'n of State, Cnty. & Mun. Emps., Council No. 5, AFL-CIO*, 41 F.4th 963, 968 (8th Cir. 2022). That is, a government defendant may not invoke this defense, but a private-party defendant acting under color of law may. To meet this requirement, the plaintiff must "make a . . . showing of malice"—"that is, an improper purpose for bringing the action or using the process." *Id.* This "protects parties who unwittingly cross [the] line into unconstitutionality while acting in reliance on presumptively valid state law—those who had good cause in other words to call on the governmental process in the first instance." *Id.* (quotation marks and citation omitted).

Plaintiffs argue *Brown* is distinguishable because the defendant in *Brown* was able to point to decades of caselaw showing the defendant's actions were constitutional until the Supreme Court overturned that particular practice and found it to be unconstitutional. ECF No. 80 at 16–17. In comparison, Plaintiffs argue "decades of authority hold[ ] that use of confessions of judgment deprives defendants of notice and the opportunity to be heard, combined with decisions stating that waivers of those rights are not likely to be valid in the context of a consumer loan." *Id.* at 17. Plaintiffs further assert ISLLC is unable to cite cases approving of its use of confession of judgment. *Id.* Lastly, Plaintiffs argue ISLLC wrote a letter to a state official responding to concerns about ISLLC's use of confessions of judgment.

Plaintiffs' arguments fail to demonstrate ISLLC acted maliciously in relying on Chapter 676 and Iowa's garnishment laws. ISLLC does not cite to a case approving of its use of confessions of judgment, presumably, because no court has opined as to whether Chapter 676 is constitutional. Other courts that have found use of cognovit clauses or confessions of judgment unconstitutional have done so on those particular set of facts, as required by *Overmyer*. *See Overmyer*, 405 U.S. at 187–88. Further, even if those cases raised doubts about the constitutionality of Chapter 676, that

is not enough to equate ISLLC's reliance on Chapter 676 with malice. *Cf. Brown*, 41 F.4th at 968 ("The Rule of Law requires that parties abide by, and be able to rely on, what the law *is*, rather than what the readers of tea-leaves predict that it might be in the future." (citation omitted)). Lastly, the letter does not show ISLLC itself subjectively believed its actions were unconstitutional and that it proceeded onward nonetheless.

As such, a reasonable jury could not conclude from the record ISLLC acted with a lack of good faith in relying on Chapter 676 and Iowa's garnishment laws. ISLLC, as a private entity, is thus not liable under § 1983.

Accordingly, the Court grants ISLLC's motion as to Count III.

### D.    Count IV: Unjust Enrichment Under Iowa Law

In Count IV, Plaintiffs allege ISLLC was unjustly enriched and they are entitled to "full restitution of any amounts garnished, levied, assigned, attached, or otherwise taken to apply towards the debt in question, regardless of whether those amounts were taken voluntarily or involuntarily . . . ." ECF No. 73 ¶¶ 169–72. ISLLC argues Plaintiffs' unjust enrichment claims fail as a matter of law because there are express contracts covering the same subject matter. ECF No. 66-1 at 22. In response, Plaintiffs assert unjust enrichment is an equitable remedy and can exist independent and alongside an express contract. ECF No. 80 at 19–20.

Under Iowa law, unjust enrichment occurs when there is "(1) enrichment of the defendant, (2) at the expense of the plaintiff, (3) under circumstances that make it unjust for the defendant to retain the benefit." *Livingood v. City of Des Moines*, 991 N.W.2d 733, 749 (Iowa 2023). The Iowa Supreme Court recently reiterated that the doctrine of unjust enrichment is "based on the concept of an implied contract." *Bradshaw Renovations, LLC v. Graham*, 20 N.W.3d 479, 487 (Iowa 2025), *reh'g denied* (May 21, 2025). "While an implied contract may coexist with a written contract, it is only to the extent that a party is seeking recovery for matters not addressed in the contract because express and implied contracts cannot coexist on the same subject matter." *Id.*

Conversely under Iowa law, "[a] party is not barred from pleading unjust enrichment in the alternative to a breach of contract claim when the existence and terms of a contract are in dispute." *Meardon v. Reg.*, 994 F.3d 927, 936 (8th Cir. 2021).

Plaintiffs assert ISLLC's use of their confessions of judgment violate due process and it would thus be unjust to allow ISLLC to retain the funds Plaintiffs have paid to ISLLC. *See* ECF No. 80 at 19–20. Nonetheless, because Plaintiffs all have express contracts addressing their debts and payment obligations to ISLLC, Plaintiffs cannot pursue an unjust enrichment claim on the basis of an implied contract theory. *Cf. Bradshaw*, 2025 WL 1270727, at *5.[5] Plaintiffs neither dispute the existence of the initial loan agreements nor the subsequent settlement agreements and confessions of judgment. *See* ECF No. 80 at 19–20. Plaintiffs also do not argue the terms of these contracts are in dispute. *See id.* As such, regardless of whether use of the confessions of judgment violate due process, Plaintiffs are unable to bring a claim for unjust enrichment because there are express contracts which directly conflict with Plaintiffs' claim. *Cf. Bradshaw*, 2025 WL 1270727, at *5.

The Court grants ISLLC's motion as to Count IV.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant Iowa Student Loan Liquidity Corporation's Motion for Summary Judgment, ECF No. 66, is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 20th day of June, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE

---

[5] In an attempt to sidestep express contracts foreclosing unjust enrichment claims, Plaintiffs briefly argue "implied contract is not Plaintiffs' theory" for unjust enrichment. ECF No. 80 at 20. But Plaintiffs fail to provide an alternative theory supporting their claim for unjust enrichment outside of unjust enrichment stemming from equitable relief. *See id.* This failure, paired with *Bradshaw*'s statement that unjust enrichment stems from implied contracts, precludes this line of argument.